David A. Chami, AZ #027585
PRICE LAW GROUP, APC
1204 E. Baseline Rd., Ste 102
Tempe, AZ 85283
P: 866-881-2133
F: 866-401-1457
david@pricelawgroup.com

Attorney for Plaintiff

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| MUSSALINA MUHAYMIN as Personal Representative of the Estate of MUHAMMAD ABDUL MUHAYMIN JR., | Case No. CV-17-04565-PHX-SPL |
| *Plaintiff,* | **FIRST AMENDED COMPLAINT** |
| *v.* | **JURY TRIAL DEMANDED** |
| CITY OF PHOENIX, an Arizona Municipal Corporation; ANTONIO TARANGO; Officer OSWALD GRENIER; Officer KEVIN McGOWAN; Officer JASON HOBE; Officer RONALDO CANILAO; Officer DAVID HEAD; Officer SUSAN HEIMBINGER; Officer JAMES CLARK; Officer DENNIS LEROUS; Officer RYAN NIELSON; Officer STEVEN WONG; and DOE Supervisors 1-5, | |
| *Defendants.* | |

## FIRST AMENDED COMPLAINT

Plaintiff, MUSSALINA MUHAYMIN as Personal Representative of the Estate of MUHAMMAD ABDUL MUHAYMIN JR., brings this wrongful death and survival action (A.R.S. §§ 12-611, *et seq.* and 14-3110) pursuant to 42 U.S.C. §§ 1981, 1983, and 1988,

and Title II of the Americans with Disabilities Act (ADA), as well as various state law claims, against Defendants, CITY OF PHOENIX, an Arizona Municipal Corporation; ANTONIO TARANGO; Officer OSWALD GRENIER; Officer KEVIN McGOWAN; Officer JASON HOBE; Officer RONALDO CANILAO; Officer DAVID HEAD; Officer SUSAN HEIMBINGER; Officer JAMES CLARK; Officer DENNIS LEROUS; Officer RYAN NIELSON; Officer STEVEN WONG; and DOE Supervisors 1-5, as follows:

## JURISDICTION AND VENUE

1. This action arises under the United States Constitution and the laws of the United States and is brought pursuant to 42 U.S.C. §§ 1981, 1983, and 1988, and Title II of the Americans with Disabilities Act (ADA). The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343.

2. Plaintiff further invokes this Court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over any and all state law claims and as against all parties that are so related to claims in this action within the original jurisdiction of this Court that they form part of the same case or controversy.

3. Venue is proper in this District under 28 U.S.C. 1391(b) in that the parties reside, or at the time the events took place, resided in this judicial district and the events giving rise to the Plaintiff's claims occurred in this judicial district.

## PARTIES

4. The decedent, MUHAMMAD ABDUL MUHAYMIN JR. (hereinafter "MUHAYMIN" or "decedent"), at all relevant times, was a resident of Maricopa County, Arizona.

5. The death of MUHAYMIN, at the hands of Defendants Officers, occurred in Maricopa County, Arizona.

6. Plaintiff, MUSSALINA MUHAYMIN, was appointed as the Personal Representative of the Estate of the decedent, by the Probate Division of the Maricopa County Superior Court of Arizona on October 26, 2017.

7. Plaintiff, MUSSALINA MUHAYMIN, is a resident of Maricopa County,

Arizona and the sister of the decedent.

8.      In her capacity as the Personal Representative of the Estate of MUHAYMIN, Plaintiff seeks damages pursuant to the Arizona wrongful death and survival statutes, codified in A.R.S. §§ 12-611, *et seq*., and 14-3110 for each and every claim listed herein, on behalf of the Estate of MUHAYMIN and on behalf of his surviving next of kin. Plaintiff further seeks damages recoverable pursuant to 42 U.S.C. §§ 1981, 1983, 1988, and Title II of the Americans with Disabilities Act (ADA) for any and all Constitutional and Federal claims.

9.      Defendant Officers, at all relevant times, were duly appointed officers employed by the CITY OF PHOENIX Police Department, acting within the scope of their employment with the CITY OF PHOENIX and under the color of State Law. The individual officers are being sued in their individual and official capacities: OSWALD GRENIER, KEVIN McGOWAN, JASON HOBE, RONALDO CANILAO, DAVID HEAD, SUSAN HEIMBINGER, JAMES CLARK, DENNIS LEROUS, RYAN NIELSON, and STEVEN WONG (hereinafter "Defendant Officers").

10.     Defendant DOE SUPERVISORS 1-5 are being sued in their individual and official capacities for failing to properly train, supervise, and hold accountable the individual defendants. DOES SUPERVISORS 1-5 are persons whose names are presently unknown to Plaintiff. When the true names of DOE SUPERVISORS 1-5 become known, Plaintiff will move to amend this Complaint.

11.     Defendant, ANTONIO TARANGO (hereinafter "TARANGO"), at all relevant times, was an employee of the CITY OF PHOENIX Parks Department, acting within the scope of his employment with the CITY OF PHOENIX. This individual defendant is being sued in his individual and official capacity.

12.     Defendant, CITY OF PHOENIX, a municipality duly incorporated under the laws of the State of Arizona, is the employer and principal of the individual Defendant Officers, DOE SUPERVISORS 1-5, and Defendant TARANGO (the "individual defendants"). At all times relevant hereto, the CITY OF PHOENIX employed the

3

individual defendants. The CITY OF PHOENIX is responsible for the policies, practices, and customs of its Police Department and Parks Department.

## NOTICE OF CLAIM

13.     Plaintiff timely filed a Notice of Claim pursuant to A.R.S. § 12-821.01, setting forth the facts underlying Plaintiff's claims against the Defendants named herein.

14.     More than sixty days has passed since the filing of the Notice of Claim, no answer has been received by Plaintiff, and no compensation has been offered by Defendants in response to this claim.

15.     This action has been commenced within one year of the date of the occurrence giving rise to this Complaint.

## FACTS COMMON TO ALL COUNTS

### The Decedent & His Service Dog

1.     At the time of his death, MUHAYMIN was a 43-year-old man suffering from Post-Traumatic Stress Disorder, Acute Claustrophobia, and Schizophrenia.

2.     In order to alleviate the symptoms of his mental disabilities, he carried a service dog named "Chiquita" with him.

### The Community Center Incident

3.     On January 4, 2017, MUHAYMIN was at the Maryvale Community Center with his service dog, "Chiquita."

4.     MUHAYMIN attempted to enter the public men's restroom facilities.

5.     Defendant TARANGO denied access to MUHAYMIN because he was carrying his service dog with him.

6.     TARANGO, in an effort to deny MUHAYMIN access to the bathroom, intentionally and forcibly stepped in MUHAYMIN's path and bumped him away from the entrance.

### The False Report to Police

7.     After the assault by TARANGO on MUHAYMIN, the Phoenix Police received a call regarding an "assault."

8. The call to the Phoenix Police falsely alleged that MUHAYMIN had entered the Community Center and assaulted an employee.

9. The Defendant Officers responded to the call and arrived at the scene shortly thereafter.

10. Upon information and belief, the initial responding officer, Defendant Officer OSWALD GRENIER ("Officer GRENIER"), asked TARANGO if MUHAYMIN had been removed from the premises.

11. Upon learning that MUHAYMIN was still at the Community Center, Officer GRENIER approached MUHAYMIN.

12. Without regard for the federal or state laws specifically prohibiting discrimination or other proof that an animal has been certified, trained, or licensed as a service animal, Officer GRENIER asked MUHAYMIN to see his dog's documentation.

13. MUHAYMIN pleaded with GRENIER to allow him to use the restroom.

14. GRENIER refused to allow MUHAYMIN to enter the restroom until MUHAYMIN provided his personal information.

15. A second officer then approached MUHAYMIN, in a threatening and aggressive matter escalating tensions as he shouted at MUHAYMIN.

16. After several conversations discussing what had transpired between TARANGO and MUHYAMIN before the police arrived on scene, TARANGO admitted that MUHAYMIN had not in fact assaulted him.

17. Defendant Officers eventually allowed MUHAYMIN to use the restroom after he gave them his identification information.

18. TARANGO, in the presence of Defendant Officers acknowledged that MUHAYMIN'S service dog "Chiquita" was well-behaved.

19. While MUHAYMIN used the restroom, Defendant Officers and TARANGO began forming a plan to ban MUHAYMIN from the community center without cause.

20. The Defendants discussed arresting MUHAYMIN if he returned to the community center.

**The Arrest & Death of the Decedent**

21.     Upon information and belief, while MUHAYMIN was using the restroom, Defendant Officers ran a check on MUHAYMIN in their database.

22.     Defendant Officers then escorted MUHAYMIN and "Chiquita" out of the building, and, as soon as they stepped outside, ordered MUHAYMIN to "Stop."

23.     Defendant Officers explained to MUHAYMIN that he had an outstanding warrant and was being arrested.

24.     MUHAYMIN asked several times what the warrant was for.

25.     Defendant Officers ignored his requests for information regarding the outstanding warrant.

26.     Defendant Officers then told MUHAYMIN to put his dog down.

27.     MUHAYMIN explained that he did not have anyone to watch her.

28.     MUHAYMIN then asked Defendant Officers to call his sister, who was his legal guardian.

29.     Defendant Officers told MUHAYMIN they would not call his sister and that he should just let the dog go.

30.     Defendant Officers warned MUHAYMIN that the dog would get hurt if he didn't let her go.

31.     Defendant Officers refused to listen to MUHAYMIN's requests, knocked his service dog out of his arms and forced him to the ground.

32.      Throughout the altercation, MUHAYMIN can be heard yelling, "Okay!" and "I can't breathe" as multiple Defendant Officers placed the weight of their bodies on his head, back, arms, and legs.

33.     After wrestling MUHAYMIN to the ground, one of the Defendant Officers placed his knee on MUHAYMIN's head while another Defendant Officer placed him in handcuffs.

34.     After placing MUHAYMIN in handcuffs, Defendant Officers took MUHAYMIN out to the parking lot towards one of the police SUVs.

35. At the vehicle, Defendant Officers again wrestle MUHAYMIN, who had already been restrained, back down to the ground.

36. Several Defendant Officers placed their weight on top of MUHAYMIN, while one Defendant Officer requested "hobbles" in order to restrict MUHAYMIN's ability to walk.

37. Upon information and belief, due to the excessive force used by Defendant Officers, MUHAYMIN went into cardiac arrest and began vomiting.

38. Thereafter, Defendant Officers were unable to find MUHAYMIN's pulse.

39. After MUHAYMIN was deceased, one of the Defendant Officers began CPR.

## FEDERAL CLAIMS

### COUNT I – 42 U.S.C. § 1983
#### EXCESSIVE FORCE

40. Plaintiff incorporates by reference all other paragraphs in this Complaint as though fully alleged herein.

41. At all relevant times, MUHAYMIN enjoyed and possessed a right under the Fourth and Fourteenth Amendments to the United States Constitution to be free from unreasonable seizure and the use of excessive, unreasonable, and unjustified force.

42. At all relevant times, the individual Defendant Officers and/or DOE SUPERVISORS 1-5 were acting under the color of state law in their capacity as Phoenix police officers, and their acts or omissions were conducted within the scope of their official duties or employment.

43. Defendant Officers and/or DOE SUPERVISORS 1-5 applied unreasonable, excessive, and conscious-shocking physical force to the person of MUHAYMIN, causing his death, as set forth above, without legal justification or excuse.

44. Defendants' actions and use of deadly force were objectively unreasonable in light of the facts and circumstances confronting them at the time and violated the Constitutional rights of MUHAYMIN.

45.     Defendants engaged in the conduct described in this Complaint willfully, maliciously, in bad faith, in reckless disregard of MUHAYMIN's federally protected rights.

46.     As a result of Defendant Officers and/or DOE SUPERVISORS 1-5's unlawful conduct, MUHAYMIN's estate and his statutory beneficiaries suffered harm.

## COUNT II – 42 U.S.C. § 1983
### FAILURE TO PROTECT/INTERVENE

47.     Plaintiff incorporates by reference all other paragraphs in this Complaint as though fully alleged herein.

48.     At all relevant times, MUHAYMIN enjoyed and possessed a right under the Fourth and Fourteenth Amendments to the United States Constitution to be free from unreasonable seizure and the use of excessive, unreasonable, and unjustified force.

49.     At all relevant times, the individual Defendant Officers were acting under the color of state law in their capacity as Phoenix police officers, and their acts or omissions were conducted within the scope of their official duties or employment.

50.     Defendant Officers and/or DOE SUPERVISORS 1-5 applied unreasonable, excessive, and conscious-shocking physical force to the person of MUHAYMIN, causing his death, as set forth above, without legal justification or excuse.

51.     Defendants' actions and use of deadly force were objectively unreasonable in light of the facts and circumstances confronting them at the time and violated the Constitutional rights of MUHAYMIN.

52.     Defendant Officers and/or DOE SUPERVISORS 1-5, and all of them, knew or should have known that they had a duty to protect MUHAYMIN from the application of unreasonable force to his person which was likely to cause substantial harm, and did, in fact, result in substantial harm, including his death.

53.     None of the Defendant Officers and/or DOE SUPERVISORS 1-5 took reasonable steps to protect MUHAYMIN from the objectively unreasonable and

conscience shocking excessive force of other Defendant Officers and/or DOE SUPERVISORS 1-5 or from the excessive force of later responding officers despite being in a position to do so. They are each therefore liable for the injuries and damages resulting from the objectively unreasonable and conscience shocking force of each other Defendant Officer and/or DOE SUPERVISOR.

54. Defendants engaged in the conduct described in this Complaint willfully, maliciously, in bad faith, in reckless disregard of MUHAYMIN's federally protected rights.

55. As a result of Defendants' failure to protect MUHAYMIN from the application of unreasonable force and/or failure to take reasonable steps to prevent the harm from occurring, MUHAYMIN's estate and his statutory beneficiaries suffered harm.

## COUNT III – Title II ADA
### DISCRIMINATION

56. Plaintiff incorporates by reference all other paragraphs in this Complaint as though fully alleged herein.

57. Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131, *et seq.* ("ADA"), prohibits a public entity from discriminating against disabled persons in the provision of the entity's services, programs, and activities.

58. The Maryvale Community Center is a public entity within the meaning of the ADA.

59. At all relevant times, MUHAYMIN was disabled within the meaning of the ADA.

60. To alleviate the symptoms of his mental impairment, MUHAYMIN carried a service dog named "Chiquita."

61. At all relevant times, Defendant TARANGO was acting under color of state law as an employee of Defendant CITY OF PHOENIX, specifically, the Maryvale Community Center, and his acts or omissions were conducted within the scope of his

official duties or employment.

62. At all relevant times, the Defendant Officers and/or DOE SUPERVISORS 1-5 were acting under the color of state law in their capacity as Phoenix police officers, and their acts or omissions were conducted within the scope of their official duties or employment.

63. Under Title II of the ADA, Defendant TARANGO, the Defendant Officers, and/or DOE SUPERVISORS 1-5, were prohibited from discriminating against MUHAYMIN on the basis of his disability and were required to allow MUHAYMIN to enter and use the community center with his service dog without requiring proof that his dig was a certified or otherwise licensed service animal.

64. Defendant TARANGO, the Defendant Officers, and/or DOE SUPERVISORS 1-5 knew or should have known that they had a duty to accommodate MUHAYMIN under the ADA after they were made aware that "Chiquita" was a service dog used by MUHAYMIN to alleviate his mental disabilities.

65. Nonetheless, Defendant TARANGO discriminated against MUHAYMIN when Defendant TARANGO attempted to force MUHAYMIN to leave the Maryvale Community Center because of his dog and falsely reported to the police that MUHAYMIN had assaulted him in an attempt to force MUHAYMIN to leave the Community Center.

66. Nonetheless, Defendant Officers and/or DOE SUPERVISORS 1-5 discriminated against MUHAYMIN when they required proof that MUHAYMIN's dog was a certified or licensed service animal in violation of ADA § 32.206(c)(6), and forced MUHAYMIN to leave the Maryvale Community Center because of his dog.

67. Defendant CITY OF PHOENIX breached its obligations under the ADA by, among other things, failing to train its employees and police officers to deal with individuals with disabilities and the use of service dogs, and/or failing to implement policies with respect to dealing with individuals with mental disabilities and the use of service dogs.

68. As a direct and proximate result of Defendant TARANGO, the Defendant

Officers, Defendant DOE SUPERVISORS 1-5, and Defendant CITY OF PHOENIX's breach of MUHAYMIN's statutory rights as described herein, MUHAYMIN was killed. Both MUHAYMIN's estate, and the statutory beneficiaries and family of MUHAYMIN, have sustained economic and psychological injuries and loss.

69.     In addition to the monetary damages sought herein, Plaintiff also seeks injunctive relief compelling Defendant CITY OF PHOENIX to provide the training required by law so that the individual defendants are better equipped to deal with mentally disabled individuals and the use of service dogs in the future.

### COUNT IV – 42 U.S.C. § 1983
### SUPERVISOR LIABILITY

70.     Plaintiff incorporates by reference all other paragraphs in this Complaint as though fully alleged herein.

71.     At all relevant times, the Defendant DOE SUPERVISORS 1-5 were acting under the color of state law, and their acts or omissions were conducted within the scope of their official duties or employment.

72.     The acts and omissions of the individual defendants, as set forth above, deprived MUHAYMIN of his Constitutional and federally protected rights and ultimately caused his death.

73.     Defendant DOE SUPERVISORS 1-5 failed to prevent the individual defendants from – and/or otherwise directed them to – use unreasonable, excessive and/or deadly force where not objectively reasonable or necessary, refuse to protect MUHAYMIN from the application of unreasonable, excessive and/or deadly force at the hands of their fellow officers, and disregard the federally mandated requirement not to discriminate against individuals with disabilities and/or require proof that an animal is a certified or licensed service animal.

74.     Defendant DOE SUPERVISORS 1-5's failure to prevent the individual defendants from depriving MUHAYMIN of his Constitutional and federally protected rights was so closely related to the deprivation of MUHAYMIN's rights as to be the

moving force that caused his death.

75. As a result of Defendant DOE SUPERVISORS 1-5's conduct, MUHAYMIN's estate and his statutory beneficiaries suffered harm.

### COUNT V – 42 U.S.C. § 1983
#### MUNICIPAL LIABILITY
#### [FAILURE TO TRAIN]

76. Plaintiff incorporates by reference all other paragraphs in this Complaint as though fully alleged herein.

77. At all relevant times, the individual defendants, including Defendant TARANGO, the Defendant Officers and/or DOE SUPERVISORS 1-5, were acting under the color of state law in their capacity as Phoenix police officers and/or City employees, and their acts or omissions were conducted within the scope of their official duties or employment.

78. The acts or omissions of the individual defendants, including Defendant TARANGO, the Defendant Officers and/or DOE SUPERVISORS 1-5, as described above, deprived MUHAYMIN of his federally protected rights and ultimately caused his death.

79. Defendant CITY OF PHOENIX has the authority and responsibility to establish policy for the City's Police and its Community Center employees, to train and oversee operations of the Police and its Community Center employees and the services provided by them, and to evaluate, certify, and maintain the Police Department and the Community Center's compliance with applicable standards.

80. The training policies of Defendant CITY OF PHOENIX, including the Phoenix Police Department and the Community Center, were not adequate to prevent the gross violation of MUHAYMIN's federally protected rights, which led to his death.

81. Defendant CITY OF PHOENIX, including the Phoenix Police Department and the Community Center, were deliberately indifferent to the substantial risk that its policies were inadequate to prevent violations by its employees and/or were otherwise deliberately indifferent to the known or obvious consequences of its failure to train its

police officers and employees adequately.

82.     The failure of Defendant CITY OF PHOENIX, including the Phoenix Police Department and the Community Center, to prevent violations of law by its employees and/or to provide adequate training, caused the deprivation of MUHAYMIN's rights and ultimately his death; that is, Defendant CITY OF PHOENIX's failure to prevent violations of law by its employee and/or to train those employees is so closely related to the deprivation of MUHAYMIN's rights as to be the moving force that caused his death.

**COUNT VI – 42 U.S.C. § 1983**
**MUNICIPAL LIABILITY**
**[UNLAWFUL POLICIES, PRACTICES, AND/OR CUSTOMS]**

83.     Plaintiff incorporates by reference all other paragraphs in this Complaint as though fully alleged herein.

84.     At all relevant times, the individual defendants, including Defendant TARANGO, the Defendant Officers and/or DOE SUPERVISORS 1-5, were acting under the color of state law in their capacity as Phoenix police officers and/or City employees, and their acts or omissions were conducted within the scope of their official duties or employment.

85.     The acts or omissions of the individual defendants, including Defendant TARANGO, the Defendant Officers and/or DOE SUPERVISORS 1-5, as described above, deprived MUHAYMIN of his federally protected rights and ultimately caused his death.

86.     Defendant CITY OF PHOENIX has the authority and responsibility to establish policy for the City's Police and its Community Center employees, to train and oversee operations of the Police and its Community Center employees and the services provided by them, and to evaluate, certify, and maintain the Police Department and the Community Center's compliance with applicable standards.

87.     Upon information and belief, at the time of MUHAYMIN's death, the CITY OF PHOENIX had a policy, practice and/or custom of ignoring misconduct by officers despite knowledge of the violations by policy-making officials who knew or had reason to

13

know of the violations.

88. Upon information and belief, Defendant CITY OF PHOENIX's widespread policy, practice and/or custom caused the deprivation of MUHAYMIN's rights by the individual Defendants; that is, Defendant CITY OF PHOENIX's widespread policy, practice and/or custom is so closely related to the deprivation of MUHAYMIN's rights as to be the moving force that caused MUHAYMIN's death.

## STATE LAW CLAIMS

### COUNT VII – A.R.S. §§ 12-611 *et seq.*, 14-3110
### [WRONGFUL DEATH AND SURVIVAL ACTION]
### EXCESSIVE FORCE (A.R.S. § 13-410)

89. Plaintiff incorporates by reference all other paragraphs in this Complaint as though fully alleged herein.

90. As described herein, Defendant Officers and/or DOE SUPERVISORS 1-5 intentionally pinned MUHAYMIN down, putting unreasonable pressure on MUHAYMIN's head, back, arms and legs, after he was already restrained, causing his death.

91. Under ARS § 13-410, the use of deadly force by a peace officer against another is justified only when the peace officer reasonably believes that it is necessary (1) to defend himself or a third person from what the peace officer reasonably believes to be the use or imminent use of deadly physical force; (2) to effect an arrest or prevent the escape from custody of a person whom the peace officer reasonably believes (a) has committed, attempted to commit, is committing or is attempting to commit a felony involving the use or a threatened use of a deadly weapon, (b) is attempting to escape by use of a deadly weapon, (c) through past or present conduct of the person which is known by the peace officer that the person is likely to endanger human life or inflict serious bodily injury to another unless apprehended without delay, or (d) is necessary to lawfully suppress a riot if the person or another person participating in the riot is armed with a deadly weapon.

92. None of the above situations applied, which would justify the use of deadly

force.

93.     Nonetheless, Defendant Officers and/or DOE SUPERVISORS 1-5 applied unreasonable excessive force to the person of MUHAYMIN, causing his death, as set forth above, without legal justification or excuse.

94.     Defendants' actions and use of deadly force, as described herein, were objectively unreasonable in light of the facts and circumstances confronting them at the time.

95.     As a result of Defendants' unlawful conduct, MUHAYMIN's estate and his statutory beneficiaries suffered harm.

### COUNT VIII – A.R.S. §§ 12-611 *et seq.*, 14-3110
### [WRONGFUL DEATH AND SURVIVAL ACTION]
### BATTERY

96.     Plaintiff incorporates by reference all other paragraphs in this Complaint as though fully alleged herein.

97.     As described herein, Defendant TARANGO intentionally denied MUHAYMIN access to the Community Center bathroom because of his service dog, by stepping in his path and bumping him away from the entrance, causing a harmful or offensive contact with MUHAYMIN.

98.     As described herein, Defendant Officers and/or DOE SUPERVISORS 1-5 intentionally pinned MUHAYMIN down, putting unreasonable pressure on MUHAYMIN's head, back, arms and legs, after he was already restrained, causing a harmful or offensive contact with MUHAYMIN. As a direct and proximate result of this harmful or offensive contact, MUYAMIN died.

99.     Defendant TARANGO, Defendant Officers and/or DOE SUPERVISORS 1-5's acts constituted a battery upon MUHAYMIN in that the above described bodily contact was intentional, unauthorized, or grossly offensive in nature.

100.     The actions of Defendant TARANGO, Defendant Officers and/or DOE SUPERVISORS 1-5 were intentional, reckless, and unwarranted, and without any just

cause or provocation.

101.    As a direct and proximate result of Defendant TARANGO, Defendant Officers and/or DOE SUPERVISORS 1-5's conduct, MUHAYMIN was subjected to great physical and emotional pain and humiliation, was deprived of his liberty, and was ultimately killed.

102.    The conduct described in this Complaint was undertaken by Defendant TARANGO, Defendant Officers and/or DOE SUPERVISORS 1-5 within the scope of their employment and under color of law such that their employer, Defendant CITY OF PHOENIX, is vicariously liable for their actions.

103.    As a result of Defendants' unlawful conduct, MUHAYMIN's estate and his statutory beneficiaries suffered harm.

### COUNT IX – A.R.S. §§ 12-611 *et seq.*, 14-3110
#### [WRONGFUL DEATH AND SURVIVAL ACTION]
#### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

104.    Plaintiff incorporate by reference all other paragraphs in this Complaint as though fully alleged herein.

105.    Defendant TARANGO's conduct, in denying MUHAYMIN access to the Community Center bathroom because of his service dog, stepping in his path and bumping him away from the entrance, and making a false report to the police that MUHAYMIN had assaulted him in order to force MUHAYMIN to leave the Community Center, without provocation or justification, was extreme, outrageous and utterly intolerable in a civilized society; conduct which excessed all reasonable bounds of decency.

106.    Defendant Officers and/or DOE SUPERVISORS 1-5's conduct, in disregarding MYUHAYMIN's pleas to get someone to watch his dog before placing him under arrest, threatening MNUHAYMIN, telling him his dog would "get hurt" if he did let her go, and pinning MUHAYMIN down, putting unreasonable pressure on MUHAYMIN's head, back, arms and legs, after he was already restrained, without provocation or justification, was extreme, outrageous and utterly intolerable in a civilized society; conduct

16

which excessed all reasonable bounds of decency.

107.    Defendant TARANGO, Defendant Officers and/or DOE SUPERVISORS 1-5's conduct, as described above, was intended to and did cause severe emotional distress to MUHAYMIN.

108.    The conduct of Defendant TARANGO, Defendant Officers and/or DOE SUPERVISORS 1-5 was the direct and proximate cause of injury and damage to MUHAYMIN and violated MUHAYMIN's statutory and common law rights as guaranteed by the laws and Constitution of the State of Arizona.

109.    As a result of the foregoing, MUHAYMIN was deprived of his liberty, was subjected to serious physical and emotional pain and suffering, and was ultimately killed.

110.    As a result of Defendants' unlawful conduct, MUHAYMIN's estate and his statutory beneficiaries suffered harm.

## COUNT X – A.R.S. §§ 12-611 *et seq.*, 14-3110
### [WRONGFUL DEATH AND SURVIVAL ACTION]
### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

111.    Plaintiff incorporates by reference all other paragraphs in this Complaint as though fully alleged herein.

112.    Defendant TARANGO's conduct, in denying MUHAYMIN access to the Community Center bathroom because of his service dog, stepping in his path and bumping him away from the entrance, and making a false report to the police that MUHAYMIN had assaulted him in order to force MUHAYMIN to leave the Community Center, without provocation or justification, was careless and negligent as to the emotional health of MUHAYMIN, and caused severe emotional distress to MUHAYMIN.

113.    Defendant Officers and/or DOE SUPERVISORS 1-5's conduct, in disregarding MYUHAYMIN's pleas to get someone to watch his dog before placing him under arrest, threatening MNUHAYMIN, telling him his dog would "get hurt" if he did let her go, and pinning MUHAYMIN down, putting unreasonable pressure on MUHAYMIN's head, back, arms and legs, after he was already restrained, without provocation or

justification, was careless and negligent as to the emotional health of MUHAYMIN, and caused severe emotional distress to MUHAYMIN.

114. The conduct of Defendant TARANGO, Defendant Officers and/or DOE SUPERVISORS 1-5 was the direct and proximate cause of injury and damage to MUHAYMIN and violated MUHAYMIN's statutory and common law rights as guaranteed by the laws and Constitution of the State of Arizona.

115. As a result of the foregoing, MUHAYMIN was deprived of his liberty, was subjected to serious physical and emotional pain and suffering, and was ultimately killed.

116. As a result of Defendants' unlawful conduct, MUHAYMIN's estate and his statutory beneficiaries suffered harm.

**COUNT XI – A.R.S. §§ 12-611 *et seq.*, 14-3110**
**[WRONGFUL DEATH AND SURVIVAL ACTION]**
**NEGLIGENCE**

117. Plaintiff incorporates by reference all other paragraphs in this Complaint as though fully alleged herein.

118. Defendant Officers and/or DOE SUPERVISORS 1-5, while acting as agents and employees for Defendant CITY OF PHOENIX, owed a duty to MUHAYMIN to perform their duties as officers of the law without the use of excessive force.

119. Defendant TARANGO, Defendant Officers and/or DOE SUPERVISORS 1-5, while acting as agents and employees for Defendant CITY OF PHOENIX, owed a duty to MUHAYMIN not to discriminate against him in the provision of public services because of his service dog.

120. Defendant Officers and/or DOE SUPERVISORS 1-5's use of force upon MUHAYMIN when they had no lawful authority to use excessive and/or deadly force against MUHAYMIN, constitutes negligence for which Defendant Officers and/or DOE SUPERVISORS 1-5 are individually liable.

121. Defendant TARANGO, Defendant Officers and/or DOE SUPERVISORS 1-5's actions, in forcing MUHAYMIN to leave the Community Center because of his service

18

dog or provide proof that his service dog was otherwise licensed or certified, constitutes negligence for which Defendant TARANGO, Defendant Officers and/or DOE SUPERVISORS 1-5 are individually liable.

122. In taking the actions as described above, Defendant TARANGO, Defendant Officers and/or DOE SUPERVISORS 1-5 breached their duty to refrain from such unreasonable and indifferent conduct.

123. As a direct and proximate result of Defendant TARANGO, Defendant Officers and/or DOE SUPERVISORS 1-5's conduct, MUHAYMIN was subjected to great physical and emotional pain and humiliation, was deprived of his liberty, and was ultimately killed.

124. The conduct described in this Complaint was undertaken by Defendants within the scope of their employment and under color of law such that their employer, Defendant CITY OF PHOENIX, is vicariously liable for their actions.

125. As a result of Defendants' unlawful conduct, MUHAYMIN's estate and his statutory beneficiaries suffered harm.

## COUNT XII – A.R.S. §§ 12-611 *et seq.*, 14-3110
### [WRONGFUL DEATH AND SURVIVAL ACTION]
### GROSS NEGLIGENCE

126. Plaintiff incorporates by reference all other paragraphs in this Complaint as though fully alleged herein.

127. Defendant Officers and/or DOE SUPERVISORS 1-5, while acting as agents and employees for Defendant CITY OF PHOENIX, owed a duty to MUHAYMIN to perform their duties as officers of the law without the use of excessive force.

128. Defendant TARANGO, Defendant Officers and/or DOE SUPERVISORS 1-5, while acting as agents and employees for Defendant CITY OF PHOENIX, owed a duty to MUHAYMIN not to discriminate against him in the provision of public services because of his service dog.

129. Defendant Officers and/or DOE SUPERVISORS 1-5's use of force upon

MUHAYMIN when they had no lawful authority to use excessive and/or deadly force against MUHAYMIN constitutes reckless and/or gross negligence for which Defendant Officers and/or DOE SUPERVISORS 1-5 are individually liable.

130.    Defendant TARANGO, Defendant Officers and/or DOE SUPERVISORS 1-5's actions, in forcing MUHAYMIN to leave the Community Center because of his service dog or provide proof that his service dog was otherwise licensed or certified, constitutes reckless and/or gross negligence for which Defendant TARANGO and Defendant Officers are individual liable.

131.    The actions of Defendant TARANGO, Defendant Officers and/or DOE SUPERVISORS 1-5, as described above, were taken with such reckless disregard for the life and safety of MUHAYMIN so as to be a conscious violation of MUHAYMIN's rights to life and liberty.

132.    As a direct and proximate result of Defendant TARANGO, Defendant Officers and/or DOE SUPERVISORS 1-5's conduct, MUHAYMIN was subjected to great physical and emotional pain and humiliation, was deprived of his liberty, and was ultimately killed.

133.    The conduct described in this Complaint was undertaken by Defendants within the scope of their employment and under color of law such that their employer, Defendant CITY OF PHOENIX, is vicariously liable for their actions.

134.    As a result of Defendants' unlawful conduct, MUHAYMIN's estate and his statutory beneficiaries suffered harm.

**COUNT XIII – ARIZONA CIVIL RIGHTS ACT ("ACRA")**
**DISCRIMINATION**

135.    Plaintiff incorporates by reference all other paragraphs in this Complaint as though fully alleged herein.

136.    The Arizona Civil Rights Act, ("ACRA"), A.R.S. §§ 41-1492, *et seq.*, incorporates by reference the provisions of its analogous federal statute, the ADA.

137.    The Maryvale Community Center is a public entity within the meaning of

the ACRA, as incorporated by the ADA.

138.　At all relevant times, MUHAYMIN was disabled within the meaning of the ACRA, as incorporated by the ADA.

139.　To alleviate the symptoms of his mental impairment, MUHAYMIN carried a service dog named "Chiquita."

140.　To alleviate the symptoms of his mental impairment, MUHAYMIN carried a service dog named "Chiquita."

141.　At all relevant times, Defendant TARANGO was acting under color of state law as an employee of Defendant CITY OF PHOENIX, specifically, the Maryvale Community Center, and his acts or omissions were conducted within the scope of his official duties or employment.

142.　At all relevant times, the Defendant Officers and/or DOE SUPERVISORS 1-5 were acting under the color of state law in their capacity as Phoenix police officers, and their acts or omissions were conducted within the scope of their official duties or employment.

143.　Nonetheless, Defendant TARANGO discriminated against MUHAYMIN when Defendant TARANGO attempted to force MUHAYMIN to leave the Maryvale Community Center because of his dog and falsely reported to the police that MUHAYMIN had assaulted him in an attempt to force MUHAYMIN to leave the Community Center.

144.　Nonetheless, Defendant Officers and/or DOE SUPERVISORS 1-5 discriminated against MUHAYMIN when they required proof that MUHAYMIN's dog was a certified or licensed service animal in violation of the ACRA and forced MUHAYMIN to leave the Maryvale Community Center because of his dog.

145.　Defendant CITY OF PHOENIX breached its obligations under the ACRA by, among other things, failing to train its employees and police officers to deal with individuals with disabilities and the use of service dogs, and/or failing to implement policies with respect to dealing with individuals with mental disabilities and the use of service dogs.

146.   As a direct and proximate result of Defendant TARANGO, the Defendant Officers, Defendant DOE SUPERVISORS 1-5, and Defendant CITY OF PHOENIX's breach of MUHAYMIN's statutory rights as described herein, MUHAYMIN was killed. Both MUHAYMIN's estate, and the statutory beneficiaries and family of MUHAYMIN, have sustained economic and psychological injuries and loss.

147.   In addition to the monetary damages sought herein, Plaintiff also seeks injunctive relief compelling Defendant CITY OF PHOENIX to provide the training required by law so that the individual defendants are better equipped to deal with mentally disabled individuals and the use of service dogs in the future.

### COUNT XIV – A.R.S. §§ 12-611 *et seq.*, 14-3110
#### [WRONGFUL DEATH AND SURVIVAL ACTION]
#### NEGLIGENT HIRING, SUPERVISION, RETENTION, AND/OR TRAINING

148.   Plaintiff incorporates by reference all other paragraphs in this Complaint as though fully alleged herein.

149.   As described herein, CITY OF PHOENIX and/or DOE Supervisors 1-5 were negligent in their hiring, supervision, retention, and/or training of one or more Defendant Officers and Defendant TARANGO.

150.   The acts and conduct of Defendant Officers and Defendant TARANGO as described in this Complaint were the direct and proximate cause of the injuries and damages to MUHAYMIN, and violated MUHAYMIN's statutory and common law rights as guaranteed by the law and Constitution of the State of Arizona.

151.   As a result of the conduct described herein, MUHAYMIN's estate and his statutory beneficiaries suffered harm.

### STATE AND FEDERAL CLAIM

### COUNT XV
#### CIVIL CONSPIRACY

152.   Plaintiff incorporates by reference all other paragraphs in this Complaint as though fully alleged herein.

153. As described herein, DEFENDANTS, and each of them, including Defendant TARANGO and at least two Defendant Officers, agreed and conspired to violate MUHAYMIN's statutory, common law, and Constitutional rights, and did in fact succeed in violating those rights.

154. Specifically, Defendant TARANGO and Defendant Officers can be heard and seen on video discussing their plan to have MUHAYMIN arrested and banned from the Community Center, despite having done nothing wrong.

155. In fact, one of the Defendant Officers has previously banned MUHAYMIN from entering other buildings in the City and can be heard saying he dealt with MUHAYMIN at the Fry's down the street.

156. The Defendant Officers concocted this unlawful plan without input from Defendant TARANGO, who went along with and agreed to the plan, despite Defendant TARANGO's admission to Defendant Officers that he had knowingly made a false report regarding MUHAYMIN's alleged unlawful conduct in the Community Center, as described above, in direct violation of Ariz. Rev. Stat. Ann. § 13-2907.01.

157. DEFENDANTS carried out said unlawful plan and conspiracy, by removing MUHAYMIN from the Community Center, forcefully arresting MUHAYMIN for an outstanding misdemeanor warrant (discovered only after the plan was fully realized), and using such excessive and unlawful force in arresting MUHAYMIN that he lost his life, effectively precluding him from entering the Community Center or any other establishment in the City in the future.

158. The plan, agreement, acts, and conduct of Defendant TARANGO and Defendant Officers, as described in this Complaint, were the direct and proximate cause of the injuries and damages to MUHAYMIN, and violated MUHAYMIN's rights as guaranteed by the United States Constitution, as well as the statutory and common law rights as guaranteed by the law and Constitution of the State of Arizona.

159. As a result of the conduct described herein, MUHAYMIN's estate and his statutory beneficiaries suffered harm.

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff demands judgment against the Defendants, and each of them, for the violations of MUHAYMIN's Constitutional and statutory rights as follows:

1. For compensatory damages recoverable under A.R.S. §§ 12-611, *et seq.*, and 14-311 in an amount of not less than Ten Million Dollars ($10,000,000) or such other amount as may be deemed fair and just by the trier of fact;

   a. Special damages include, but are not limited to, loss of income and services, medical fees and expenses, and funeral and burial expenses, incurred on behalf of MUHAYMIN;

   b. General damages include, but are not limited to, loss of consortium, pain and suffering, loss of enjoyment of life, and wrongful death;

2. For punitive damages against the individual Defendants in an amount to be determined by the trier of fact;

3. For pre-judgment and post-judgment interest;

4. For attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

5. For such other and further relief as the Court deems just and proper.

Respectfully submitted this 17th day of January 2018.

**PRICE LAW GROUP, APC**

/s/ David A. Chami
David A. Chami, AZ #027585
Attorney for Plaintiff

## JURY DEMAND

Plaintiff hereby demands trial by jury for all issues and claims raised in this Complaint.

Respectfully submitted this 17th day of January 2018.

**PRICE LAW GROUP, APC**

/s/ David A. Chami
David A. Chami, AZ #027585
Attorney for Plaintiff