Daniel J. O'Connor, Jr., Bar No. 010081
Justin D. Holm, Bar No. 025202
**O'CONNOR & CAMPBELL, P.C.**
7955 South Priest Drive
Tempe, AZ 85284
daniel.oconnor@occlaw.com
justin.holm@occlaw.com
602-241-7000
*Attorneys for Defendants*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| MUSSALINA MUHAYMIN as Personal Representative of the Estate of MUHAMMAD ABDUL MUHAYMIN JR.,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF PHOENIX; an Arizona Municipal Corporation; ANTONIO TARANGO; Officer OSWALD GRENIER; Officer KEVIN McGOWAN; Officer JASON HOBE; Officer RONALDO CANILAO; Officer DAVID HEAD; Officer SUSAN HEIMBINGER; Officer JAMES CLARK; Officer DENNIS LEROUS; Officer RYAN NIELSON; Officer STEVEN WONG; and DOE Supervisors 1-5,<br><br>Defendants. | Case No.: 2:17-cv-04565-SPL<br><br>**DEFENDANTS' AMENDED MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT BASED ON QUALIFIED IMMUNITY**<br><br>(Oral Argument Requested) |

In accordance with FED. R. CIV. P. 8(a) and 12(b)(6), defendants City of Phoenix, Antonio Tarango, Oswald Grenier, Kevin McGowan, Jason Hobel,

Ronaldo Canilao, David Head, Susan Heimbigner, James Clark, Dennis Leroux, Ryan Nielsen, and Steven Wong (collectively the "Phoenix Defendants"), move to dismiss plaintiff's First Amended Complaint. This motion is supported by the following Memorandum of Points and Authorities.[1]

In accordance with General Order 17-08, because the Phoenix Defendants' motion is "based on … qualified immunity of a public official … the time for the moving party to answer … shall be set by the Court in its order deciding the motion."[2] For this reason, the Court should defer the Phoenix Defendants' responsive pleading deadline until the Court decides this Motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

### Introduction

Plaintiff's Amended Complaint asserts both federal- and state-law claims against the Phoenix Defendants. Counts I, II, IV, V, and VI purport to assert 42 U.S.C. § 1983 claims to remedy alleged violations of Muhaymin's constitutional rights. The problem is the Counts fail to: (1) articulate the specific right asserted; (2) articulate specific conduct violating the right; and (3) causally tie the alleged violations to specific conduct by individual government actors. Plaintiff's failure to clearly identify constitutional rights renders her claims against the Phoenix Defendants subject to qualified immunity. These Counts should be dismissed without leave to amend.

Most of plaintiff's state-law tort claims should suffer a similar fate. Plaintiff did not follow Arizona's notice-of-claim statute by individually identifying the facts, circumstances, and sum-certain settlement offer for her Battery (Count VIII), Intentional Infliction of Emotional Distress (Count IX), Negligent Infliction of

---

[1] A Certificate of Conferral is attached as **Exhibit 1**.
[2] General Order 17-08, p. 3, ¶ 5(a).

- 2 -

Emotional Distress (Count X), Negligent Hiring, Supervision, Retention, and/or Training (Count XIV), and state-law Civil Conspiracy (Count XV[3]) claim. This failure bars these claims. These state-law tort claims against the Phoenix Defendants should be dismissed with prejudice.

Plaintiff's remaining claims fail as a matter of law. Her American's with Disabilities Act ("ADA"), Arizona Civil Rights Act ("ACRA"), Negligence, and Gross Negligence claims are based on plaintiff's erroneous assumption Muhaymin's dog qualified as a "service animal." The dog did not have the statutorily required training to qualify as a service animal. Moreover, when Muhaymin was arrested, the animal was unleashed and out of control. These undisputed facts render Counts III, XI, XII, XIII subject to dismissal as a matter of law. Plaintiff's state-law, excessive-force and federal civil-conspiracy claims fail because Phoenix Police had a valid reason to arrest Muhaymin and did so using a reasonable amount of force given the circumstances. Counts VII and XV should be dismissed without leave to amend.

In short, the Court should entirely dismiss the Amended Complaint.

**Legal Standard**

Under FED. R. CIV. P. 12(b)(6), a defendant may move to dismiss when the action fails to allege facts stating a facially "plausible" claim for relief.[4] An action is facially plausible when it allows the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged."[5] While not a "probability requirement," the plaintiff must demonstrate "more than a *sheer possibility* that a defendant has acted unlawfully."[6] The court "accept[s] factual allegations in the

---

[3] Count XV contains both state- and federal-law claims. Plaintiff's federal-law claims also fail as a matter of law. *See* discussion at pp. 16 and 17 below.
[4] *Bell Atlantic Corp. v. Twombly*, 550, U.S. 544, 570, 127 S. Ct. 1955, 1973-74 (2007).
[5] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949-50 (2009).
[6] *Id.* (emphasis added).

- 3 -

complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party."[7] Regardless, the court need not assume the truth of legal conclusions "cast in the form of factual allegations."[8] Conclusory allegations are "insufficient" to defeat a motion to dismiss.[9]

Where the relevant inquiries turn on the reasonableness of conduct under the circumstances, video recordings of the incident are compelling evidence.[10] A video of the incident can render the facts indisputable.[11] Under these circumstances, reasonableness becomes a "pure question of law."[12] Many of the officers involved in Muhaymin's arrest were wearing body cameras.[13]

Under Fed. R. Civ. P. 12(d), when a Rule 12(b)(6) motion presents matters outside of the pleadings, the motion is to be treated as one for summary judgment. By attaching the body-camera videos to this motion, the Phoenix Defendants acknowledge this motion should be treated as one for summary judgment.

## Facts[14]

On January 4, 2017, at approximately 9:20 a.m., Muhammad Muhaymin, a homeless man, entered the Maryvale Community Center with his Chihuahua, Chaquita. Chaquita was not leashed or tethered. The Community Center manager, Antonio Tarango approached Muhaymin and asked him to leave until Chaquita was leashed. The men argued and "chest bumped" as Muhaymin forced his way toward the men's restroom. When Muhaymin chest bumped Tarango another

---

[7] *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).
[8] *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011).
[9] *Iqbal*, 556 U.S. at 678, 19 S. Ct. at 1949-50.
[10] *See, e.g. Rodeman v. Foster*, 767 F.Supp.2d 1176, 1183-84 (D. Col. 2011).
[11] *Id.* at 1184.
[12] *Id.* at 1183-84 (citing *Scott v. Harris*, 550 U.S. 372, 381, n. 8, 127 S. Ct. 1769, 1776 (2007)).
[13] The videos are attached as **Exhibit 2**. All exhibits are authentic copies of the originals.
[14] The following summary of facts is gleaned from Phoenix Police Department Incident Report No. 201700000019424, attached as **Exhibit 3** and Exhibit 2. The Incident report is nearly 230 pages long. The Phoenix Defendants attach a PDF of the report on the Exhibit DVD.

- 4 -

Community Center employee called police.

Officers began arriving at 9:32 a.m. and observed Muhaymin arguing with Tarango outside the men's room. Initially Muhaymin refused to provide identification, but eventually provided his name so he could use the bathroom. During these interactions, Muhaymin agreed to keep Chaquita under control by holding her.

While Muhaymin used the bathroom, officers ran his name and discovered an outstanding warrant from the City of Mesa. Officers decided they would escort him outside and arrest him. When Muhaymin finished using the restroom, officers escorted him outside and placed him under arrest. Muhaymin refused to put Chaquita down. Instead, he requested officers call his "sensei" to come and take care of the dog. When Muhaymin refused to put the dog down, he was placed against the wall, and his left wrist was then brought behind his back and handcuffed.

During the struggle, Muhaymin thrashed back and forth, pulling left and right to break free from officers. In addition, he repeatedly tensed and then went limp as he struggled with officers. An officer delivered an elbow strike to Muhaymin's right shoulder to get him to put down the dog and release his right arm. Officers ultimately used a baton under Muhaymin's right arm to leverage his wrist free. Muhaymin was double-cuffed (two sets of handcuffs, one on each wrist, linked in the middle) with his hands behind his back.

After handcuffing Muhaymin, officers escorted him to a police SUV. Muhaymin continued shouting about his "sensei" and struggling with officers tensing and going limp as described above. When Muhaymin would go limp, officers would raise his arms behind him in to encourage him to walk on his own. Muhaymin continued to kick, pull, and yell.

Before loading Muhaymin into the SUV, officers searched him. One officer knew he had knives on him during prior arrests. While being searched, Muhaymin repositioned his arms in front of his body. He then pushed off the SUV, forcing officers to take him to the ground. It took four officers to restrain Muhaymin.

Officers eventually disconnected the handcuffs and re-handcuff Muhaymin with a single pair of cuffs behind his back. During the struggle, Chaquita repeatedly attempted to bite several officers. One officer removed his Taser and "sparked" it to scare the dog away. The Taser was <u>not</u> deployed against either Muhaymin or Chaquita during the arrest.

Once Muhaymin was handcuffed and restrained, he went limp like he had repeatedly throughout the struggle. Shortly after the officers stood up, Muhaymin vomited. Officers rolled him onto his side, but Muhaymin stopped breathing. Muhaymin's pulse was faint, so officers cleared his airway, began chest compressions, and requested medical support. Officers continued chest compressions until EMTs arrived. EMTs took over Muhaymin's care and transported him to Maryvale Hospital, where he was pronounced dead.

Other than the one elbow strike noted above, no other officers punched, struck, or kicked Muhaymin. No Tasers, pepper spray, or electrical restraints were used against him. While Muhaymin was resisting arrest, officers noted his extreme strength. At least one witness believed officers were more gentle with Muhaymin than his behavior justified.

## Discussion

**1. Phoenix Police did not use excessive force against Muhaymin.**

42 U.S.C. § 1983 provides a cause of action against any "person who, under color of any statute, ordinance, regulation, custom, or usage of any State" deprives

another of a protected right.[15] 1983 claims require the plaintiff to establish the defendant deprived her of a guaranteed right or privilege.[16] The test has become two-prong requiring the plaintiff establish: (1) "the conduct complained of has been committed under the color of state law;" and (2) the "conduct worked a denial of rights secured by the Constitution or laws of the United States."[17] Unless a plaintiff satisfies *both* prongs, her 1983 claim fails, and the Court should dismiss it.

Negligence—and even gross negligence—are not enough to support a 1983 action.[18] The plaintiff must establish facts demonstrating a specific intent to injure plaintiff.[19] Importantly, courts do not *infer* intent from negligent or grossly negligent conduct—the government official must intend to injure the plaintiff.[20] Plaintiff must also establish a causal connection between the government actors' conduct and her injuries or the claim fails.[21]

The right to make an arrest "necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it."[22] Courts evaluate excessive-force claims in terms of the officer's objective reasonableness based on information possessed during the arrest.[23] The court must balance the right intruded on against the government interest at stake, the nature of the crime, the imminent threat of harm to the police and others, and whether the arrestee was resisting arrest.[24] Importantly, objective reasonableness is based on the

---

[15] 42 U.S.C. § 1983.
[16] *Flagg Brothers, Inc. v. Brooks*, 436 U.S. 149, 155-56, 98 S.Ct. 1729, 1733 (1978).
[17] *Martinez v. Colon*, 54 F.3d 980, 984 (1st Cir. 1995). *See also James v. Tex. Collin Cty.*, 535 F.3d 365, 373 (5th Cir. 2008)(same).
[18] *Gazette v. City of Pontiac*, 341 F.3d 1061, 1066-67 (6th Cir. 1994).
[19] *Id.*
[20] *Id.*
[21] *Id.*
[22] *Graham v. Connor*, 490 U.S. 386, 396, 109 S. Ct. 1865, 1872 (1989).
[23] *Id.*, at 396-97, 109 S. Ct. at 1872.
[24] *Id.* at 396, 109 S. Ct. 1872.

perspective of the officer at the scene and <u>not</u> the 20/20 vision of hindsight.[25] If the alleged conduct is justified under federal law, state-law excessive force claims also fail.[26]

Muhaymin committed an assault. Police officers discovered he had an outstanding warrant, which presented valid basis for his arrest. The records, witness statements, and videos show Muhaymin behaving erratically and as if he were on drugs. Muhaymin also displayed extreme strength. Throughout his arrest Muhaymin tensed up, thrashed about, pushed, and kicked at officers. The videos show Muhaymin was not compliant with officer commands. The force exerted by officers throughout the arrest was reasonable and necessary based on Muhaymin's level of resistance during the arrest. Once Muhaymin got his hands in front of him to push off the police SUV, officers used reasonable force to remove the handcuffs and reposition them to Muhaymin's back.

There are legitimate officer-safety reasons an arrestee is handcuffed behind his back. The Amended Complaint does not identify conduct demonstrating a specific action of the Phoenix Police was an excessive-force violation or caused Muhaymin's death. Counts I and VII (Federal and State Excessive Force) of the Amended Complaint should be dismissed without leave to amend.

### 2. Phoenix Police did not fail to protect Muhaymin.

Police officers have "an affirmative duty to intercede on the behalf of a citizen whose constitutional rights are being violated in their presence by other officers."[27] An officer who fails to intervene is liable for the citizen's preventable harm.[28] To

---

[25] *Id.*
[26] *Marquez v. City of Phoenix*, 693 F.3d 1167, 1176 (9th Cir. 2012) (holding where officers acted reasonably under federal excessive-force standard, state-law claims also fail).
[27] *O'Neill v. Krzeminski*, 839 F.2d 9, 11 (2d Cir. 1988).
[28] *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994.

- 8 -

establish liability the citizen must show: 1) officers used excessive force; 2) the arrest was unjustified; and 3) a constitutional violation.[29] In addition, the citizen must demonstrate officers had a "realistic opportunity to intervene and prevent the harm from occurring."[30] The Amended Complaint fails to meet this standard.

The force used against Muhaymin was both reasonable and necessary, given his behavior. Setting this argument aside, plaintiff cannot show Muhaymin's arrest was unjustified. It is undisputed Muhaymin had an outstanding warrant for his arrest. The "existence of probable cause to arrest constitutes justification and is *a complete defense to an action for false arrest.*"[31] There is no evidence officers failed to intervene on Muhaymin's behalf during his arrest, so Count II of the Amended Complaint should be dismissed without leave to amend.

### 3. The Phoenix Defendants properly trained and supervised their subordinates.

A municipality cannot be held liable solely because it employs a tortfeasor, but municipalities are not insulated from 1983 claims.[32] Instead, failure to train/supervise can be the basis for a claim against a city.[33] Liability "only attach[es] to a municipality when its failure to train amounts to *deliberate indifference* to the rights of persons with whom the police come into contact."[34] The municipal conduct must "reflect a deliberate or conscious choice by the municipality"—something rising to the level of a "policy."[35]

---

[29] *Id.*
[30] *Id.*
[31] *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (emphasis added).
[32] *Leatherman v. Tarrant Cty. Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 166, 113 S. Ct. 1160, 1162 (1993).
[33] *See, e.g. City of Canton v. Harris*, 489 U.S. 378, 387, 109 S. Ct. 1197, 1204 (1989) (emphasis added).
[34] *Id.* at 388, 109 S. Ct. at 1204-05.(emphasis added).
[35] *Id.* at 389, 109 S. Ct. at 1204-05.

The alleged policy need not be formal, but must stem from an "officially designated legislative organ" or the decision of a "final and unreviewable" policy maker.[36] Regardless of the government actor, liability only attaches if the decision is "final."[37] Where the decision maker holds discretion to choose among several options, the choice alone does **not** give rise to municipal liability.[38] If the choice is discretionary, it does not rise to the level of a policy unless it is "final and unreviewable" and is "not constrained by the official policies of superior officials."[39] Importantly, the "policy" must "represent a regularly occurring event."[40] It must be "so permanent and well settled as to have the force of law."[41]

In a failure-to-train/supervise claim, plaintiff must show the Phoenix Defendants' training policies and/or supervisor were: (1) inadequate; (2) reflect "a deliberate or conscious choice by [the] municipality" to violate the rights of the public; and (3) specifically caused plaintiff's alleged constitutional injury.[42] Plaintiff must put forth *specific facts* identifying the policy, the officer's specifically alleged violations, *and* the causal link between the violations and the injury.[43]

Deliberate indifference is a "high" evidentiary burden.[44] To establish it plaintiff must show the Phoenix Defendants had: "(1) subjective knowledge of a serious risk of harm; and (2) disregarded…that risk; (3) by conduct that is more than mere negligence."[45] Plaintiff must show the municipality and supervising officers knew of

---

[36] *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690-91, 98 S. Ct. 2018, 2036 (1978). *See also Ryan v. City of Detroit*, 977 F.Supp.2d 738, 747-48 (E.D. Mich. 2013) (quoting *Pembaur v. City of Cincinnati,* 475 U.S. 469, 482-83, 106 S. Ct. 1292 (1986)).
[37] *Id.* at 748.
[38] *Id.*
[39] *Id.*
[40] *Id.*
[41] *Id.*
[42] *Andrews v. Fowler*, 98 F.3d 1069, 1076 (5th Cir. 1996).
[43] *Id.*
[44] *Whitley v. Hanna*, 729 F.3d 631, 641 (5th Cir. 2013).
[45] *Cagle v. Sutherland*, 334 F.3d 980, 987 (11th Cir. 2003).

a "pattern" of inappropriate conduct, failed to take "obvious" steps to prevent or stop it, and the failure caused an injury to a constitutionally protected right.[46] Actual knowledge is "critical to the inquiry."[47] Mere negligence and even gross negligence are <u>not</u> enough.[48] Plaintiff must alleged *facts* demonstrating actual knowledge and a specific intent to injure.[49] Without both the claim fails.

Counts IV, V, and VI cannot meet this high evidentiary burden for **five** reasons. **First**, the Counts do not provide fact-specific allegations of a pattern of inappropriate conduct by the Phoenix Defendants.[50] Instead, they restate legal conclusions couched as facts and ambiguously attribute those "facts" to the "defendants" with no specific attributions to the individual defendants. **Second**, the Counts identify no specific, non-speculative steps the Phoenix Defendants could have taken to stop the alleged behavior. **Third**, for the reasons discussed above, plaintiff identifies no constitutionally protected right violated by the Phoenix Defendants. **Fourth**, the Amended Complaint identifies no specific Phoenix Police Department policies, customs, or usages violating plaintiff's constitutional rights. Similarly, the Amended Complaint makes no specific allegations asserting the officers involved possessed the requisite final and unreviewable decision-making authority required by the analysis above. **Finally**, the Amended Complaint offers nothing to demonstrate how Muhaymin's alleged deprivations are causally connected to a final, unreviewable Phoenix policy.

For these reasons, Counts IV, V, and VI should be dismissed without leave to amend.

---

[46] *Whitley*, 729 F.3d at 640.
[47] *Id.* at 641.
[48] *Id.*
[49] *Id.*
[50] A training system similar to the one Phoenix follows (on-the-job training combined with mandatory attendance of the police academy) has been reviewed and found constitutionally adequate. *See, e.g. Andrews*, 98 F.3d at 1076-77.

- 11 -

### 4. The Phoenix Defendants did not discriminate against Muhaymin.

The Amended Complaint alleges Muhaymin's Chihuahua, "Chaquita" is a "service" animal to help Muhaymin with alleged diagnoses of PTSD and claustrophobia. Muhaymin used the dog for emotional support and comfort. Comfort animals do not qualify as "service" animals under the ADA[51] or the Arizona Civil Rights Act ("ACRA").[52] Rather, to qualify the dog must be trained to perform specific tasks to benefit the disabled individual.[53] To be a service animal Chaquita must have been trained to specific respond to Muhaymin's psychiatric actions. Chaquita lacked specific training and was only present to "help calm" Muhaymin so she does not qualify as a service animal.[54]

The ADA and ACRA carve out exceptions allowing the exclusion of a "service animal" if: 1) its behavior directly threatens the health or safety of others; 2) it has a history of such behavior; or 3) is not under the control of the handler.[55] "Under control" means the animal must be harnessed, leashed, or tethered while in public places.[56] The animal may not wander free. "Under control" also means the dog is not allowed to bark in normally quiet places.[57] Chaquita has history of aggressiveness toward others, barking, growling, and snapping at community-center staff. Chaquita was not leashed during Muhaymin's arrest. Neither the officers nor community-center staff attempted to exclude Chaquita from the Community Center because she was a service animal. Instead, the attempt to

---

[51] *See* 28 CFR 35.104 (2010) (defining "Service Animals").
[52] ARIZ. REV. STAT. §§ 11-1024 and 41-1492 *et seq.* The rules and exceptions for service animals under ACRA are the same as those under the ADA.
[53] 28 CFR 35.104 and ARIZ. REV. STAT. § 11-1024(A).
[54] *Id.* ("The crime deterrent effects of an animal's presence and the provision of emotional support, well-being, comfort, or companionship *do not constitute* work or tasks for the purposes of this definition." (emphasis added)).
[55] *See* 28 CFR 35.136(b) and 35.139(a). *See also* ARIZ. REV. STAT. § 11-1024(B).
[56] 28 CFR 35.136(d) and ARIZ. REV. STAT. § 11-1024(L)(6).
[57] 28 CFR 35.136(b)(2).

remove her was only because she was not properly leashed.

Even if Chaquita was a service animal, Muhaymin was required to comply with all local dog-licensing and registration laws. It did not violate the ADA for officers or community-center staff to ask Muhaymin to produce paperwork establishing Chaquita was properly licensed and registered. Plaintiff's ADA and ACRA discrimination claims fail as a matter of law, and Counts III, XI, XII, and XIII should be dismissed without leave to amend.

**5. Qualified immunity applies to the Phoenix Defendants.**

If the Court finds the above legal analysis unpersuasive, there is another overarching reason the Court should dismiss the Amended Complaint: qualified immunity applies to the Phoenix Defendants. Courts use a two-part test to whether officials are entitled to qualified immunity.[58] First, the Court must find a violation of a constitutional right.[59] Second, the Court must determine the alleged constitutional right was *clearly established during the alleged misconduct.*[60] Plaintiff's claims cannot satisfy either burden.

The discussion above articulates why the Phoenix Defendants believe no constitutional right was violated, so this analysis will focus on the test's second prong. If plaintiff's claims do not identify violation of an established constitutional right, then qualified immunity applies to the Phoenix Defendants.[61] Where qualified immunity applies to the conduct of the underlying officials, the Court should also dismiss municipal-liability claims based on the conduct.[62]

---

[58] *Pearson v. Callahan*, 555 U.S. 223, 232, 129 S. Ct. 808, 815-16 (2009).
[59] *S.B. v. Cty. of San Diego*, 864 F.3d 1010, 1013 (9th Cir. 2017).
[60] *Id.*
[61] *See, e.g. S.B.*, 864 F.3d at 1015-16.
[62] *See, e.g. Doe v. Village of Arlington Heights*, 782 F.3d 911, 916 (dismissing municipal liability claims against the village (Count VI) after finding qualified immunity applied to individual officer conduct).

"Clearly established" means "the contours of the right must be sufficiently clear that a reasonable official would understand that what [the official] is doing violates that right."[63] While this standard "does not require a case directly on point…existing precedent must have placed the statutory or constitutional question *beyond debate*."[64] The inquiry "must be undertaken in the specific context of the case, not as a broad general proposition.[65] Nor should the Court define "clearly established law at a high level of generality."[66] As the Ninth Circuit has articulated the standard, "only the 'plainly incompetent' officer will not enjoy qualified immunity.[67]

The U.S. Supreme Court has "repeatedly…stressed the importance of resolving immunity questions *at the earliest possible stage in litigation*."[68] "[Q]ualified immunity is important to society as a whole, and … as an 'immunity from suit,' [it] is *effectively lost* if a case is erroneously permitted" to proceed into discovery.[69]

To meet this burden, plaintiff must show, as of January 4, 2017, *any* court had upheld the purported right in a *factually similar* case. In other words, plaintiff must show through established case law defendants used excessive force against a man, who was high on methamphetamine, with an uncontrolled dog, who assaulted a government employee, and then actively resisted legitimate arrest on a valid warrant, who later died in in custody. There are no factually similar cases demonstrating the alleged violations of Muhaymin's constitutional rights were clearly established on the day he was arrested.

As demonstrated through the discussion above, the Amended Complaint does not articulate specific factual allegations of specific constitutional violations

---

[63] *S.B.*, 864 F.3d at 1015.
[64] *Id.* (emphasis added).
[65] *Id.*
[66] *Id.*
[67] *Id.* (emphasis added).
[68] *Pearson*, 555 U.S. at 232, 129 S. Ct. at 815-16.
[69] *S.B.*, 864 F.3d 1015 (emphasis added).

against the individual defendants. There is no evidence the officers used excessive force. At least one witness described the officer's conduct toward Muhaymin as "less rough" than the circumstances dictated. There is no evidence to establish deliberate indifference by the officers. Nor can Plaintiff establish failing to supervise/train the officers and employees. Finally, the Amended Complaint does not specifically identify any specific policy or procedure allegedly violated by Defendants.

The vague wording of the Amended Complaint belies the fact Muhaymin's rights were not sufficiently established. The complaint does not clearly articulate which rights were violated by whom and through what specific conduct. Instead, it pleads legal conclusions as "facts." The Phoenix Defendants are entitled to qualified immunity for their alleged conduct and because qualified immunity applies, plaintiffs' federal-law claims should be dismissed.

### 6. Plaintiff violated the requirements of ARIZ. REV. STAT. § 12-821.01.

ARIZ. REV. STAT. § 12-821.01 requires persons with claims against a public entity or public employee to file a notice of claim containing "facts sufficient to permit the public entity or public employee to understand the basis upon which liability is claimed."[70] The notice must "also contain a specific amount for which the claim can be settled and the facts supporting the amount."[71] The notice-of-claim statute is "clear and unequivocal," and failing to comply with *any* aspect of the statute prevents a plaintiff's claim from going forward.[72] A plaintiff's failure to comply with this requirement is not excused by actual notice or substantial compliance.[73]

---

[70] *See* ARIZ. REV. STAT. § 12-821.01(A)
[71] *Id.*
[72] *Deer Valley Unified Sch. Dist. v. Houser,* 214 Ariz. 293, ¶ 8, 296,152 P.3d 490, 493 (2007).
[73] *Falcon ex rel. Sandoval v. Maricopa County,* 213 Ariz. 525, 527, ¶ 9, 144 P.3d 1254, 1256 (2006).

The purpose of the notice-of-claim statute is threefold: (1) it allows the public entity to investigate and assess its potential liability; (2) it permits the entity to consider the possibility of settling the claim before litigation; and (3) it assists the entity in its financial planning and budgeting.[74] These underlying purposes help to "ensure that claimants will not demand unfounded amounts that constitute 'quick unrealistic exaggerated demands.'"[75] Absent a factual explanation of how the claimant supports her claims and settlement demand, public entities cannot realistically evaluate the claim and determine whether to settle or proceed with litigation.

Several of plaintiff's state-law claims are barred by her failure to comply with the notice-of-claim statute. Plaintiff's Notice only identifies her state and federal discrimination and excessive-force claims. The Notice provides no facts or details identifying what the Amended Complaint now describes as Muhaymin's wrongful-death/survival actions for battery, intentional infliction of emotional distress, negligent infliction of emotional distress, state-law negligent hiring, supervision, retention and training, and state-law civil conspiracy. Plaintiff's failure to articulate the facts and surrounding circumstances justifying these causes of action bars them. Counts VIII, IX, X, XIV, and the state-law components of Count XV should be dismissed without leave to amend.

**7. Phoenix Police did not engage in civil conspiracy because they had a valid basis to arrest Muhaymin.**

Civil conspiracy requires a plaintiff allege the existence of: 1) a conspiracy; 2) to deprive a person of equal protection under the law; 3) by an overt act, <u>and</u> 4) either a personal injury or the depravation of a Constitutional right.[76] The key is the

---

[74] *Deer Valley*, 214 Ariz. at 295-96, ¶ 9, 152 P.3d at 492-93. *See also Martineau v. Maricopa Cty.,* 207 Ariz. 332, 335-36, ¶ 19, 86 P.3d 912, 915-16 (Ariz. App. 2004).
[75] *Id.*
[76] *Aulson v. Blanchard,* 83 F.3d 1, 3 (1st Cir. 1996).

- 16 -

plaintiff must show by clear and convincing evidence the defendants agreed to accomplish an unlawful purpose with a tort, which caused damages.[77] Importantly, in an allegation of unlawful arrest, probable cause to arrest the individual is an *absolute defense* to a civil-conspiracy claim because the existence of a valid reason to arrest the individual means the individual was <u>not</u> deprived of a constitutional right.[78]

While Phoenix officers investigated Muhaymin's alleged assault of Tarango they requested Muhaymin's name. When officers ran Muhaymin's name they discovered he had a valid, outstanding warrant from the City of Mesa for failure to appear. The warrant gave officers probable cause to arrest Muhaymin. In short, because of Muhaymin's outstanding warrant, his arrest was valid, and he was not deprived of any constitutional right. Count XV fails as a matter of law.

## Conclusion

For these reasons, the City Defendants respectfully request the Court dismiss plaintiff's First Amended Complaint with prejudice and without leave to amend.

DATED: April 6, 2018.

**O'CONNOR & CAMPBELL, P.C.**

By: */s/ Justin D. Holm*
Daniel J. O'Connor, Jr.
Justin D. Holm
*Attorneys for Defendants*

---

[77] *Hearn v. R.J. Reynolds Tobacco Co.*, 279 F.Supp.2d 1096, 1117 (D. Ariz. 2003). *See also In Re Ariz. Theranos, Inc. Litigation,* 256 F.Supp.3d 1009, 1037 (D. Ariz. 2017).
[78] *Russo v. City of Bridgeport*, 479 F.3d 196, 203 (2d Cir. 2007) ("a false arrest claim cannot lie when the challenged arrest was supported by probable cause").

| | |
|---|---|
| 1 | **CERTIFICATE OF SERVICE** |
| 2 | I hereby certify that on April 6, 2018 I electronically filed the foregoing with |
| 3 | the Clerk of the Court for the U.S. District Court, District of Arizona, using the |
| 4 | CM/ECF System.  A Notice of Electronic Filing will be served to the following |
| 5 | registered participants: |

David A. Chami  　　　　　　　　　　　　Haytham Faraj
PRICE LAW GROUP, APC　　　　　　　LAW OFFICES OF HAYTHAM FARAJ
1204 E Baseline Rd., Ste. 102　　　　　1935 W Belmont Ave.
Tempe, AZ 85283　　　　　　　　　　　Chicago, IL 60657
*Attorney for plaintiff*　　　　　　　　　　*Attorney for plaintiff*

A copy will be mailed this same date to:

HONORABLE STEVEN P. LOGAN
United States District Court
Sandra Day O'Connor U.S. Courthouse, Suite 521
401 West Washington Street, SPC 82
Phoenix, AZ 85003

By: */s/ Amanda Bennett*