1    **WO**

6    **IN THE UNITED STATES DISTRICT COURT**

7    **FOR THE DISTRICT OF ARIZONA**

9    Mussalina Muhaymin,                      No. CV-17-04565-PHX-SMB

10              Plaintiff,                      **ORDER**

11   v.

12   City of Phoenix, et al.,

13              Defendants.

Defendants City of Phoenix, Antonio Tarango, and Officers Oswald Grenier, Kevin McGowan, Jason Hobel, Ronaldo Canilao, David Head, Susan Heimbigner, James Clark, Dennis Leroux, Ryan Nielsen, and Steven Wong (collectively the "Phoenix Defendants") filed an Amended Motion to Dismiss Plaintiff's First Amended Complaint based on Qualified Immunity (Doc. 43, "Mot.") and pursuant to Rule 12(b)(6). Plaintiff filed a Response (Doc. 50, "Resp."), and the Phoenix Defendants filed a Reply (Doc. 57, "Reply"). Oral argument was held on January 11, 2019. The Court has now considered the Motion, Response, and Reply along with arguments of counsel and relevant case law.

**I. BACKGROUND**

This case arises out of the death of Muhammad Abdul Muhaymin Jr. ("Muhaymin"). At the time of Muhaymin's death, he was 43 years old and suffered from post-traumatic stress disorder, acute claustrophobia, and schizophrenia. (FAC ¶ 1).[1] On January 4, 2017, Muhaymin was at the Maryvale Community Center along with his dog,

---

[1] Citations to paragraphs in the FAC correspond to the numbered paragraphs beginning on page 4 of the FAC.

"Chiquita." (FAC ¶ 3). Plaintiff asserts that Chiquita was a "service dog," (FAC ¶ 3), while Defendants contend that Chiquita did not qualify as a "service animal." (Mot. at 12). When Muhaymin attempted to use the restroom facilities at the community center, he was refused entry by Defendant Tarango because of Chiquita. (FAC ¶¶ 4, 5). Muhaymin and Tarango argued and "chest bumped." (FAC ¶6). The Phoenix Police were called and arrived on the scene shortly after. (FAC ¶¶ 7, 9). Upon arrival, Officer Grenier asked Muhaymin to see Chiquita's documentation. (FAC ¶ 12). Muhaymin was permitted to enter the restroom after he provided Defendant Officers with his identifying information. (FAC ¶¶ 14, 17). Defendant Officers subsequently discovered an outstanding arrest warrant against Muhaymin and informed Muhaymin that he was being arrested. (FAC ¶¶ 21, 23). During the course of the arrest, Defendant Officers and Muhaymin struggled. (FAC ¶¶ 31–36). Muhaymin went into cardiac arrest and began vomiting. (FAC ¶ 37). Muhaymin was pronounced dead shortly thereafter.

Plaintiff, Mussalina Muhaymin, sister of Muhammad Abdul Muhaymin Jr. and personal representative of his estate, originally filed a complaint on December 8, 2017. (Doc. 1). On January 17, 2018, Plaintiff filed a First Amended Complaint against City of Phoenix, Antonio Tarango, Officers Oswald Grenier, Kevin McGowan, Jason Hobel, Ronaldo Canilao, David Head, Susan Heimbigner, James Clark, Dennis Leroux, Ryan Nielsen, Steven Wong, and Doe Supervisors 1-5.[2] (Doc. 16, "FAC"). In the FAC, Plaintiff alleges fifteen counts against the Defendants, including claims pursuant to 42 U.S.C. §§ 1983 and 12131, *et. seq.*, as well as multiple state law claims. Phoenix Defendants now move to dismiss all counts in Plaintiff's FAC with prejudice.

## II. LEGAL STANDARD

To survive a Rule 12(b)(6) motion for failure to state a claim, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief," so that the defendant has "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v.*

---

[2] Defendants names are spelled pursuant to the spellings provided by Defendants in the instant motion.

*Gibson*, 355 U.S. 41, 47 (1957)); Fed. R. Civ. P. 8(a)(2). Dismissal under Rule 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). A complaint that sets forth a cognizable legal theory will survive a motion to dismiss if it contains sufficient factual matter, which, if accepted as true, states a claim to relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Facial plausibility exists if the pleader sets forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Plausibility does not equal "probability," but requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent' with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).[3]

In ruling on a Rule 12(b)(6) motion to dismiss, the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). However, legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

"As a general rule, 'a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion.'" *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (quoting *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994), overruled on other grounds by *Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002)).

---

[3] While the Defendants, at times, appear to conflate the heightened summary judgment standard with the applicable Rule 12(b)(6) motion to dismiss standard of review by arguing that Plaintiff lacks sufficient evidence to maintain certain claims at this stage, the Court will apply the legal standard set forth herein to all claims in its analysis of Defendants' motion to dismiss. *See, e.g.*, Doc. 43 at 9 (Defendants concluding that Count II should be dismissed because "*[t]here is no evidence* officers failed to intervene[.]").

"[I]f a district court considers evidence outside the pleadings, it must normally convert the 12(b)(6) motion into a Rule 56 motion for summary judgment, and it must give the nonmoving party an opportunity to respond." *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003); *see* Fed. R. Civ. P. 12(d). The court may, however, consider "matters of judicial notice [ ] without converting the motion to dismiss into a motion for summary judgment." *Id.* at 908. A "court may take judicial notice of matters of public record . . . , [b]ut a court cannot take judicial notice of disputed facts contained in such public records." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) (quotation marks and citations omitted). The Court may also consider evidence outside of the pleadings where the "authenticity is not contested, and the plaintiff's complaint necessarily relies" on the evidence. *Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th 2013). If the Court finds that the evidence may not be considered when ruling on a 12(b)(6) motion to dismiss, the Court has "discretion whether to consider the extrinsic evidence and convert the motion to dismiss into a motion for summary judgment pursuant to Rule 12(d), or to merely exclude the evidence." *Sternberger v. Gilleland*, No. CV-13-02370-PHX-JAT, 2014 WL 3809064, at *4 (D. Ariz. Aug. 1, 2014) (citing *Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1207 (9th Cir. 2007)).

## III. ANALYSIS

### A. Evidence Outside The Pleadings

Phoenix Defendants attached two exhibits to the instant motion which contain evidence outside of the pleadings. Exhibit 1 contains videos taken from Defendant Officers' body-cameras (the "Videos"), and Exhibit 2 consists of Phoenix Police Department Incident Report No. 201700000019424 (the "Incident Report"). (Mot. at 4 n.13–14). Plaintiff objects to the Court's consideration of the Incident Report arguing that it is self-serving, contains inadmissible hearsay, and is not authenticated. (Resp. at 7). In *United States v. Ritchie*, the Ninth Circuit held that courts "may take judicial notice of some public records, including the 'records and reports of administrative bodies.'" 342 F.3d at 909 (quoting *Interstate Nat. Gas Co. v. S. Cal. Gas Co.*, 209 F.2d 380, 385 (9th Cir.1953)).

The Ninth Circuit further articulated that such a holding "does not mean that all evidence related to this case . . . fits within the judicial notice exception," citing to a Second Circuit case that held "the existence and content of a police report are not properly the subject of judicial notice." *Id.* (citing *Pina v. Henderson*, 752 F.2d 47, 50 (2d Cir.1985)); *see also Ledet v. Gibson*, No. 3:06-CV-00179-LRH (VPC), 2007 WL 777686, at *4 (D. Nev. Mar. 9, 2007) (declining to consider police reports and noting that "the Ninth Circuit has inferred that courts should not take judicial notice of police reports"); *Victoria v. City of San Diego*, 326 F. Supp. 3d 1003, 1012 (S.D. Cal. 2018) (declining to consider more than the "reasonably undisputed facts" in a police report even after plaintiff referenced the report in her complaint). The Court will not consider the Incident Report and disregards facts from the Incident Report added by Defendants.

Phoenix Defendants also assert that the Court may consider the Videos as they are matters of public record and they can be considered without converting this to a motion for summary judgment. (Reply at 4). As discussed above the court can consider additional evidence if it is a matter of public record and not disputed. Additionally, there are other courts in this Circuit that have considered video from body-cameras in analyzing similar motions to dismiss because the "complaints necessarily relie[d] on the circumstances surrounding" the incident alleged in the complaint. *Lihosit v. Flam*, No. CV-15-01224-PHX-NVW, 2016 WL 2865870, at *3 (D. Ariz. May 17, 2016); *see also Covert v. City of San Diego*, No. 15-CV-2097 AJB (WVG), 2017 WL 1094020, at *5 (S.D. Cal. Mar. 23, 2017) (considering officer body-camera videos and transcripts of the videos in a motion to dismiss as they were "incorporated into the FAC by reference and [were] documents that partially form[ed] the basis of Plaintiff's complaint").

Plaintiff objects to the consideration of the Videos because they are incomplete, but later asserts that they are "potentially incomplete." (Resp. at 11). They base this on their allegation that "significant portions appear to have been intentionally obstructed." (Resp. at 10). The fact that the view from the cameras may have been obstructed does not invalidate the authenticity of the Videos, but rather may make the Videos less valuable.

Additionally, Plaintiff asserts that Defendants have failed to authenticate the Videos. In their Reply, Defendants submitted an affidavit to authenticate that the 13 Videos are complete, unredacted, and unedited copies, (Reply, Exhibit 1), which distinguishes this case from *Brown v. City of San Diego*, No. 3:17-CV-00600-H-WVG, 2017 WL 3993955, at *2 (S.D. Cal. Sept. 11, 2017), cited by Plaintiff in its Response. The Court will consider the Videos.[4]

In reviewing the Videos, the Court notes that it is clear that an extensive physical struggle occurred between the Defendant Officers and Muhaymin. However, without outside testimony, the angles of the Defendant Officers' body-cameras do not provide a definitive answer to what occurred on that day. The beginning stages of the arrest that occurred near the building appear in Videos 1–5. The Defendant Officers told Muhaymin to stop as he exited the building because there was a warrant, (Video 1 at 18:18) (Video 2 at 11:30) (Video 4 at 9:19) (Video 5 at 11:31), but in reviewing what ensued shortly thereafter, the movements of Defendant Officers and Muhaymin are difficult to define because of the angles of the cameras or because the cameras were obstructed or faced away from the Defendant Officers and Muhaymin. What occurred after Defendant Officers arrived at the vehicle with Muhaymin and began to search and further restrain him appears in Videos 1, 3, 5, 7, 8, and 11. The movements of Defendant Officers and Muhaymin are again difficult to define due to obstructed cameras or angles. (Video 1 at 19:35) (Video 3 at 3:00) (Video 5 at 16:00) (Video 7 at 0:22) (Video 8 at 0:06) (Video 11 at 23:45). The remaining Videos begin after Defendant Officers had already begun CPR (6, 9, 10, and 12) or only record conversations between Defendant Officers and witnesses (13).

### B. Counts I and VII – Excessive Force

Plaintiff brings Counts I and VII pursuant to 42 U.S.C. § 1983 and A.R.S. §§ 12-611 *et. seq.*, 14-3110, 13-410 for excessive force against Defendant Officers and Doe Supervisors 1–5.

---

[4] The Court will limit its review of the Videos with this motion to the interaction between Defendants and Muhaymin. The Court will not consider statements between Defendant Officers and bystanders for the same reasons it is not considering the Incident Report.

Claims of excessive force during an arrest are analyzed under the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 394 (1989). In determining whether a law enforcement officer used excessive force in violation of the Fourth Amendment, the Court considers "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–397. "Determining the reasonableness of an officer's actions is a highly fact-intensive task for which there are no per se rules." *Torres v. City of Madera*, 648 F.3d 1119, 1124 (9th Cir. 2011). In evaluating the "objective reasonableness" of a use of force, the Court considers: "(1) the severity of the intrusion on the individual's Fourth Amendment rights by evaluating the type and amount of force inflicted, (2) the government's interest in the use of force, and (3) the balance between the gravity of the intrusion on the individual and the government's need for that intrusion." *Lowry v. San Diego*, 858 F.3d 1248, 1256 (9th Cir. 2017) (internal quotation marks omitted). The Court considers "the totality of the circumstances, including (1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Torres*, 648 F.3d at 1124 (citing *Graham*, 490 U.S. at 396). Further, Ninth Circuit cases hold that "excessive force claims may proceed even when the plaintiff cannot identify the defendant who assaulted him or allege the actions of specific defendants." *Hernandez v. Ryan*, No. CV-16-03699-PHX-DGC (BSB), 2018 WL 2009053, at *10 (D. Ariz. Apr. 30, 2018) (citing *Santos v. Gates*, 287 F.3d 846, 851–852 (9th Cir. 2002); *Rutherford v. City of Berkeley*, 780 F.2d 1444, 1448 (9th Cir. 1986)).

Phoenix Defendants assert that "[t]he Amended Complaint does not identify conduct demonstrating a specific action of the Phoenix Police was an excessive-force violation or caused Muhaymin's death." (Mot. at 8). In opposition, Plaintiff points to

various paragraphs of the FAC, including ¶¶ 31–34 and ¶¶ 36–39.  (Resp. at 16–17).

Plaintiff alleges that Muhaymin was "forced . . . to the ground" and "can be heard yelling, 'Okay!' and 'I can't breathe' as multiple Defendant Officers placed the weight of their bodies on his head, back, arms, and legs"; that "[a]fter wrestling Muhaymin to the ground, one of the Defendant Officers placed his knee on Muhaymin's head while another Defendant Officer placed him in handcuffs"; that "Defendant Officers again wrestle[d] Muhaymin, who had already been restrained, back down to the ground"; and that "[s]everal Defendant Officers placed their weight on top of Muhaymin, while one Defendant Officer requested 'hobbles' in order to restrict Muhaymin's ability to walk."  (FAC ¶¶ 31–33, 35–36).  Plaintiff also alleges that "Muhaymin went into cardiac arrest and began vomiting" due to the excessive force and that the "unreasonable, excessive, and [conscience]-shocking physical force to the person of Muhaymin" caused his death.  (FAC ¶¶ 37, 43). In response, Phoenix Defendants contend that the acts were not excessive "in the context of Muhaymin's pushing, kicking, and thrashing about while trying to escape arrest." (Reply at 10).

In considering the totality of the circumstances alleged surrounding the use of force by Defendant Officers, the Court first notes that Muhaymin was being arrested on a warrant for failure to appear, not for the alleged assault.  (Mot. at 17).  The Court also notes that neither Plaintiff nor Defendants have indicated that Muhaymin was armed.   While Defendants assert that Muhaymin had just committed an assault of a government employee, (Mot. 8, 14, 17), Plaintiff denies that Muhaymin committed such an assault.  (Resp. at 12). Rather Plaintiff alleges that the assault was actually committed against Muhaymin.  (Resp. at 12).  Assuming the truth of Plaintiff's allegations, these facts weigh in Plaintiff's favor. Lastly, the Court considers whether Muhaymin was actively resisting arrest.   While Defendant asserts that Muhaymin resisted arrest, (Mot. at 6, 8), Plaintiff is silent regarding whether Muhaymin resisted arrest.  Defendants assertion is likely based on the Incident Report, which the Court will not consider with this motion.[5]  While the Videos confirm the

---

[5]  Defendants note in their motion that the recital of facts is "gleaned from" the Incident Report.  (Mot. at 4 n.14).

extensive struggles between Muhaymin and Defendant Officers during the course of the arrest, the angles of the Defendant Officers' body cameras do not provide a complete picture of the events. Without further fact development, the Videos alone do not indicate whether Muhaymin's resistance warranted the force used by Defendant Officers.

Therefore, assuming the truth of Plaintiff's allegations, and viewing the allegations in the light most favorable to the Plaintiff, the Court finds that Plaintiff has stated a plausible claim for excessive force, and that dismissal of Counts I and VII is not warranted at this stage of the proceedings.

## C. Count II – Failure to Protect/Intervene

Count II is brought pursuant to 42 U.S.C. § 1983 for failure to protect/intervene against Defendant Officers and Doe Supervisors 1–5. "Police officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen." *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000), *as amended* (Oct. 31, 2000). "Importantly, however, officers can be held liable for failing to intercede only if they had an opportunity to intercede." *Id.* "An officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know: (1) that excessive force is being used; (2) that a citizen has been unjustifiably arrested or (3) that any constitutional violation has been committed by a law enforcement official." *Anderson v. Branen*, 17 F.3d 552 (2d Cir. 1994) (citations omitted).

Plaintiff relies on *Castro v. County of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) to explain that elements of a pretrial detainee's failure-to-protect claim. (Resp. at 17–18). However, that case involves a detainee's right to be free from violence by other inmates. *Castro*, 833 F.3d at 1064. This case involves a completely different scenario where the alleged constitutional violation occurred while effectuating a valid arrest.

Defendants argue that Count II should be dismissed because "[t]he force used against Muhaymin was both reasonable and necessary, given his behavior." (Mot. at 9). Defendants also argue that "plaintiff cannot show Muhaymin's arrest was unjustified," and that there is "no evidence officers failed to intervene on Muhaymin's behalf during his

arrest." *Id.* However, given the Court's above ruling on the excessive force claims, there remains a question as to whether the force used was reasonable and necessary.

Defendants' arguments fail to show that Plaintiff has not alleged enough facts to state a claim to relief that is "plausible on its face." *Iqbal*, 556 U.S. at 678. Rather Defendants arguments go to whether the Defendant Officers used excessive force. Plaintiff alleges that (1) Defendant Officers arrived at the Community Center (FAC ¶¶ 8–9), (2) Defendant Officers used excessive force (FAC ¶¶ 31–33, 35–36), (3) none of the Defendant Officers "took reasonable steps to protect Muhaymin from the objectively unreasonable and conscience shocking excessive force of other Defendant Officers" (FAC ¶ 53), and (4) Defendant Officers were in a position to intervene (FAC ¶ 53). The Court therefore denies Phoenix Defendants Motion to Dismiss Count II.

### D. Counts IV, V, VI – Supervisor and Municipal Liability

Pursuant to 42 U.S.C. § 1983, Plaintiff brings Count IV against Doe Supervisors 1–5 for supervisor liability, Count V against City of Phoenix for municipal liability/failure to train, and Count VI against City of Phoenix for municipal liability/unlawful policies, practices, and/or customs.

"Neither state officials nor municipalities are vicariously liable for the deprivation of constitutional rights by employees." *Flores v. County of Los Angeles*, 758 F.3d 1154, 1158 (9th Cir. 2014) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). A supervisor may, however, be liable in their individual capacity "if there exists *either* (1) his or her personal involvement in the constitutional deprivation, *or* (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Redman v. County of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). "A supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998) (internal alteration and quotation marks

omitted).

A municipality may be liable under § 1983 if a plaintiff shows "that a policy or custom led to the plaintiff's injury," and "that the policy or custom . . . reflects deliberate indifference to the constitutional rights of its inhabitants." *Castro*, 833 F.3d at 1073 (9th Cir. 2016) (citations and quotation marks omitted); *see also Connick v. Thompson*, 563 U.S. 51, 60 (2011) ("Plaintiffs who seek to impose liability on local governments under § 1983 must prove that 'action pursuant to official municipal policy' caused their injury.").

A municipality may only be held liable for the inadequacy of police training if Plaintiff shows "(1) he was deprived of a constitutional right, (2) the [municipality] had a training policy that amounts to deliberate indifference to the constitutional rights of the persons' with whom its police officers are likely to come into contact; and (3) his constitutional injury would have been avoided had the [municipality] properly trained those officers." *Blankenhorn v. City of Orange*, 485 F.3d 463, 484 (9th Cir. 2007) (quotation marks, brackets, and citations omitted); *see also City of Canton v. Harris*, 489 U.S. 378, 388 (1989) (municipality may only be held liable for the inadequacy of police training "where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact"). In order to prevail on a failure to train claim against a municipality, Plaintiff must therefore "demonstrate a 'conscious' or 'deliberate' choice on the part of the municipality[.]" *Price v. Sery*, 513 F.3d 962, 973 (9th Cir. 2008). "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick*, 563 U.S. at 61. However, a "municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Id.* "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Id.* at 62 (quoting *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 409 (1997)). "After all, '[w]ithout notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights.'" *Hein v. City*

*of Chandler*, No. CV-15-01162-PHX-DJH, 2016 WL 11530432, at *6 (D. Ariz. Sept. 16, 2016) (quoting *Connick*, 563 U.S. at 62).

Notwithstanding the different legal standards applicable to supervisor and municipal liability, Defendants combine their arguments moving for dismissal of all three counts. Defendants argue that Counts IV, V, and VI (1) do not provide fact-specific allegations of a pattern of inappropriate conduct, (2) do not identify specific, non-speculative steps the Defendants could have taken to stop the alleged behavior, (3) do not identify a constitutionally protected right that was violated by Defendants, (4) do not identify specific Phoenix Police Department policies, customs, or usages violating Plaintiff's constitutional rights, and (5) do not demonstrate how the alleged constitutional deprivations are causally connected to a final, unreviewable Phoenix policy. (Mot. at 11).

On the claim of supervisor liability, Plaintiff alleges that the Doe Supervisors "failed to prevent the individual defendants from – and/or otherwise directed them to – use unreasonable, excessive and/or deadly force where not objectively reasonable or necessary, refuse[d] to protect Muhaymin from the application of unreasonable, excessive and/or deadly force at the hands of their fellow officers, and disregard[ed] the federally mandated requirement not to discriminate against individuals with disabilities and/or require proof that an animal is a certified or licensed service animal." (FAC ¶ 73). Plaintiff alleges that Doe Supervisors' "failure to prevent the individual defendants from depriving Muhaymin of his Constitutional and federally protected rights was so closely related to the deprivation of Muhaymin's rights as to be the moving force that caused his death." (FAC ¶ 74). Plaintiff's complaint is entirely void of factual details regarding the Doe Supervisors. *See Wilson ex rel. Bevard v. City of W. Sacramento*, No. CIV. 2:13-2550 WBS, 2014 WL 1616450, at *3 (E.D. Cal. Apr. 22, 2014) (finding allegations of supervisor liability "conclusory" and lacking "the factual support that *Iqbal* requires").

On the claim of failure to train, Plaintiff alleges that the training policies "were not adequate to prevent the gross violation of Muhaymin's federally protected rights, which led to his death," and that Defendants "were deliberately indifferent to the substantial risk

- 12 -

that its policies were inadequate to prevent violations by its employees and/or were otherwise deliberately indifferent to the known or obvious consequences of its failure to train[.]" (FAC ¶¶ 80–81). Plaintiff argues that she "need only *allege* that the City was deliberately indifferent to the rights of its citizens." (Resp. at 20). That is not the correct pleading standard. Plaintiff does not cite to what the training practice was, how it was deficient, or how the training practice caused Plaintiff's harm. *See Hein*, 2016 WL 11530432, at *6 (citing *Young v. City of Visalia*, 687 F. Supp. 2d 1141, 1149–50 (E.D. Cal. 2009)).

On the claim of unlawful policies, practices, and/or customs, Plaintiff alleges that "the City of Phoenix had a policy, practice and/or custom of ignoring misconduct by officers despite knowledge of the violations by policy-making officials who knew or had reason to know of the violations," and that the "widespread policy, practice and/or custom caused the deprivation of Muhaymin's rights by the individual Defendants [and] is so closely related to the deprivation of Muhaymin's rights as to be the moving force that caused Muhaymin's death." (FAC ¶¶ 87–88). Again, Plaintiff does not specify what custom, practice, or policy was in play on the date of this incident, whether it was an official policy, practice or custom, or how it led to injury. *See Hein*, 2016 WL 11530432, at *6; *see also Hydrick v. Hunter*, 669 F.3d 937, 942 (9th Cir. 2012) (holding that plaintiffs' allegations were "bald" and "conclusory" when plaintiffs did not allege a "specific policy implemented by the Defendants or a specific event or events instigated by the Defendants that led to the[ ] purportedly unconstitutional" actions).

For all of Plaintiff's claims of supervisor and municipal liability, the allegations are no more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," which do not meet the pleading standard articulated in *Iqbal*. 556 U.S. at 678. Plaintiff has done no more than recite the elements of each claim, and has failed to plead sufficient factual details, or any factual details, regarding supervisor liability, unlawful policies/customs, or failure to train that would make such claims "plausible." *Id.* Counts IV, V, and VI will be dismissed for failure to state a claim.

**E. Counts III, XI, XII, and XIII**

Counts III and XIII allege claims for discrimination pursuant to Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131, *et. seq.*, and the Arizona Civil Rights Act ("ACRA") against Defendant Tarango, Defendant Officers, Doe Supervisors 1–5, and City of Phoenix. Counts XI and XII allege claims pursuant to A.R.S. § 12-611 *et. seq.* and § 14-3110 for negligence and gross negligence against Defendant Tarango, Defendant Officers, Doe Supervisors 1–5, and City of Phoenix. The substance of Plaintiff's claims under these counts is that Muhaymin was denied access to the community center because he had a service dog. Additionally, Plaintiff claims that the named defendants discriminated against Muhaymin when they asked for proof that Chiquita was a certified or licensed service animal.

Phoenix Defendants assert that Counts III, XI, XII, and XIII should be dismissed because "Plaintiff's ADA and ACRA discrimination claims fail as a matter of law." (Mot. at 13). Phoenix Defendants assert that Muhaymin's dog "does not qualify as a service animal," that the attempt to remove Muhaymin's dog "was only because [the dog] was not properly leashed," and "[e]ven if Ch[i]quita was a service animal, Muhaymin was required to comply with all local dog-licensing and registration laws." (Mot. at 12–13).

1. Counts III and XIII – ADA and ACRA

"To prove a public program or service violates Title II of the ADA, a plaintiff must show: (1) he is a 'qualified individual with a disability'; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability." *Weinreich v. L.A. Cty. Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997) (citations omitted). Under the ADA, "a public entity shall modify its policies, practices, or procedures to permit the use of a service animal by an individual with a disability." 28 C.F.R. § 35.136. A service animal is "any dog that is individually trained to do work or perform tasks for the benefit of an individual with a disability, including a physical, sensory, psychiatric, intellectual, or

other mental disability." 28 C.F.R. § 35.104.

The Arizonans with Disabilities Act ("AzDA"), A.R.S. §§ 41–1492 to 41–1492.12 "is intended to be consistent with the ADA."[6] *Castle v. Eurofresh, Inc.*, 734 F. Supp. 2d 938, 945 (D. Ariz. 2010). The AzDA prohibits discrimination by public accommodation and commercial facilities as follows: "No individual may be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of any place of public accommodation by any person who owns, leases, leases to others or operates a place of public accommodation." A.R.S. §41-1492.02(A).

While Defendants raise questions of fact that may go to the merits of the claim, Plaintiff's allegations do survive the 12(b)(6) standard for alleging facts sufficient to support a claim. Plaintiff alleges that Muhaymin carried a service dog named Chiquita to "alleviate the symptoms of his mental impairment," (FAC ¶ 2), that Defendants "were made aware that 'Chiquita' was a service dog used by Muhaymin to alleviate his mental disabilities," (FAC ¶ 64), that "Officer Grenier asked Muhaymin to see his dog's documentation," (FAC ¶ 12), and that Muhaymin was denied access "because of his service dog." (FAC ¶ 97).

Defendants also argue that they were allowed to exclude Chiquita because she had a history of bad behavior and was not properly leashed. (Mot. at 12–13). Defendants rely on A.R.S. §11-1024(B), 28 C.F.R. 35.136(b), 35.139(a), and a statement of facts regarding Chiquita's behavior that appears nowhere in the FAC. Under 28 C.F.R. 35.136(b), a public entity is permitted to ask an individual to remove a service dog if the animal "is out of control and the animal's handler does not take effective action to control it." *See also* A.R.S. §11-1024(B) (permitting a public place to exclude a service animal under certain circumstances, including when the animal "poses a direct threat to the health or safety of

---

[6] "The Arizonans with Disabilities Act [AzDA], A.R.S. 41-1492 *et seq.*, is included within the Arizona Civil Rights Act [ACRA], A.R.S. 41-1401 *et seq.*" *Wagner v. Maricopa County*, No. CV 07-00819-PHX-EHC, 2009 WL 10673411, at *2 n.3 (D. Ariz. Feb. 12, 2009).

others" and when the animal "is out of control and the animal's handler does not take effective action to control the animal"). In reading the FAC, there is nothing to support a finding that the dog was acting aggressively at the time Muhaymin attempted to enter the community center restroom, and the Videos show Muhaymin holding Chiquita. Nor is there anything in the FAC indicating that the dog had a history of bad behavior. There were statements made in the Videos by more than one person that Chiquita had previously tried to bite them. Whether this is enough to create an exception is a factual dispute not appropriate for a motion to dismiss. Furthermore, only 28 C.F.R. 35.136 requires a service dog to be leashed, but it also provides an exception if the use of the leash would interfere with the service animal's safe, effective performance of work or tasks. There are no facts available to determine if a leash was required or if the exception applied.

Taking Plaintiff's allegations that Muhaymin's dog was a "service dog" as true, and construing the allegations in the light most favorable to the Plaintiff, the Court accordingly denies Defendants' motion to dismiss Counts III and XIII.

### 2. Counts XI and XII

In their motion, Defendants do not distinguish Counts XI and XII from the analysis for Counts III and XIII and offer no analysis specific to these counts. In response to Defendants' request to dismiss Counts XI and XII, Plaintiff notes that "even if Plaintiff's discrimination claims fail . . . the negligence and/or gross negligence alleged in Counts XI and XII should not be dismissed in their entirety as they are only based in part on the alleged discrimination." (Resp. at 21). Defendants do not raise any other reasons why these counts should be dismissed other than the reasons discussed above concerning the ADA and ACRA claims. Accordingly, the Court denies Defendants' request to dismiss Counts XI and XII.

### F. Counts VIII, IX, X, XIV, and XV

Defendants contend that Plaintiff's "state-law claims are barred by her failure to comply with the notice-of-claim statute." (Mot. at 16). Specifically, Defendants assert that "[t]he Notice provides no facts or details identifying what the Amended Complaint

now describes as Muhaymin's wrongful-death/survival actions for battery [Count VIII], intentional infliction of emotional distress [Count IX], negligent infliction of emotional distress [Count X], state-law negligent hiring, supervision, retention and training [Count XIV], and state-law civil conspiracy [state-law components of Count XV]." (Mot. at 16).

"Before filing a claim against a public entity or public employee, a claimant must serve a Notice of Claim containing sufficient facts to permit the entity or employee to understand the basis for the claimed liability." *Riley v. City of Buckeye*, No. 1 CA-CV 17-0306, 2018 WL 2440249, at *2 (Ariz. Ct. App. May 31, 2018) (citing A.R.S. § 12–821.01(A)). "The notice of claim requirements . . . serve 'to allow the public entity to investigate and assess liability, to permit the possibility of settlement prior to litigation, and to assist the public entity in financial planning and budgeting.'" *Falcon ex rel. Sandoval v. Maricopa County*, 144 P.3d 1254, 1256 (Ariz. 2006) (quoting *Martineau v. Maricopa County*, 86 P.3d 912, 915–16 (Ariz. App. 2004)). "The plain text of the statute is clear that § 12–821.01 requires a claimant to give a prospective public entity defendant notice of facts underlying the claim." *Watson-Nance v. City of Phoenix*, No. CV-08-1129-PHX-ROS, 2009 WL 792497, at *6 (D. Ariz. Mar. 24, 2009). "[A] notice of claim does not limit Plaintiffs to the legal theories identified therein,'" and "need not be a prelude to substantive legal briefing.'" *Id.* (citations and internal quotation marks omitted).

Plaintiff's Notice of Claim (Reply, Exhibit 2) lists specific factual allegations, similar to the factual allegations listed in the FAC. In addition to describing the encounter between Muhaymin and Defendants, the Notice of Claim also includes the names of individuals involved, the date of the alleged violations, and the address where the alleged violation occurred. Plaintiff's Notice includes sufficient facts to permit Defendants "to understand the basis on which liability is claimed" for Counts VIII, IX, X, XIV, and the state law components of count XV. *See* A.R.S. § 12-821.01.

Accordingly, Phoenix Defendants motion to dismiss Counts VIII, IX, X, XIV and part of Count XV is denied.

///

**G. Count XV**

Plaintiff alleges that Defendant Tarango and a least two Defendant Officers agreed and conspired to violate Muhaymin's statutory, common law, and Constitutional rights. (FAC ¶ 153). Plaintiff then talks about a conversation from the Videos where Defendant Officers and Tarango are discussing a plan to have Muhaymin arrested and banned from the Community Center. (FAC ¶ 154).

Plaintiff alleges both state and federal claims for civil conspiracy. Under Arizona law, "[f]or a civil conspiracy to occur two or more people must agree to accomplish an unlawful purpose or to accomplish a lawful object by unlawful means, causing damages." *Wells Fargo Bank v. Arizona Laborers, Teamsters and Cement Masons Local No. 395 Pension Trust Fund*, 38 P.3d 12, 36 (Ariz. 2002). Under 42 U.S.C. § 1985(3), "a plaintiff must allege and prove four elements: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of this conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *deParrie v. Hanzo*, No. CIV. 99-987-HA, 2000 WL 900485, at *3 (D. Or. Mar. 6, 2000), *aff'd*, 5 F. App'x 601 (9th Cir. 2001).

Defendants assert that the civil conspiracy claim "fails as a matter of law" based on "probable cause to arrest" an individual being and absolute defense to a civil-conspiracy claim. (Mot. at 17). Plaintiff responds by asserting that she "has never alleged false arrest as a basis for any of her allegations," and that the alleged "unlawful acts were those taken in the process of arresting Plaintiff, not the arrest itself." (Resp. at 27).

In this case, one of the allegations is that the Defendants conspired to have Muhaymin arrested. (FAC ¶ 154). Yet, there is no dispute that there was an outstanding warrant for Muhaymin's arrest so the Defendant Officers had probable cause to arrest. The arrest was not unlawful and cannot be the basis of this conspiracy claim. *See Russo v. City of Bridgeport*, 479 F.3d 196, 203 (2d Cir. 2007).

Plaintiff argues that the unlawful acts used as the basis for the conspiracy claim "were those taken in the process of arresting Plaintiff, not the arrest itself". (Resp. at 27). It is not clear what that means, but the Court presumes that it relates to the facts underlying the excessive force claims. There are no facts to support this argument in the FAC. The only facts alleged relate to a discussion about arresting Muhaymin, ie, "discussing their plan to have Muhaymin arrested and banned from the Community Center." (FAC ¶ 154). There are no facts supporting a claim that the Defendant Officers talked about and agreed how they were going to arrest Muhaymin or how much force they were going to use. Count XV will be dismissed in its entirety.

**H. Qualified Immunity**

Phoenix Defendants also assert that Plaintiff's federal-law claims (Counts I-VI and the federal law portion of Count XV) should be dismissed because the Phoenix Defendants are entitled to qualified immunity. (Doc. 43 at 13); (Reply at 7). As noted above, Counts IV, V, VI, and XV have been dismissed for failure to state a claim. The only remaining counts properly subject to a qualified immunity analysis are Count I (excessive force), Count II (failure to protect/intervene), and Count III (ADA discrimination). *See Johnson v. Bay Area Rapid Transit Dist.*, 724 F.3d 1159, 1171 (9th Cir. 2013) (holding that the doctrine of qualified immunity does not apply to state law claims).

"'Determining whether officials are owed qualified immunity involves two inquiries: (1) whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the officer's conduct violated a constitutional right; and (2) if so, whether the right was clearly established in light of the specific context of the case.'" *O'Brien v. Welty*, 818 F.3d 920, 936 (9th Cir. 2016) (quoting *Krainski v. Nevada ex rel. Bd. of Regents of Nev. Sys. of Higher Educ.*, 616 F.3d 963, 970 (9th Cir.2010)). Judges "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

When a motion to dismiss brings a qualified immunity claim, the inquiry "raises

special problems for legal decision making." *Keates v. Koile*, 883 F.3d 1228, 1234 (9th Cir. 2018). "On the one hand, we may not dismiss a complaint making a claim to relief that is plausible on its face . . . [b]ut on the other hand, defendants are entitled to qualified immunity so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 1234–35 (citations and internal quotation marks omitted). The inquiry then becomes "whether the complaint alleges sufficient facts, taken as true, to support the claim that the officials' conduct violated clearly established constitutional rights of which a reasonable officer would be aware 'in light of the specific context of the case.'" *Id.* at 1235 (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam)). Dismissal of the claims is not warranted if the complaint "contains even one allegation of a harmful act that would constitute a violation of a clearly established constitutional right." *Id.* (citation omitted); *see also O'Brien*, 818 F.3d at 936. However, a court's "decision at the motion-to-dismiss stage sheds little light on whether the government actors might ultimately be entitled to qualified immunity" at a later stage in the proceedings. *Id.*

In determining whether a constitutional right was clearly established at the time of the alleged violation, "a case directly on point" is not required, "but existing precedent must have placed the statutory or constitutional question beyond debate." *Mullenix*, 136 S. Ct. at 308 (quoting *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011)); *see also Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018) ("[P]olice officers are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue"). While "general statements of the law are not inherently incapable of giving fair and clear warning to officers," courts may not deny qualified immunity by simply stating "that an officer may not use unreasonable and excessive force." *Kisela*, 138 S. Ct. at 1153. The Court must undertake this inquiry "in light of the specific context of the case, not as a broad general proposition." *Mullenix*, 136 S. Ct. at 308 (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)). Furthermore, the Supreme Court has "repeatedly told courts—and the Ninth Circuit in particular—not to define clearly established law at a high level of generality."

*Kisela*, 138 S. Ct. at 1152 (citations and internal quotation marks omitted).

### 1. Count I (Excessive Force) and Count II (Failure to Protect/Intervene)

In considering the first part of the qualified immunity test, the Court must determine if Plaintiff's complaint alleges sufficient facts, taken as true, to support a claim that Defendant Officers used excessive force during the course of the arrest. For the reasons stated above, and at this stage in the litigation, Plaintiff has sufficiently alleged facts to support a claim of excessive force.

Defendants assert that in analyzing the second prong of the test, Plaintiff "must show through established case law defendants used excessive force against a man, who was high on methamphetamine, with an uncontrolled dog, who assaulted a government employee, and then actively resisted legitimate arrest on a valid warrant, who later died in [ ] custody." (Mot. at 14). This statement, however, fails to take the allegations of Plaintiff as true, and fails to view the allegations in the light most favorable to Plaintiff. First, nowhere in the FAC does the Plaintiff allege that Muhaymin was high on methamphetamine, nor does Muhaymin assert such a statement in the Videos. Second, no party contests that Chiquita was unleashed, but Plaintiff does argue that the lack of leash does not equate to a finding that Chiquita was not under control. Third, while Defendant asserts that Muhaymin assaulted a government employee, Plaintiff alleges exactly the opposite—that Muhaymin was assaulted by a government employee. Lastly, Defendant states that Muhaymin was actively resisting the arrest. Plaintiff however makes no such statements in the FAC, and as noted above, in this stage of the litigation, the Videos alone do not provide sufficient evidence of the details of the struggle between Defendant Officers and Muhaymin.

In response to Defendants' motion, Plaintiff states that Muhaymin's "right to be free from such excessive force was clearly established before the day of his death, January 4, 2017, given the facts and circumstances of this case," but makes no attempt to cite case law that would have put Defendant Officers on notice that their use of force was excessive. (Resp. at 25–26). Considering that the Court must take Plaintiff's allegations as true, the

Court notes that at a minimum, the Ninth Circuit addressed a case with some of the factors that Plaintiff has alleged here. In *Drummond ex rel. Drummond v. City of Anaheim*, the Ninth Circuit reversed the district court's holding that police officers did not use excessive force in effectuating the arrest of the plaintiff, Drummond. 343 F.3d 1052. In that case, officers were called to check on Drummond, an unarmed, mentally-ill individual. *Id.* at 1054. While officers awaited the arrival of an ambulance, they decided to take Drummond into custody for his own safety. *Id.* Drummond did not resist arrest, but claimed that "two officers continued to press their weight on his neck and torso as he lay handcuffed on the ground and begged for air." *Id.* at 1056. The officers also used hobble restraints on Drummond. *Id.* at 1055. Drummond lost consciousness in the course of the arrest, and sustained brain damage which led to his being in a "permanent vegetative state." *Id.* The court noted that there was no underlying crime at issue when officers arrested Drummond. *Id.* at 1057.

Here, Plaintiff has alleged that Muhaymin was unarmed and mentally-ill; that Muhaymin said he could not breathe as Defendant Officers placed the weight of their bodies on his head, back, arms, and legs; that Muhaymin was handcuffed and an officer requested hobbles; and that Muhaymin died as a result of the force used by Defendant Officers. As alleged by Plaintiff, *Drummond* may have placed Defendant Officers on notice that the use of force in this case may have been excessive. The Court recognizes that the Videos show the struggle between Muhaymin and Defendant Officers, but as noted above, the Videos alone do not provide sufficient evidence of the details of the struggle.

The Court therefore denies Defendants' motion to dismiss on the grounds of qualified immunity in regard to the excessive force claim. For the same reasons, the Court also denies Defendants' motion in regard to the failure to protect/intervene claim. However, as noted above, the Court's decision to deny Defendants' motion at this time "sheds little light on whether the government actors might ultimately be entitled to qualified immunity" at a later stage in the proceedings. *See Keates*, 883 F.3d at 1235.

///

2.  Count III (ADA Discrimination)

While Defendants included Count III in the motion's request to dismiss on the grounds of qualified immunity, Defendants do not provide any analysis on the issue in their motion.  Defendants instead focus their motion on qualified immunity for the excessive force claim.  Because Defendants have done no more than summarily include a request to dismiss the ADA claim on the grounds of qualified immunity, the Court will deny Defendants' request.

**IV. Plaintiff's Request for Sanctions**

Plaintiff has requested sanctions alleging "blatant misstatements of law and fact". (Resp. at 27).  The Court disagrees that any misstatements were so blatant as to require sanctions.  Both Plaintiff and Defendants have misstated and/or misapplied case law at various times in the pleadings.  Plaintiff's request will be denied.

**V.  Conclusion**

For the reasons explained above, IT IS ORDERED AS FOLLOWS:

1.  Granting Defendants' motion to dismiss in part—Counts IV, V, VI and XV are dismissed;

2.  Denying Defendants' motion to dismiss as to all remaining counts.


Dated this 20th day of February, 2019.


_____
Honorable Susan M. Brnovich
United States District Judge