Haytham Faraj, *Pro Hac Vice*
**Law Offices of Haytham Faraj**
1935 W. Belmont Ave.
Chicago, IL 60657
P: 312-635-0800
M: 818-925-4060
F: 202-280-1039
haytham@farajlaw.com

Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| MUSSALINA MUHAYMIN as Personal Representative of the Estate of MUHAMMAD ABDUL MUHAYMIN JR., <br><br> *Plaintiff,* <br><br> v. <br><br> CITY OF PHOENIX, an Arizona Municipal Corporation; ANTONIO TARANGO; Officer OSWALD GRENIER; Officer KEVIN McGOWAN; Officer JASON HOBE; Officer RONALDO CANILAO; Officer DAVID HEAD; Officer SUSAN HEIMBINGER; Officer JAMES CLARK; Officer DENNIS LEROUX; Officer RYAN NIELSON; Officer STEVEN WONG; and DOE Supervisors 1-5, <br><br> *Defendants.* | Case No. CV-17-04565-PHX-SPL <br><br> **PLAINTIFF'S RESPONSE TO DEFENDANT'S SUPPLEMENT TO MEMORANDUM RE: CONFIDENTIAL DESIGNATION OF DEPOSITION TRANSCRIPT AND VIDEO** <br><br> **AND** <br><br> **EXPEDITED MOTION FOR PROTECTIVE ORDER TO CEASE AND/DESIST AND REMOVE PUBLIC POSTINGS** |

# PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO CEASE AMD DESIST

## INTRODUCTION

Defendant City of Phoenix and its elected officials are using taxpayer money to fund legal efforts aimed at curbing political speech in an effort to protect their seats in the 2020 elections. Counsel for the defendant City and its elected officials filed a supplement to its motion for a protective order seeking to muzzle counsel for the plaintiff in this action from commenting on current events and drawing comparisons to the knee that killed George Floyd with the knee that killed Muhammad Muhaymin. The defendants seek to use the civil case as a pretext to limit the advocacy of counsel on behalf of plaintiffs who have called for criminal prosecution for the defendant officers, which this court has no jurisdiction over; modification of the use of arrest procedures which are known to cause positional asphyxiation that this court has no power to order or affect; firing of the responsible officers, which this court cannot order; the unseating of the Mayor in the 2020 elections which is constitutionally protected political speech unrelated to the civil case; unseating of the Maricopa County Attorney in November 2020 who failed to conduct a criminal investigation into the individual defendant officer actions; advocacy to appoint a new Police Chief that is willing to hold officers accountable for official misconduct as the City of Minneapolis did after the killing of George Floyd in the exact manner that Muhammad Muhaymin was killed by the individual defendant officers in this case, and which this court cannot limit.

Lastly, even if this court were to limit its inquiry of the postings to the impact on

the civil case, plaintiffs are well within their rights to engage in the conduct because it is a response to the defendants' attempts to shape the narrative by posting an edited and modified version of the incident along with patently false statements that Mr. Muhaymin refused to leave a public facility; assaulted an employee; and that he acted violently. All of these statements are falsely based on sworn testimony from the defendant officers and Community Center manager. Arizona Rules of Professional Conduct 3.6, as with the Model Rules, permit a lawyer to make a statement to protect a client from the substantial undue prejudice as a result of statements not initiated by the lawyer or the lawyer's client. The temporal qualifier in the rule has not been mitigated because the posted quoted statements from the Phoenix police department statement remain online and is visible on the first page of a google search for the name Muhammad.[1]

## LEGAL ARGUMENT

**I. Plaintiff's counsel advocacy is not limited to the civil matter but also includes advocacy to effectuate criminal prosecution of defendants, policy changes, procedural changes and, if necessary, political change.**

The events since May 25, 2020, since the killing of Mr. George Floyd, have brought renewed attention to the issues of excessive force by police. The killing of George Floyd by asphyxiation by four Minneapolis police officers has been condemned by numerous police Chiefs, public officials and even the very pro-police President of the United States called for the F.B.I. to investigate the death of George Floyd. The responsible officers were

---

[1] All statements attributed to police officers which may be subject to the unagreed to assertion of confidentiality by defendants are available online from the video posted by the defendants through ABC News.

3

fired within 24 hours of the death of Mr. Floyd and the officer with a knee to the neck of Mr. Floyd was charged criminally by the District Attorney.

Mr. Muhaymin died the same way. After cuffing Mr. Muhaymin, the defendant officers took him to ground, one placed his knee into the neck and head of Mr. Muhaymin as others pressed their knees or bodies into his back, depriving him of the ability to breath until he suffocated to death. Mr. Muhaymin's sister and daughter, from the outset and long before any civil action was taken, called for a criminal investigation and prosecution. Neither the City or Maricopa County took any action. They called for the firing of the police officers. None of the officers were fired or even administratively reprimanded. They called for changes in how to deal with mentally disabled people like Mr. Muhaymin. The City demurred. When their pleas found no response from the City of Phoenix or the Maricopa County Attorney, they reached out, through their counsels, to human and civil rights organizations and advocates including Black Lives Matter and CAIR of Arizona, among several others, to help them raise awareness and effectuate the political change necessary to prevent deaths like Mr. Muhammad's from happening again. All of these actions took place before a civil case was filed. Counsel for the plaintiffs have been alongside their clients advocating for the legal and political remedies they seek to effectuate from the outset.

Social media posts calling attention to the stark parallels between the deaths of Mr. Floyd and Mr. Muhaymin do nothing to advance the civil case for plaintiffs nor deny either party a right to a fair trial. Prominence does not produce prejudice. *Skilling v. United States*, 561 U.S. 358, 130 S. Ct. 2896, 2902, 177 L. Ed. 2d 619 (2010). A presumption of prejudice

attends only the extreme case. *Id*. The social media posts do offer plaintiffs an opportunity to influence political change in the leadership of the City and the County in the November elections and perhaps even criminal accountability of the officers. The City's motion to muzzle counsel for plaintiffs is an illegal attempt to curb political speech. It is also probably a criminal act that violates Federal Election laws by the politician who approved the work of private counsel paid for by taxpayers to protect the political seats of elected officials including the City of Phoenix Mayor and City Council seats up for election.

### a. Pursuit of criminal prosecution of the defendants is issue advocacy unrelated to the civil case.

In June of 1995, the U.S. Department of Justice, Office of Justice Programs, National Institute of Justice published a bulletin that was disseminated to all law enforcement agencies putting them on notice of the danger of positional asphyxia. (*Exhibit 1*.) Positional asphyxia is the cause of death of George Floyd and Muhammad Muhaymin. The bulletin also provided information about the physiology of the struggle. Pressure applied to the back of the person who is prone will result in compression. Compression will result in difficulty breathing which causes the person to struggle even more. Greater pressure to subdue has the opposite effect of inducing compliance. It results in a greater struggle to breath due to oxygen deficiency until the person suffocates. This is the manner of death of Muhammad Muhaymin. He cried out several times that he cannot breathe. He clearly struggled the less oxygen he received. Rather than let up as the bulletin recommends. The officers remained on him until he died. That is the same manner of death as Mr. Floyd.

5

The immediate condemnation of Mr. Floyd's death by many police chiefs, public officials and even the President, and the firing of the four responsible officers, provided an opportunity to bring attention and accountability to the conduct of the officers involved in Mr. Muhammed's death and the City's failure to train the officers to recognize the dangers of positional asphyxia. The advocacy undertaken by counsel for plaintiffs is not limited to winning the civil case but to bring attention to fundamental issues in policing. Plaintiff Mussalina Muhaymin continues to demand criminal accountability. Social media posts to bring attention to Mr. Muhammad's death that can be leveraged to apply pressure on politicians to conduct an independent criminal investigation and to charge the responsible officers is well within the charge of plaintiffs' counsel, or, in the alternative, face the wrath of voters. Such issue advocacy is part and parcel of counsel's advocacy. *See Fed. Election Comm'n v. Wisconsin Right To Life, Inc.*, 551 U.S. 449, 477, 127 S. Ct. 2652, 2671, 168 L. Ed. 2d 329 (2007). Rejecting the attempt to regulate issue advocacy.[2]

Claims by defendants that the social media posts will somehow influence the civil case are disingenuous and specious in light of the City of Phenix Police Department's spokes person's false statements about the facts of this case and the videos remain for the public to access and review. https://abcnews.go.com/US/phoenix-police-release-body-camera-videos-mans-death/story?id=45088346, (*Exhibit 2*) (*As it appeared on June 1, 2020*). The city wants to have its cake and eat it too. On the one hand, they claim prejudice

---

[2] The citation to this case is not intended to draw factual parallels to the challenge by the FEC to Wisconsin Right to Life but it is an informative reminder of the strict scrutiny the attempt to regulate speech receives.

6

**PLAINTIFF'S RESPONSE TO DEFENDANT'S SUPPLEMENT TO MEMORANDUM RE: CONFIDENTIAL DESIGNATION OF DEPOSITION TRANSCRIPT AND VIDEO AND EXPEDITED MOTION FOR PROTECTED ORDER TO CEASE AND DESIST AND REMOVE PUBLIC POSTINGS**

when counsel for plaintiffs engages in inherently political speech calling on the public to hold public officials responsible, while on the other hand, the spokesperson of the police department leverages the unique access police departments have to free publicity to offer false facts and conclusions that they know will forever remain accessible to the public. The Phoenix police department did not just put out the videos, they put out statements that could have only come from police officers to shape the narrative to the defendants' benefit. The Spokesperson was not present at the scene of Mr. Muhammad's killing. Accordingly, his information came from the officers at the scene. The City knowingly and intentionally put out those statements. Now, it seeks court intervention to make them "confidential" so as not, as the City alleges, to influence the proceeding. But that is not the only reason statements may be made public.

### b. Advocacy and speech to effectuate political change is unrelated to this civil case.

Notwithstanding the submission as evidence in support of the motion of a settlement communication covered by F.R.E. 408, every settlement communication sent by plaintiffs has invited dialogue between City leaders, including the police chief, and the plaintiffs. Defendants have not shown any interest except a half-heated attempt at mediation. Plaintiff Mussalina Muhaymin, like most victims of violent crimes, seeks answers and understanding. She seeks accountability. The remedies available through a civil suit were her last resort and remain lowest on her list of priorities.

When the City refused to hold the responsible officers accountable, Plaintiff Muhaymin turned to action to effectuate political change. She reached out to several

7

community and national civil rights organization with the help of her attorneys to bring attention to the City's failure to hold the responsible officers accountable. Social media posts seek to effectuate that change. We currently continue to work to bring the type of media attention that the City and its police department have ready -and free- access to so that City leaders can be held accountable for their refusal in the fall[3]. The City's motion, that is funded by taxpayers, seeks to limit that political speech and may violate Federal Election laws. "A State or local officer or employee may not use his official authority or influence for the purpose of interfering with or affecting the result of an election for office." 5 U.S.C. §1502. While an argument can certainly be made that social media posts may possibly affect the civil case, the jury selection process and the charge of the jury regarding their duties to follow the law, eliminates the possibility of unfair prejudice from pretrial publicity, assuming people saw and remember the social media posts at the time of trial. A more persuasive argument is that the social media posts will put pressure on elected officials to take action to better train and regulate the police department, to hold the responsible officers accountable or lose their elected offices in the fall.[4] The attempt to limit plaintiffs, through counsel, from bringing attention to the city leaders' failure to take action is an attempt to have this court regulate inherently political speech, not subject to regulation.

---

[3] Compare the City of Phoenix utter refusal to undertake a criminal investigation or even a an administrative review of procedures with the actions of the Minneapolis P.D. in the George Floyd case.

[4] The Maricopa County Attorney, City of Phoenix mayor and three council member seats are up for reelection in the fall.

8

**PLAINTIFF'S RESPONSE TO DEFENDANT'S SUPPLEMENT TO MEMORANDUM RE: CONFIDENTIAL DESIGNATION OF DEPOSITION TRANSCRIPT AND VIDEO AND EXPEDITED MOTION FOR PROTECTED ORDER TO CEASE AND DESIST AND REMOVE PUBLIC POSTINGS**

City officials undertook to publish the City's own position in the local media. *Supra*. They are well aware that Arizona Rule of Professional Conduct ER 3.6, which the defendants rely on to effectuate their purpose of silencing counsel for the plaintiff, also states:

> Notwithstanding paragraph (a*), a lawyer may make a statement that a reasonable lawyer would believe is required to protect a client from the substantial undue prejudicial effect of recent publicity not initiated by the lawyer or the lawyer's client.* A statement made pursuant to this paragraph shall be limited to such information as is necessary to mitigate the recent adverse publicity.
> Ariz. R. Prof. Cond. 3.6(c) (Emphasis added).

Defendants failed to include that paragraph in their brief. While the Court may be aware of the Rule and its exception, the failure to include it, reveals defendants' lack of candor with the Court. *See.* E.R. 3.3(a)(2).

In light of the City's clear violation of E.R. 3.6 when it used the police department spokesperson to provide alleged facts that are verifiably false about the killing of Mr. Muhammad and the reasonable presumption that defendants did not stop reading E.R. 3.6 at paragraph (b) but actually continued to paragraph (c), the exception, the City's motion appears to be nothing more than a tax payer funded effort by public officials to limit the political damage to their political careers from their failure to undertake a criminal investigation of the defendant officers' actions or even an administrative review of arrest procedures that the DOJ warned about in 1995.

### c. The social media posts in this case are appropriate responses to the Defendants' media statements.

**PLAINTIFF'S RESPONSE TO DEFENDANT'S SUPPLEMENT TO MEMORANDUM RE: CONFIDENTIAL DESIGNATION OF DEPOSITION TRANSCRIPT AND VIDEO AND EXPEDITED MOTION FOR PROTECTED ORDER TO CEASE AND DESIST AND REMOVE PUBLIC POSTINGS**

Despite jury instructions that admonish jurors not to conduct outside research about a case, jurors often do. A simple search of the words "Muhammad" and "Muhaymin" reveals the ABC News article, on the first search page, that includes quotes from City of Phoenix P.D. with the following false statements:

> 1. "Multiple officers were needed to subdue the man who continued to act violently even after he was restrained by officers and handcuffs."

(*See* Exhibit 2.)

This statement is false and was then known to be false by the Phoenix P.D. and its spokesperson. All of the officers directly involved have been deposed and none have testified that Mr. Muhaymin was violent. The videos do not reveal violent behavior. Moreover, Mr. Muhaymin was handcuffed and subdued outside of the Maryvale Community Center by the first three officers that were there. He started screaming after they got him to the police vehicle and lifted his handcuffed arms up behind his back and in a nearly 360-degree arc over his head and to his front. That violence was unnecessary since he was already handcuffed and at the vehicle. That movement probably tore both rotator cuffs which would have caused intolerable pain which is consistent with the agonizing screams heard on the video. Finally, the witness -Arizona Smith- who observed the arrest and killing, testified that officers took Muhaymin to ground after he had his handcuffed arms spun from behind his back to his front. She testified that four officers put their weight on him, and one had a knee to his neck. She heard him say I can't breathe before he fell silent. (Arizona Smith Depo. P. 14-18. Exhibit 3.)

10

**PLAINTIFF'S RESPONSE TO DEFENDANT'S SUPPLEMENT TO MEMORANDUM RE: CONFIDENTIAL DESIGNATION OF DEPOSITION TRANSCRIPT AND VIDEO AND EXPEDITED MOTION FOR PROTECTED ORDER TO CEASE AND DESIST AND REMOVE PUBLIC POSTINGS**

2. "Officers observed Muhaymin 'acting erratically' and refusing to leave the facility after he 'had assaulted an employee.'"

(*See* Exhibit 2.)

This statement is also false. Officers never asked him to leave the facility and had no right to ask him to leave a public facility because he had not violated any law. The facility manager was deposed and consistent with his statement on video admitted that he was not assaulted. The police officers, then, knew that the public facility manager had made a false police report alleging an assault. Yet, they decided to arrest Muhaymin and to ignore the crime committed by the facility manager in violation of Arizona Revised Statute 13-2907.1 which states: "A person commits false reporting by initiating or circulating a report of a…offense…knowing that such report is false and intending [t]hat it will cause action of any sort by an official…organized to deal with emergencies." The facility manager admitted to the officers that he was not assaulted. It was his false call that resulted in their response to the Community Center. The officers ignored the false call and set upon Muhaymin instead.

3. "While struggling with officers on the ground in the parking lot outside the community center after his arrest, Muhaymin began showing signs of medical distress."

(*Id.*)

This statement is also false and misleadingly suggests that there was a struggle

11

instigated by Mr. Muhaymin. Mr. Muhaymin's only struggle was his struggle to breath when the defendant officers digged their knees into his neck and back until he died. He pleaded "I can't breathe" several times. The homicide was not a result of the struggle by Mr. Muhammad but due to positional asphyxiation brought upon from the knee to Muhaymin's neck and the weight upon his back causing compression and depriving him of oxygen. He did not die because he struggled. He died because he was suffocated.

Unlike the ABC News article with the statements from the individual defendants and the City of Phoenix which appear on the first page of a google search, the social media posts defendants complain about could not be retrieved through a google search after combing through the first 10 pages of a google search result using the words "Muhammad Muhaymin." Any claim by defendants that they are not responsible for the ABC News report article or that the article is old is disingenuous and feigns ignorance. Unlike a traditional newspaper article whose impact would be expected to dissipate after a few years or even months or weeks, statements on the internet remain readily accessible and always visible. The defendants knew that their statements would be accessible on the internet as the official factual version of what actually occurred. The statements of defendants appear as the third listing on the first page of a google search. A juror who determines to disobey the court's admonition to not conduct outside research will find the false statements about Mr. Muhammad long before any social media postings, assuming such postings are capable of being retrieved by a Google search. And if such posts are accessible, then they are nothing more than proper responses to the City's pretrial publicity statements as allowed by ER 3.6(c).

12

**PLAINTIFF'S RESPONSE TO DEFENDANT'S SUPPLEMENT TO MEMORANDUM RE: CONFIDENTIAL DESIGNATION OF DEPOSITION TRANSCRIPT AND VIDEO AND EXPEDITED MOTION FOR PROTECTED ORDER TO CEASE AND DESIST AND REMOVE PUBLIC POSTINGS**

### d. Defendants attack on plaintiff's counsel and his intent are specious and seeks to damage an-out-of state counsel's reputation before this court.

Undersigned counsel served in the U.S. Marine Corps for 22 years before retiring. After service throughout the world in several combat missions and many leadership positions, counsel became an attorney and represented criminally accused service members. Undersigned counsel has tried more than one hundred criminal and civil jury trials throughout the United States. Plaintiff's counsel does not need nor seeks to leverage pretrial publicity to prevail at trial as the defendants allege. Wearing the uniform and swearing to uphold the constitution meant a commitment to protecting the weak and vulnerable and to fight against those who abuse their authority or power. The social media posts provide a vehicle to advocate for political change on behalf of a helpless client who is desperate to understand why no one has been held accountable for the death of her brother, especially in light of the accountability demonstrated by city leaders in Minneapolis for the death of George Floyd.

The social media posts were, in fact, posted to leverage the national attention now turned to policing so that the City of Phoenix will institute the necessary procedures to avoid tragedies like the death of Muhammad Muhaymin and to hold accountable officers that violate well known policies.[5] To the extent that such posts incite anger at the City of

---

[5] City of Phoenix is well aware of the dangers of positional asphyxiation. In 2014, the city settled a case alleging the wrongful death of a man due to positional asphyxiation. *See https://www.azcentral.com/story/news/local/phoenix/2019/02/06/family-edgardo-figueroa-who-died-phoenix-police-custody-get-settlement/2790658002/*

13

**PLAINTIFF'S RESPONSE TO DEFENDANT'S SUPPLEMENT TO MEMORANDUM RE: CONFIDENTIAL DESIGNATION OF DEPOSITION TRANSCRIPT AND VIDEO AND EXPEDITED MOTION FOR PROTECTED ORDER TO CEASE AND DESIST AND REMOVE PUBLIC POSTINGS**

Phoenix and its police department, then such actions are precisely what is needed to effectuate change in November and prima facie evidence of the improper use of public authority and money by defendants to interfere with a political election. Defendant's unpersuasive citation to a couple of out of state, unreported district court cases, where in one the court disagreed with the attempt to disallow video depositions of police officers but permitted blurring of the faces upon plaintiff's concession that there is no reason to believe that the officers will not be available to appear for trial; and another related to a disagreement in a settlement agreement as to whether police officer's images would be pixelated, are hardly persuasive authority to curb speech seeking to effectuate political change.

## **CONCLUSION**

Defendants' supplemental motion should be denied in its entirety as an improper limitation on constitutionally protected speech. The complained of social media posts are unlikely to affect the trial outcome but definitively fit the definition of a political issue which may not be limited by this court absent strict scrutiny. Moreover, even if the social media posts are likely to fit the definition of pretrial statements, they are well within the response parameters contemplated by E.R. 3.6(c) of the Arizona Rules of Professional Conduct.

14

**PLAINTIFF'S RESPONSE TO DEFENDANT'S SUPPLEMENT TO MEMORANDUM RE: CONFIDENTIAL DESIGNATION OF DEPOSITION TRANSCRIPT AND VIDEO AND EXPEDITED MOTION FOR PROTECTED ORDER TO CEASE AND DESIST AND REMOVE PUBLIC POSTINGS**

Respectfully submitted this 1st of June, 2020.

**LAW OFFICES OF HAYTHAM FARAJ**

/s/ Haytham Faraj
Haytham Faraj, Pro Hac Vice
Attorney for Plaintiff

CERTIFICATE OF SERVICE

I hereby certify that on June 1, 2020, I electronically files the forgoing with the Clerk of the Court for the U.S. District Court, District of Arizona, using the CM/ECF System. A notice of electronic filing will be served on the following registered participants:

Daniel J. O'Connor Jr.
Karen Stillwell
Jared Scarborough
O'CONNOR & DYET, P.C.
7955 South Priest Drive
Tempe, Arizona 85284
Attorneys for defendants

Brian J. Theut
Theut, Theut & Theut
5150 North 16th Street
Phoenix, AZ 85258
*Court ordered representative*
*for Amirah Muhaymin, a minor*

By: /s/ Haytham Faraj

15

**PLAINTIFF'S RESPONSE TO DEFENDANT'S SUPPLEMENT TO MEMORANDUM RE: CONFIDENTIAL DESIGNATION OF DEPOSITION TRANSCRIPT AND VIDEO AND EXPEDITED MOTION FOR PROTECTED ORDER TO CEASE AND DESIST AND REMOVE PUBLIC POSTINGS**