Daniel J. O'Connor, Jr., Bar No. 010081
Karen J. Stillwell, Bar No. 022711
**O'CONNOR & DYET, P.C.**
7955 South Priest Drive
Tempe, Arizona 85284
daniel.oconnor@occlaw.com
karen.stillwell@occlaw.com
(602) 241-7000

*Attorneys for Defendants*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mussalina Muhaymin as Personal Representative of the Estate of Muhammad Abdul Muhaymin Jr., <br><br> Plaintiff, <br><br> vs. <br><br> City of Phoenix, an Arizona Municipal Corporation; Antonio Tarango; Officer Oswald Grenier; Officer Kevin McGowan; Officer Jason Hobe; Officer Ronaldo Canilao; Officer David Head; Officer Susan Heimbinger; Officer James Clark; Officer Dennis Lerous; Officer Ryan Nielson; Officer Steven Wong; and Doe Supervisors 1-5, <br><br> Defendants. | Case No.: 17-cv-04565-PHX-SMB <br><br> **DEFENDANTS' <u>EXPEDITED</u> MOTION FOR PROTECTIVE ORDER AND MOTION FOR SANCTIONS** <br><br> **(TO BE FILED UNDER SEAL)** <br><br><br> (Assigned to the Honorable Susan M. Brnovich) |

Pursuant to Rule 26(c)(1)(A), FED. R. CIV. P., Defendants City of Phoenix, Antonio Tarango, Officer Oswald Grenier, Officer Kevin McGowan, Officer Jason Hobel, Officer Ronaldo Canilao, Officer David Head, Officer Susan Heimbigner, Officer James Clark, Officer Dennis Leroux, Officer Ryan Nielsen, and Sergeant Steven Wong (collectively "Phoenix Defendants") move for a Protective Order and respectfully request that the Court

order Plaintiff's counsel to cease and desist all future comments, and release of information and/or documents, to the media and general public, with regard to this litigation and subject incident. Phoenix Defendants also request that the Court issue sanctions against Plaintiff and her counsel for the willful violation of the Rules and this Court's Orders. Phoenix Defendants submit the following Memorandum of Points and Authorities in support of this Motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. BACKGROUND

Pursuant to Rule 26(c), Fed. R. Civ. P., and upon stipulation of the Parties, the Court Ordered a Protective Order on May 8, 2019, which provided for the protection of confidential and "other non-public documents, information, and/or materials made available during discovery and disclosures in this matter." *See* Dkt. No. 072. Specifically, the Order defined "Confidential Information" as "any documents, evidence, testimony, materials, or other information, whether written or oral, exchanged, revealed, or presented in these proceedings, ***designated in good faith as 'Confidential' by any party***," including but not limited to, "information and documents… ***not generally available to the public*** as well as any copies or summaries of such information or any materials that reveal the contents of such information." *See* Dkt. No. 072, ¶ 4 (emphasis added). The Order specifically permits deposition transcripts to be designated as Confidential "by making such a designation on the record at the deposition or by making such a designation in writing within 30 day of receipt of the deposition transcript by the Designating Party." *See* Dkt. No. 072, ¶ 8.

Once designated as Confidential, "such material ***shall*** be treated as Confidential Information under the terms of this Order until… by an order of this Court pursuant to ***good cause shown by a Challenging Party***." *See* Dkt. No. 072, ¶ 5 (emphasis added).

### II. DOCUMENTS AND INFORMATION DEEMED CONFIDENTIAL

Throughout the course of discovery, fourteen (14) employees from City of Phoenix were deposed, with the majority of those depositions videotaped. Phoenix Defendants

timely designated all fourteen depositions, including the related videos, as Confidential pursuant to the Court's Protective Order.

Phoenix Defendants have produced over 15,000 pages of documents through the course of the litigation, which include various employment files of the individual employees named as Defendants in this action. This includes the Defendant Officers' training records, as maintained by Phoenix Police Department. Phoenix Defendants timely designated various documents as Confidential pursuant to the Court's Protective Order. The designated documents themselves are marked "CONFIDENTIAL" and the Confidential designation is indicated in Phoenix Defendants' Mandatory Discovery Responses.

Plaintiff's counsel is well-aware of the Confidential designations of the fourteen depositions and various documents produced by Phoenix Defendants throughout the course of this litigation. In fact, Plaintiff's counsel has challenged the Confidential designations due to his desire to speak to the media about this lawsuit, the officers, and their testimony, however, the Court has not released any of the information/documents designated Confidential by Phoenix Defendants that are relevant to this Motion.

### III. PLAINTIFF COUNSEL'S MEDIA COMMENTS AND INFORMATION PROVIDED

As the Court may recall, in June 2020, Plaintiff's counsel Haytham Faraj created various social media posts regarding the litigation, and included body camera videos from the incident, which he altered to include his interpretation of what was being said in the body camera videos. (*See* Motion at Dkt. No. 179 and Response at Dkt No. 183). Phoenix Defendants moved for a Motion for Protective Order. Although the Court denied Phoenix Defendants' Motion for Protective Order (*see* Dkt. No. 188), the Court cautioned counsel on future statements, indicating in part…"because the Court finds no violations of any Court order or rule, it declines to issue an order that would act as a prior restraint. However,

*this does not mean that the Court would not do so if any counsel, whether for Plaintiffs or for Defendants violated Court rules in the future. The Court expects all counsel to exercise caution and restraint in all future statements, if any*…The Court need not address Mr. Faraj's claims that he was engaging in political speech and issue advocacy because no order is issuing. Notwithstanding this, his arguments lack merit because nothing in his posts were directed at holding elected officials accountable or addressing policing procedure issues. Nonetheless, *he could do either of these things without attempting to influence the outcome of this case or citing to non-public information."* (Emphasis added). The Court also noted that it is "concerned with a statement by Mr. Faraj in his first post, which states that "[a]ll the officers involved admit that he did not attack any officer verbally or physically. This information appears to *arise out of information obtained from the depositions in this case, which would be subject to the protective order*."

While Plaintiff's counsel continues to assert that it is their intention to not try this case in the media (*see* assurances made by David Chami and Haytham Faraj during depositions of Defendant officers, attached as **Exhibit A)**, their actions are blatantly contrary to these assurances. Since the Court's June ruling, Plaintiff's counsel has continued to release to the media, information/interpretations, statements, documents, officer deposition testimony, and body camera videos from the litigation.

Plaintiff's counsel's timing in releasing this information to the media is of no coincidence. Immediately after the George Floyd incident in May 2020, Plaintiff's counsel attempted to compare the George Floyd incident to this case and capitalize on the national attention and public outcry concerning use of force by police officers.[1] Shortly thereafter, the parties participated in additional settlement discussions that carried threats of media

---

[1] *See* Phoenix Defendants' prior Motion for Protective Order, *at* Dkt. No. 179.

exposure. Settlement negotiations were not successful and, as threatened, on July 8, 2020, CNN released an article and video,[2] which included the release of bates labeled documents produced in the litigation, Plaintiff's expert report, and included a sit-down interview of Mr. Chami, as Plaintiff's counsel.

In August 2020, Plaintiff's counsel released body camera videos to the media, claiming that the officers targeted and mocked Mr. Muhaymin for his religion. Specifically, Plaintiff's counsel told the media that the body camera video depicts the following:[3]

  Mr. Muhaymin:  "Allah"

  Officer:  "Allah, he's not going to help you right now"

As the articles indicate, this video was "[t]aken from the body camera of Officer Jason Hobel, one of 10 officers named as defendants in the Muhaymin family's $10 million wrongful death lawsuit against Phoenix, the footage was uncovered during the civil suit and ***released by the family's attorneys***. The footage was previously reported on by CNN and has now been made public."

It is interesting to note that while Plaintiff's counsel is attempting to manipulate a potential jury pool with *his* interpretation of what is allegedly said on that body camera video, Plaintiff's counsel never questioned the officer at his deposition about what that officer *actually* said in the video. Thus, instead of getting to the truth of the matter or, at least, allowing the comment to be interpreted by the jury, Plaintiff's counsel has aggressively pushed *his* portrayal to the media in order to exploit a distorted agenda against Phoenix Defendants[4] and to contaminate the potential jury pool with prejudice.

---

[2] https://www.cnn.com/2020/07/09/us/phoenix-muhammad-muhaymin-invs/index.html
[3] Video and article: https://religionnews.com/2020/08/20/body-cam-video-muhammad-muhaymin-police-please-allah-help-cant-breathe-black-muslim/
[4] The officer in fact was not mocking Mr. Muhaymin's religion, the officer said "Allah? We're trying to help you right now dude so relax. Relax due. Stop moving. Stop resisting, you understand?"

If this violation wasn't enough, Plaintiff's counsel's conduct does not stop there. In statements made to the media, Plaintiff's counsel alleged that the Phoenix Police Department left the Allah portion out of the video on purpose…"we think this type of information will help maybe get somebody to take a second look whether these officers should still be patrolling this neighborhood. There's no doubt that the city manipulated the narrative."[5] These comments are grossly untrue, unfair and extremely prejudicial. Plaintiff's counsel knows, or should know, that these comments have only a single purpose, i.e., to manipulate and influence the potential jury pool, and that the Court has already admonished all counsel in this case against any such media efforts.

Even if these statements were interpreted to encourage the public to purportedly "hold the Defendants accountable," perhaps most alarming is Mr. Chami's participation in a September 15, 2020 online video presentation that was live-streamed on Facebook. *See* Flyer of Presentation attached as **Exhibit B,** a Screenshot of Video attached as **Exhibit C**, and a portion of Transcript attached as **Exhibit D.** *See also* Hyperlink below to access the full online Video Presentation.[6] During the course of this video presentation, Mr. Chami commits several direct and blatant violations of the Protective Order. For example, Mr. Chami repeatedly discusses deposition testimony given by officers in the litigation (which was deemed Confidential), as noted below:

> Mr. Chami: In fact, *multiple officers testified* that the type of resistance that Mr. Muhaymin engaged in is called passive resistance …

*See* **Exhibit D**, p. 9, l. 17-19 (emphasis added).

> Mr. Chami: And then because of this act, and as one of the officers is doing it, he swears at Mr. Muhaymin and calls him a mother f'er, raises his arms

---

[5] https://www.standard.co.uk/news/world/police-mock-black-muslim-man-during-knee-on-neck-arrest-a4530696.html
[6] Full Video Presentation:
https://www.facebook.com/ncjwarizona/videos/336635440980089

- 6 -

over his head. And, by the way, ***the officers testified*** that Mr. Muhaymin did this on his own, took his cuffed arms over his head and he did it while they from behind attempted to keep his arms down, which it would be impossible for Mr. Muhaymin to take his cuffed arms behind his back over his head on his own …

*Id*. at p. 12, l. 8-19 (emphasis added).

Mr. Chami: And the question is – and ***I asked one of the officers in a deposition***, what does a fish out of water do when it can't breathe? I mean, its body naturally begins to flop around because it's desperate for air. And that's what was happening to Mr. Muhaymin. He was trying to adjust, trying to get into a position to breathe and the treatment by the officers who all have admitted their role. You know, yes, I was – I was putting the weight of my body on his waist, on his back.

And, even ***Officer Greneir testified***, well, you know, I had my knee on his shoulder but it slipped onto his head and I kept it there.

*Id*. at p. 13, l. 18 – p. 14, l. 4 (emphasis added).

Mr. Chami: The officers themselves, their ***statements under oath, their testimony under oath differs substantially from the statements they gave on the scene***.

In some cases, ***they lied*** about – one of the officers lied about not recognizing Mr. Muhaymin during the altercation, not knowing he was someone with – with mental health issues. Until his deposition where I said, oh, here you are on video saying yeah, you know him, you remember him, you dealt with him before.

*Id*. at p. 15, l. 1-9 (emphasis added).

Mr. Chami continues this video tirade against the Phoenix Defendants to discuss training documents and training materials (which were also deemed Confidential). *Id*. at p. 15, l. 18-24. He further misrepresents Phoenix Defendants' response to training-related discovery in the litigation and, as noted above, blatantly accuses the officers of perjury, e.g., lying under oath.

Shortly after this online video presentation aired, media articles began utilizing the confidential information Mr. Chami released during the online presentation and CNN interviews in various articles. See **Exhibit E** for Article released on September 15, 2020.

The article is exemplary of the type of one-sided, misinformed and manipulated news coverage that has resulted from Plaintiff and Plaintiff's counsel's media campaign. In the article, the same misrepresentation created by Plaintiff's counsel is repeated, specifically that the Phoenix Defendants responded to Mr. Muhaymin's plea to "Allah" by saying "He's not going to help you right now" when the truth is that the officer said "we're trying to help you right now." Citing this false premise, Plaintiff (Mr. Muhaymin's sister) goes on to say:

> The city of Phoenix and the Phoenix police *targeted my brother for his race, they mocked him for his religion and disability, and then brutally killed him*.
>
> The lack of any criminal action is a constant reminder to our family that *black and brown people's lives and rights are not valued by the politicians and public.*

**Exhibit E** (emphasis added).

Mr. Chami personally contributed to the article and his comments compared this case directly to the George Floyd case. *Id*., p. 2. In making his comparisons, Mr. Chami referred to expert reports and deposition testimony. Again, as he did in the aforementioned Video Presentation, Mr. Chami states that "experts have found that officers used excessive force, and a study and examination discovered that Mr. Muhaymin died from positional asphyxiation." *Id*., p. 3. He further states that "we have since taken depositions of the police officers who were involved" and goes on to recite testimony from those officers. *Id*.

There is no apparent end to Plaintiff's counsel's media campaign. It was renewed with exceptional vigor after settlement negotiations failed and the obvious goal is to prejudice the jury pool, deprive the Phoenix Defendants a fair trial, and attempt to coerce

the Phoenix Defendants into meeting Plaintiff's settlement demands. As this newly released information spreads throughout the media (print, online and television), it becomes increasingly doubtful that a fair trial can be achieved for the Phoenix Defendants.

## IV. ARGUMENT

The conduct of Plaintiff's counsel goes far beyond encouraging accountability or reassessing elected officials. It demonstrates misguided and wrongful attempts to try this case in the media. This is, after all, exactly what Plaintiff's counsel threatened and, unfortunately, they are making good on that explicit threat. *See* **Exhibit F[7].**

It is also not without collateral and potentially catastrophic damage. This type of conduct provokes anger, anti-police sentiment and violence against police officers. It puts the lives of these public servants at even greater risk than normal, and puts the lives of community members at risk. In this current environment, with protests across this country turning violent, with police officers being targeted for assassination and shot in the streets, and with growing unrest resulting in arson, rioting, looting, assault and other violent confrontations, the result of Plaintiff's counsel's comments to the media and selective leaks is no different than adding gasoline to a burning fire. It is irresponsible and inappropriate, especially when it is considered that the goal is monetary (i.e., settlement of this case for millions of dollars) and not just for any alleged pursuit of "justice."[8] No additional

---

[7] This includes correspondence from Plaintiff's counsel with settlement demands to Phoenix Defendants. While not marked as Rule 408 Communications, the correspondences arguably contain Rule 408 Communications, and therefore further support Phoenix Defendants' Motion to Seal, filed contemporaneously with this Motion.

[8] The Phoenix Police Department conducted both internal and criminal investigations. This matter was investigated by the Phoenix Police Department's Professional Standards Bureau and reviewed by the Department's Use of Force Board. After review of all materials, including thirteen (13) body-worn cameras, the Board determined each of the ten officers involved acted in accordance with Department policy. Moreover, Phoenix Police Department's Special Investigation Unit ("SIU") forwarded its investigation, along with the materials and videos, to the Maricopa County Attorney's Office for potential criminal prosecution of the officers. On February 22, 2018, the Maricopa

investigations are possible or warranted as those investigations have already been conducted and there is no new evidence, despite Plaintiff's claims to the media of "newly-released" footage.

Plaintiff's counsel indicates in media interviews that he and the family want "justice." That is precisely what trial is intended to provide in these cases. The jury will hear all of the evidence in this case and render its verdict. That is the definition of "justice" under our civil justice system. Although the Court cannot control the media, the Court can control counsel and the litigants in this case – and it has (via the Protective Order).

The actions of Plaintiff's counsel are in direct violation of the Protective Order, together with this Court's prior admonitions concerning statements to the media. Plaintiff's counsel has knowingly and intentionally released select portions of information (some of which is confidential) from this lawsuit to the media for the stated goal of increasing public exposure for purposes of pressuring the City of Phoenix into settlement. It is pure exploitation of the current environment, without any regard for consequential damages, in order to advance a narrative of this case to the general public and potential jury pool that is entirely misleading and prejudicial. Moreover, it is irrefutable that Plaintiff's counsel has intentionally released information, documents and even deposition testimony that was deemed Confidential and clearly subject to this Court's Protective Order. As such, Plaintiff's and Plaintiff's counsel's conduct also demonstrates contempt of this Court.

Our judicial system provides that all parties to this litigation are entitled to a *fair trial,* where both sides have the opportunity to present their *entire* case to a duly selected and empaneled jury, who will consider *all* of the evidence and render the ultimate verdict in this case. It is clear that Plaintiff has no intention of waiting until trial and allowing this case to be decided on its merits, or lack thereof. Instead, this case is currently being tried

---

County Attorney's Office announced the officers did not commit any act that warranted criminal prosecution.

in the court of public opinion because of Plaintiff's counsel's efforts. Now, it is doubtful whether the Phoenix Defendants will receive a fair trial. Sanctions of the most severe form are warranted in this case.

## V. **LEGAL ANALYSIS**

Phoenix Defendants hereby incorporate their Memorandum (and exhibits) concerning the purpose and legal authority surrounding the necessity of Confidential designations in litigation (*See* Dkt. No. 117). Phoenix Defendants further incorporate their Supplemental Memorandum and Motion for Protective Order (and exhibits), pertaining to the conduct of Plaintiff's counsel, and particularly with regard to Arizona Rules of Professional Conduct, E.R. 3.6 and 4.4 and Local Rule of Civil Procedure 83.8. (*See* Dkt. No. 179).

### 1. **Sanctions for Violations of Protective Order**

The Court has authority under 28 U.S.C. § 636 to exercise contempt authority for violations of the Protective Order, which may be issued with or without a finding of civil contempt. *Harmon v. City of Santa Clara*, 323 F.R.D. 617, 622 (N.D. Cal. 2108). The Protective Order, including matters designated as confidential, is clear and unambiguous. Plaintiff and Plaintiff's counsel has willfully ignored and violated the Protective Order by discussing confidential matters with the media and selectively leaking litigation materials (some confidential) to the media. This is tantamount to civil contempt. *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 696, 695 (9th Cir. 1993)("civil contempt occurs when a party disobeys a specific and definite court order by failing to take all reasonable steps within the party's power to comply"). "There is no question that procedural rules are important and that infractions of those rules should not be tolerated by the courts. Otherwise, the rules themselves will not be taken seriously, and eventually they may exist in name only, honored in the breach". *Kovilic Construction Co., Inc. v. Missbrenner*, 106 F. 3d 768 (7th Cir. 1997).

Violations of protective orders can also be addressed under Rule 37(b)(2) of the Federal Rules of Civil Procedure. *Management Registry Inc. v. A.W. Companies, Inc.*, 2019 WL 5388488 [*13]. As the Ninth Circuit has noted, Rule 37 exists to ensure compliance

with orders and to provide "adequate sanctions" to enforce compliance with orders. *Id.*, citing *Grimes v. City of San Francisco*, 951 F.2d 236, 240-41 (9th Cir. 1991).

Pursuant to Fed. R. Civ. P. 37(b)(2)(A), the court may sanction the party through any one of the following means:

    i.    Directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

    ii.    Prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

    iii.    Striking pleadings in whole or in part;

    iv.    Staying further proceedings until the order is obeyed;

    v.    Dismissing the action or proceeding in whole or in part;

    vi.    Rendering a default judgment against the disobedient party; or

    vii.    Treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

"Instead of or in addition to" these sanctions, "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C). Federal judges have inherent power to sanction parties and attorneys appearing before them for actions taken "in bad faith, vexatiously, wantonly, or for oppressive reasons." See *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1183–84 (2017); *Chambers v. NASCO Inc.*, 501 U.S. 32, 45–46 (1991).

Under the circumstances, there can exist little doubt that the Court has the inherent authority and power to impose severe sanctions. *Roadway v. Express, Inc. v. Piper*, 447 U.S. 752, 765, 100 S. Ct. 2455 (1980) (courts have inherent power to levy sanctions on parties who engage in abusive litigation practices); *Wyle v. R.J. Reynolds Industries, Inc.*,

709 F. 2d 585, 589 (9th Cir. 1983) (courts have inherent power, including dismissal of an action, when a party has engaged in conduct utterly inconsistent with the orderly administration of justice).

There can also be no doubt that Defendants have suffered prejudice as a result of Plaintiff's actions. *Henry v. Gill Industries*, 983 F. 2d 943, 947 (9th Cir. 1993)("[a] defendant suffers prejudice if plaintiff's actions impair the defendant's ability to go to trial, or threaten to interfere with the rightful decision of the case").

"Rule 37(b) sanctions may serve either remedial and compensatory purposes or punitive and deterrent purposes," but ultimately, "the imposition and selection of particular sanctions are matters left to the sound discretion of the trial court." *Harmon*, 323 F.R.D. at 626, citing *Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F. 2d 770, 784 (9th Cir. 1993). Civil contempt sanctions under 28 U.S.C. § 636(e) and/or sanctions under 28 U.S.C. § 1927 may be imposed regardless of whether or not the contempt was willful. *Id.*, citing *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F. 3d 693, 695 (9th Cir. 1993) ("civil contempt … consists of a party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply. The contempt need not be willful, and there is no good faith exception of the requirement of obedience to a court order.").

### 2. Dismissal of Lawsuit is Appropriate Sanction

In this case, Plaintiff's counsel knowingly, intentionally and repeatedly violated the Protective Order by releasing confidential information and materials to the media and public. These egregious violations of the Protective Order have resulted in extreme prejudice to the Phoenix Defendants, impaired the Phoenix Defendants' ability to receive a fair trial and threaten to interfere with the rightful decision of this case. The Court has the inherent authority and power to impose the most severe sanctions against Plaintiff and Plaintiff's counsel, including dismissal of the lawsuit, for what has occurred in this case.

Defendants respectfully submit that remedial sanctions are insufficient at this point because the damage is done and cannot now be corrected. Because of the conduct by Plaintiff's counsel, the general public is left with the narrative from the media (including

national media outlets like CNN) that **(a)** the Phoenix Defendants arrested and then ***intentionally tortured and killed Mr. Muhaymin because they were racial and religious bigots***; **(b)** the City of Phoenix has ***concealed and withheld evidence*** in order to manipulate the narrative; **(c)** the ***officers' training was inadequate or protocols were not followed***; and **(d)** the ***Phoenix officers committed perjury and lied under oath at depositions***.

Once put out into the mainstream media, this type of damage cannot be undone. The potential jury pool is now filled with persons who come into the jury selection process with the preconceived (and likely irreversible) notion that the Phoenix Defendants are racists and religious bigots who tortured and killed Mr. Muhaymin out of malice and subsequently perjured themselves under oath, lied, and concealed evidence to cover up the alleged wrongdoings. This is entirely false information and unacceptable and, at the same time, was entirely avoidable. Hence, the Protective Order and the Court's prior admonitions to counsel against this very type of media campaign.

Under the circumstances, only the most severe punitive sanctions can adequately address these violations, including dismissal of the lawsuit with prejudice on grounds that the Phoenix Defendants cannot receive a fair trial as a result of Plaintiff's misleading and patently false media campaign. Moreover, as this Court is well-aware, Plaintiff's counsel has demonstrated a pattern of disregard for the Rules and this Court's Orders. *See* Dkt. No. 127, 128, 164; *see also* September 14, 2020 and September 18, 2020 correspondence to the Court, attached as **Exhibit G;** *see also* September 30, 2020 correspondence exchanges to the Court regarding Plaintiff's improper Subpoenas, direct communication with defense experts, and subsequent behavior, attached as **Exhibit H.** In the event that the Court is not inclined to dismiss the lawsuit, it is respectfully requested that the Court remove Plaintiff's counsel as attorney of record in this case and/or impose monetary sanctions and against Plaintiff, including the attorneys' fees and costs incurred in addressing Plaintiff's counsel's improper conduct.

. . .

. . .

### 3. A Protective/Restraining Order is Necessary in Interest of Justice

If the lawsuit is not dismissed, the Phoenix Defendants respectfully request that a restraining order be instituted in this case. This is true regardless of whether Plaintiff's counsel is removed or permitted to remain. Counsel for the Phoenix Defendants has not communicated, whatsoever, with the media other than to indicate that no comment would be given. As appropriate, the Phoenix Defendants request this case be decided in the courtroom before judge and jury, and not pre-decided in the court of public opinion.

There is good cause to restrict and prohibit Plaintiff and Plaintiff's counsel from any further discussion of this case with the media and public, and selective leaks of materials and information to the media and public. That cause is to ensure that the parties receive a fair and impartial judicial process when the time comes to empanel the jury in this case.

In the Court's Order dated June 4, 2020, the Court noted as follows:

"***The Court is empowered to issue a restraining order prohibiting trial participants from communicating with the media where 'excessive trial publicity' endangers the fairness of the judicial process.***" *Mizioch v. Montoya*, No. CV10-01728-PHX-JAT, 2011 WL 4900033, at *6 (D. Ariz. Oct. 14, 2011) (citing *Levine v. United States District Court for the Central District of California*, 764 F.2d 590, 600-601 (9th Cir. 1985)). The Supreme Court has said that the speech of trial participants can be restricted under a less demanding standard than that required to restrictions imposed on the press. *See Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1071 (1991). The Ninth Circuit has recently reiterated that a lower standard applies to prior restraints of the speech of attorneys participating in a case. *See*, *e.g.*, *In re Dan Farr Prods.*, 874 F. 3d 590, 593 n.3 (9th Cir. 2017). Other courts have noted that issuing restraints on lawyers still requires special protection when there has not been a determination that the speech is unprotected by the First Amendment. *See Clifford v. Trump*, Case No.: CV-18-02217-SJO (FFMx), 2018 WL 5273913, at *3-4 (C.D. Cal. July 31, 2018); *United States v. McGregor,* 838 F.Supp.2d 1256, 1262 (M.D. Ala. 2012) ("***Thus, a court should issue a gag order only if (1) the attorneys' speech presents a substantial likelihood of material prejudice to the proceedings; (2) the proposed protective order is narrowly tailored; (3) alternatives to the***

*protective order would not be effective; and (4) the order would be effective in achieving the government's goal.*")

Dkt. No. 188 (emphasis added).

In this case, a Protective Order that imposes such a "gag order" upon Plaintiff and Plaintiff's counsel is warranted for the fair and impartial administration of justice. If Plaintiff cares about "justice," as claimed, there should be no objection to allowing this case to be tried solely where it belongs – in the courtroom.

Similar to Plaintiff's counsel's seminar to discuss this litigation, there is new public advertising about another upcoming presentation on social media forums, which will include a discussion with Plaintiff, Mussalina Muhaymin, and is currently scheduled for October 14, 2020. *See* flyer attached as **Exhibit I**. In light of Plaintiff's and Plaintiff's counsel's previous instances of improper release of information concerning this litigation, Phoenix Defendants requested expedited consideration of this Motion. This will ensure that additional violations of the Court's Order and the Protective Order will not occur.

## VI. CONCLUSION

For these reasons, Phoenix Defendants respectfully request the Court enter a Protective Order prohibiting further discussions with media and/or members of public. Phoenix Defendants also respectfully request that the Court issue sanctions against Plaintiff and Plaintiff's counsel for violating this Court's Protective Order and June 5, 2020 Order, and repeated violations of the Court's Orders and Federal Rules of Civil Procedure.

Phoenix Defendants propose sanctions against Plaintiff and Plaintiff's counsel, to include dismissal of this case in its entirety, removal of Plaintiff's counsel as attorneys of record, monetary punitive sanctions sufficient to deter such conduct in the future, a "gag" order to preclude any future communications and release of information to the media and public, and/or reasonable attorneys' fees and costs awarded to the Phoenix Defendants

associated with preparing and filing *all* pleadings to date related to Plaintiff counsel's release of information to the media and general public.

RESPECTFULLY SUBMITTED this 7th day of October, 2020.

**O'CONNOR & DYET, P.C.**


By: */s/ Karen J. Stillwell*
Daniel J. O'Connor, Jr.
Karen J. Stillwell
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on October 7, 2020, I electronically filed the foregoing with the Clerk of the Court for the U.S. District Court, District of Arizona, using the CM/ECF System. A Notice of Electronic Filing will be served to the following registered participants:

David A. Chami
PRICE LAW GROUP, APC
8245 N. 85th Way
Scottsdale, AZ 85258
*Attorney for Plaintiff*

Haytham Faraj
LAW OFFICES OF HAYTHAM FARAJ
1935 W Belmont Ave.
Chicago, IL 60657
*Attorney for Plaintiff*

Brian J. Theut
THEUT, THEUT & THEUT
5150 North 16th Street
Phoenix, AZ 85016
*Guardian Ad Litem and Statutory Representative for A. M.*

By: */s/ Aly Shomar-Esparza*