David A. Chami, AZ #027585
PRICE LAW GROUP, APC
8245 N. 85th Way
Scottsdale, AZ 85258
T: (818) 600-5515
F: (818) 600-5464
david@pricelawgroup.com

Haytham Faraj
LAW OFFICES OF HAYTHAM FARAJ
1935 W Belmont Ave.
Chicago, IL 60657
T: (312) 635-0800
F: (202) 280-1039
haytham@farajlaw.com

*Attorneys for Plaintiff*
*Mussalina Muhaymin*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mussalina Muhaymin,<br><br>Plaintiff,<br><br>v.<br><br>City of Phoenix, et al.,<br><br>Defendants. | Case No. CV-17-04565-PHX-SMB<br><br>**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' EXPEDITED MOTION FOR PROTECTIVE ORDER AND MOTION FOR SANCTIONS**<br><br>Honorable Susan M. Brnovich |

Plaintiff, Mussalina Muhaymin ("Plaintiff" or "Ms. Muhaymin"), through undersigned counsel, hereby submits her Memorandum in Opposition to Defendant City of Phoenix's, *et al.* ("Defendants") Expedited Motion for Protective Order and Motion for Sanctions ("Motion")(Dkt. 237).

1

## **TABLE OF CONTENTS**

I.    INTRODUCTION .................................................................................. 1

II.   RELEVANT PROCEDURAL HISTORY ............................................ 3

III.  ARGUMENT ....................................................................................... 4

    A.    The Information Disclosed Was Not Confidential ........................5

        i.    Mr. Faraj's June 2020 social media posts.............................5

        ii.   Mr. Chami's July and August 2020 release of factual information to the media. ...............................................................6

        iii.  Comments made by Mr. Chami during September 15, 2020, online political event addressing issues of racial disparity in police treatment, describing the deposition testimony of officers regarding what happened during the murder of Mr. Muhaymin. .................................7

        iv.   "The Final Call" article comparing Mr. Muhaymin's death to the death of George Floyd, released on September 15, 2020. ....................8

    B.    Ms. Muhaymin And Her Counsel Are Not Attempting To Hold A Trial In The Court Of Public Opinion..........................................................9

    C.    Defendants' Accusations That Ms. Muhaymin Is Motivated Solely By Financial Incentive Is Patently False, Unsupportable, Insensitive, And Insulting ...............................................................................................13

    D.    Plaintiff Requests That The Court Deny Defendant's Request For Sanctions ...............................................................................................14

        i.    Defendant's are not entitled to sanctions...........................14

        ii.   Defendants' proposed sanctions are inappropriate ...........16

IV.   CONCLUSION................................................................................. 18

i

1

## **<u>TABLE OF AUTHORITIES</u>**

2

**Cases**

3

*Foltz v. State Farm Mut. Auto. Ins. Co.*,

4

5

   331 F.3d 1122 (9th Cir. 2003) ................................................................................. 7, 14

6

*Hagestad v. Tragesser*,

7

   49 F.3d 1430 (9th Cir. 1995) ................................................................................... 7, 14

8

9

*Roadway v. Express, Inc. v. Piper*,

10

   447 U.S. 752, 100 S. Ct. 2455 (1980) .......................................................................... 12

11

*Skilling v.United States*,

12

13

   561 U.S. 358, 130 S. Ct. 2896, 177 L. Ed. 2d 619 (2010) ........................................... 13

14

*Wyle v. R.J. Reynolds Industries, Inc.*,

15

   709 F. 2d 585 (9th Cir. 1983) ...................................................................................... 12

16

17

**Statutes**

18

5 U.S.C. § 1502 ............................................................................................................... 15

19

**Rules**

20

21

Ariz.R.Prof.Cond. 3.6(c) ............................................................................................... 13

22

Fed.R.Civ.P. 37(b)(2)(C) ................................................................................................ 12

23

24

25

26

27

28

## I.    **INTRODUCTION**

As has become their wont throughout the instant litigation, Defendants once again utilize public funds in an attempt to stifle Plaintiff's political speech under the thin veneer of seeking "justice." Defendants impugn Plaintiff's ethicality and human decency by describing her motives of political and civil change as nothing more than rank avarice, and level unfounded accusations of contempt against Plaintiff's counsel. This must stop. The City of Phoenix is a public entity, necessarily vulnerable to public scrutiny, and it is not entitled to use taxpayer dollars and the federal court system to protect the elected officials who have, to date, refused to even consider legitimate policy change following the tragic and utterly avoidable death of Muhammad Abdul Muhaymin, Jr. ("Mr. Muhaymin").

Since a time predating the instant suit, Plaintiff and her counsel have been fully involved in the political sphere, attempting to effectuate necessary change in the policies and procedures implemented by the City of Phoenix and its Police Department, as well as seeking accountability from the officers involved in the murder of Mr. Muhaymin. As has been **repeatedly** stressed throughout the case, these goals have consistently been of paramount importance to Ms. Muhaymin. The initiation of this case did not confine her ability to continue seeking political change.

Every action taken and every statement made by Plaintiff's counsel, described in Defendants' Motion, were taken, and made, in furtherance of these political and social goals. They are the very definition of political free speech, protected by the First Amendment. It is this political free speech that the City of Phoenix attempts to have quashed using taxpayer funds. This is highly inappropriate.

Furthermore, **none** of the information conveyed by Plaintiff and her attorneys, about which Defendants complain, is confidential. First, the majority of the information conveyed constituted nothing more than a retelling of information that was **already public** by virtue of body camera footage **released by Defendants**. Second, this Court denied in full Defendants' request that the entirety of deposition transcripts, reflecting officer accounts of what happened during Mr. Muhaymin's torture and eventual execution, remain confidential. Finally, with regards to any information conveyed that the Court determines to have been covered by the protective order (which Plaintiff vehemently contests), Plaintiff reincorporates her position that designating the entirety of depositions containing public information was not done in good faith and therefore did not comply with the Court's protective order.

Contrary to Defendants' accusations, Plaintiff and her counsel have diligently pursued all avenues of recourse available for the death of Mr. Muhaymin. Encompassed in these efforts is the decision by Plaintiff and her counsel to seek a reopening in the criminal investigation (closed summarily and without full access to pertinent information) or a change in the elected leadership of Phoenix and its law enforcement. The City of Phoenix now marshals public resources in an attempt at protecting the officials who currently hold those possessions of elected leadership by asking this Court not only to unconstitutionally muzzle Plaintiff in her calls for change, but also to throw out Plaintiff's civil case. Again, this is highly inappropriate. Plaintiff and her counsel have done nothing more or less than is allowed and expected of both advocates for change and advocates before this Court.

For these reasons, described in full below, Plaintiff respectfully requests that the

Court deny Defendants' Motion and, in the process, put a stop to the City of Phoenix's politically motivated, authoritarian attempt at suppressing oppositional political free speech.

## II.     RELEVANT PROCEDURAL HISTORY

On August 9, 2018, the Court entered a Stipulated Protective Order [doc. 60-1] ("Protective Order"). On February 11, 2020, at a telephonic hearing before the Court, Defendants attempted to designate transcripts of the depositions of the officers involved in, and therefore having firsthand knowledge of, the events leading to the death of Mr. Muhaymin, as confidential in their entirety. *See* doc. 113. Plaintiff objected, citing the incontrovertible fact that a massive majority of the information contained in the transcript was simply the retelling of the tragic event from the perspective of **public** employees, and was therefore certainly not "confidential" (as understood in the word's common usage or by the terms of the Protective Order). *Id.* The Court ordered briefing on the issue (*Id.*) which both parties provided. Docs. 117 & 118.

Thereafter, on May 29, 2020, Defendants supplemented their memorandum regarding the designation of the transcripts as confidential, and furthermore moved for a protective order and an order to "cease/desist and remove public postings." Doc. 179. Pursuant to Court order, Plaintiff filed her "Response" to Defendants' supplemental memorandum regarding the confidential designation, as well as to Defendant's motion for protective order and "cease/desist" order. Doc. 183.

Following oral argument at a telephonic hearing on both the confidentiality designation and motion for protective and "cease/desist" order, on June 5, 2020, the Court

3

entered an Order [doc. 183] ("Order Denying Protective Order") "den[ying] in full" Defendant's request for and "[o]rder that deposition transcripts and videotapes remain confidential." *Id.* at pg. 1.

On October 7, 2020, Defendants filed the instant Motion. Doc. 237. The following day, the Court entered an Order establishing a briefing schedule for the parties' dispute. Doc. 238. Plaintiff now submits this Memorandum in accordance with that schedule.

## III.   **ARGUMENT**

Defendants erroneously describe the following discussions and media statements as disclosure of confidential information and therefore violative of the Court's Protective Order:

> i.   Attorney Haytham Faraj's  ("Mr. Faraj") June 2020 social media posts. *See* Motion, pgs. 3-4.
>
> ii.   Mr. Chami's July and August 2020 release of factual information to the media. *Id.* at pg. 5.
>
> iii.   Comments made by Mr. Chami during September 15, 2020, online political event addressing issues of racial disparity in police treatment, describing the deposition testimony of officers regarding what happened during the murder of Mr. Muhaymin. *Id.* at pgs. 6-7
>
> iv.   "The Final Call" article comparing Mr. Muhaymin's death to the death of George Floyd, released on September 15, 2020. *Id.* at pg. 8

As set forth below, these communications contained absolutely no confidential information whatsoever, consisting entirely of material already within public knowledge or factual retellings of the events of Mr. Muhaymin's death, as told by the officers involved at depositions (over which the Court correctly refused to issue a blanket confidentiality

4

ruling). The information conveyed consists of non-confidential facts important to the current social discussion being held regarding policing in our nation generally, and in the City of Phoenix specifically.

Plaintiff and her counsel were well within their rights to inform the public as to the underlying **facts** of what happened to Mr. Muhaymin (facts which are definitionally not confidential as they involved the actions of public individuals against a private citizen in a public forum recorded on bodycam footage which is available to the public), and to encourage social and political change in leadership in an effort to prevent the occurrence of future similar tragedies. Defendants attempt to quash this political speech in the forum of federal court is both disgusting and unconstitutional. However, in an effort at brevity, Plaintiff will save the bulk of her accusations regarding the violations of her First Amendment rights to free speech and instead focus on the procedural fact that **the information disseminated was not confidential** and therefore the dissemination was not in violation of this Court's Protective Order.

### A. The Information Disclosed Was Not Confidential

Plaintiff addresses each of the four instances raised in Defendants' Motion separately below.

#### i.    Mr. Faraj's June 2020 social media posts.

As Defendants readily acknowledge in their Motion, the parties have already thoroughly addressed Mr. Faraj's social media activity, in multiple briefs and in oral argument before the Court. *See* Motion, pgs. 3-4. The Court disposed of Defendants' meritless position in its Order Denying Protective Order. Plaintiff will not rehash this

argument, as it has already been decided. Further, it is inappropriate for Defendants to bring up the issue, again, after having already briefed its losing arguments before this Court four months ago. As Mr. Faraj's actions were not in violation of the Protective Order in June, they are not in violation now.

        *ii.    Mr. Chami's July and August 2020 release of factual information to the media.*

      The CNN article, released on July 8, 2020, is referenced only briefly in Defendants' Motion at the top of page 5.[1] Notably, Defendants do not disclose when they first learned of the national news story that has been circulated globally or explain why they only raise its existence 3 months after the fact. Defendants spend exactly two sentences describing the article and accusing Plaintiff's attorneys of releasing "bates labeled documents produced in the litigation [and] Plaintiff's expert report," as well as giving an interview regarding what happened to Mr. Muhaymin. Motion, pg. 5. The reason for Defendants' brevity is apparent. Not one "bates labeled document" is identified in Defendants' Motion and the implicit claim that Plaintiff's expert report is confidential is preposterous on its face.

      Defendants' Motion focuses much more attention on body camera footage of Mr. Muhaymin's death described by the news outlet "religionnews.com" Motion, pg. 5. **Information contained in body camera footage of Mr. Muhaymin's death is not confidential by any definition of the term**. That information is **publicly available** and has accordingly been released by the City of Phoenix to the public, both voluntarily[2] and in response to FOIA requests.[3] It is therefore impossible for Plaintiff's attorneys to

---

[1] The full article can be viewed at https://www.cnn.com/2020/07/09/us/phoenix-muhammad-muhaymin-invs/index.html

[2] https://abcnews.go.com/US/phoenix-police-release-body-camera-videos-mans-death/story?id=45088346

[3] In fact, as is commonplace in wrongful death lawsuits against public entities, Plaintiff herself obtained copies of the body cam footage via a FOIA request when considering legal action prior to initiating the instant suit.

"release" body camera footage – such footage is already in the public sphere.

> *iii.* *Comments made by Mr. Chami during September 15, 2020, online political event addressing issues of racial disparity in police treatment, describing the deposition testimony of officers regarding what happened during the murder of Mr. Muhaymin.*

On September 15, 2020, the National Council of Jewish Women ("NCJW") conducted a Zoom event entitled "Justice in Policing: Standing up for Black Lives." The event included a panel on political change, specifically in regards to law enforcement. Mr. Chami was invited to speak during a segment focusing on the "Deaths of Dion Johnson and Muhammad Muhaymin, Jr." *See* Exhibits B-D to Defendants' Motion. During this event, Mr. Chami described the series of events leading up to and resulting in the death of Mr. Muhaymin. Mr. Chami utilized both public knowledge and information gleaned from deposition testimony given by the officers involved which only describes what can readily been observed on the bodycam footage which is publicly available. After describing the event, Mr. Chami stated the (undisputable) fact that the officers' testimony differed greatly from the information initially released by the City of Phoenix.

Nothing said by Mr. Chami violated the Court's Protective Order. First, as indicated above, this Court denied Defendants' attempt to designate the entirety of the deposition transcripts as confidential. It was Defendants burden, therefore, to go through and specify portions of the transcript to be encompassed by the Protective Order, and to provide a compelling reason for such designations. *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003), citing *Hagestad v. Tragesser*, 49 F.3d 1430, 1434 (9th Cir. 1995). Defendants failed to do so. Plaintiff and her counsel reasonably relied on

Defendants' failure to act and have considered the transcripts as non-confidential.

Second, and perhaps more importantly, **no information conveyed by Mr. Chami** could possibly be confidential information under the Protective Order. Instead of rehashing this issue, Plaintiff reincorporates her positions and legal arguments as set forth at doc. 118. In summary, a factual recounting of events from the perspective of a state employee, subject to public scrutiny, does not fall into any of the categories set forth in the Court's Protective Order. Such information is, by definition, public information and Defendants are not entitled to a blanket designation of confidentiality without showing a compelling reason therefor (as this Court recognized in its Order Denying Protective Order).

> iv.     *"The Final Call" article comparing Mr. Muhaymin's death to the death of George Floyd, released on September 15, 2020.*

Defendants make much of Ms. Muhaymin's statements, made upon personal (and fully justified) belief and reported by "The Final Call," regarding Defendants' targeting of Mr. Muhaymin because of his race, religion, and disability. Motion, pg. 8. Defendants further point out that Mr. Chami "compared this case directly to the George Floyd case" utilizing "expert reports and deposition testimony."

First, as should be obvious to any American, Ms. Muhaymin is fully entitled to provide her opinion to a news outlet concerning the murder of her brother. Defendants implicit contention to the contrary approaches utter irrationality. The same goes for comparisons made by Mr. Chami to the George Floyd case. Neither Ms. Muhaymin nor her counsel were deprived of their First Amendment rights to announce their opinions when they filed suit against Defendants.

Second, as addressed above, Plaintiff's expert report is not confidential. It has never been designated as confidential, and, as Plaintiff is the only party who may apply such a designation **to her own expert report**, it will never be designated as confidential.

1    Finally, at the risk of beating a dead horse, the deposition testimony by public
2    officers regarding the factual events leading to Mr. Muhaymin's death are not confidential.
3    The Court denied Defendant's designation of the same as such, and, furthermore,
4    information regarding the actions of state employees directed at private individuals in a
5    public forum is per se public information.

6    **B. Ms. Muhaymin And Her Counsel Are Not Attempting To Hold A Trial In**
7    **The Court Of Public Opinion**

8    Ms. Muhaymin and her counsel have exercised extreme caution in their interactions
9    with the media, and Defendants accusations of an attempt to "poison the jury pool" are not
10   well taken. Plaintiff's attorneys have fulfilled their duties as officers of the Court while
11   simultaneously representing Ms. Muhaymin in her capacity both as Plaintiff here and as a
12   social advocate for political change. Neither Plaintiff nor her attorneys have released
13   deposition transcripts, or even quotes from the same (which are not confidential,
14   regardless). All statements made have been in regards to the factual events leading to Mr.
15   Muhaymin's death and aimed at political change and the reopening of the criminal
16   investigation. **None** of the statements have implicated the progression of the instant civil
17   suit, and **all** of the statements are protected by the First Amendment right to free speech.

18   It should also be noted that Plaintiff's counsel has **never** affirmatively reached out
19   to any media outlet during the litigation of this case. Declaration of David A. Chami
20   ("Chami Decl."), ¶3. The few instances of media involvement, described in Defendants'
21   Motion, have come as a result of media outlets reaching out to Plaintiff and her counsel
22   following the movement of national awareness regarding police practices arising after the
23   death of George Floyd. Neither Plaintiff nor her counsel were involved in the murder of

George Floyd, and Defendants' accusation that they are capitalizing on that tragedy by asking media outlets to run stories on Mr. Muhaymin's similar death is both false and insulting.

Further, Plaintiff's actions, and the actions of her attorneys, are reflective of Plaintiff's broader purpose: social and political change. It is worth reiterating that a goal of paramount and persistent importance to Plaintiff, entirely outside of the instant civil suit, is the reopening of the internal and criminal investigations of the officers who murdered her brother. Regarding the NCJW meeting, complained of in Defendants' Motion, a **central** emphasis of the event was the political complaint that "the initial investigation was performed by the same entity…that ultimately has to judge itself. And it has a vested interest in coming to an outcome that protects the police department. And if you're going to investigate the conduct of officers, it has to be done by an independent body…" Exhibit D to Defendants' Motion, at 15:10-16. Plaintiff and her attorneys are fully entitled to engage in political action outside of the instant suit, including the expressing of opinions regarding the City of Phoenix's perfunctory initial investigation into Mr. Muhaymin's death, and Defendants' are not entitled to quash Plaintiff's attempts to do so, especially where no confidential information has been released.

In sum, Plaintiff and her attorneys have acted ethically and in full exercise of their rights under the First Amendment. The events in Minneapolis, and the subsequent nationwide scrutiny of law enforcement, led to a renewed interest in Mr. Muhaymin's death, which had been swept under the rug by early, inaccurate accounts of the incident to

media outlets.[4] Plaintiff and her counsel are not precluded from joining their voices to the political movement that is currently requesting change just by virtue of their participation in a civil lawsuit. They are not attempting to hold a trial in the "court of public opinion." They are exercising their right to voice political concerns and have exercised extreme restraint in their communications with media outlets in an effort to avoid violating this Court's Protective Order.

As the Supreme Court acknowledged in *Gentile v. State Bar of Nevada*, [a]n attorney's duties do not begin inside the courtroom door."  501 U.S. 1030, 1043. The Gentile case involved extrajudicial statements by a criminal defense attorney. The Court recognized that "a defense attorney may pursue lawful strategies to obtain dismissal of an indictment or reduction of charges, including an attempt to *demonstrate in the court of public opinion* that the client does not deserve to be tried." *Id*. (Emphasis added). This is not meant to suggest that the Court abrogated the Professional Rules' prohibition on attempting to influence the judicial proceeding with extrajudicial statement. But the Court recognized that advocacy is not limited to the filing of legal documents and oral advocacy in court. Advocacy includes "lawful strategies" in the court of public opinion to influence political actions.

In this case, advocacy on behalf of our clients includes political advocacy directed at a political entity, the City of Phoenix, and its elected officials that is intended to effectuate the following objectives: 1) policy changes in policing; 2) administrative

---

[4] Plaintiff incorporates her position and arguments set forth at doc.183 at pgs. 9-13 regarding the City of Phoenix's January 2017 release of body camera footage and narrative.

actions directed at the officers involved; and 3) criminal investigation of some of the officers involved. These three objectives have no connection to the civil case. Policy changes and the decision of whether to hold the responsible police officers administratively or criminally accountable are purely political decisions incapable of influence by this Court. Political decisions should, and usually do, bend to the will of the electorate. Statements to the media by Ms. Muhaymin and her attorneys regarding public actions by public servants whose salaries are paid by taxpayers are intended to influence the decisions of elected officials or, in the alternative, impact their reelection. The City and its elected officials know this. They and the lawyers representing them grasp that such advocacy has very little, if any, material impact on the civil case but is generating political pressure during an election cycle.[5] That is precisely the type of political advocacy the Supreme Court recognized with approval in *Gentile supra*.

To claim that the discussion in the media of the public information about this case is poisoning the potential jury pool suggests that the defendants have evidence to support their claims. They do not because they have presented no evidence to back the claim, not even a case cite that suggests media attention always results in an unfair trial or a poisoned jury pool.

---

[5] This is also why these motions by the City keep getting filed under seal. Members of the general public do not usually access court records but the media does and has in this case. By filing these motions under seal, the elected officials of this City avoid media scrutiny of their political decisions to spend public money on motions intended to silence criticism of their political actions or inactions.

While George Floyd has generally become a well-known name, the same cannot be said for Muhammed Muhaymin. George Floyd's death has caused the country as a whole to have a conversation about policing. That does not mean an unfair trial for the defendants in this case. Ms. Muhaymin and her lawyers advocacy seeks to insure that Muhammed Muhaymin's violent and unnecessary death is part of that conversation and receives the same level of attention by Arizona's law enforcement officials as George Floyd's did in Minnesota.

Ms. Muhaymin did not give up her right to have her or her lawyers undertake such political advocacy when she filed her civil lawsuit. Her lawyers have carefully engaged in the process by providing factual information about public events by public employees-the defendants- while avoiding any discussion of the civil case, except that a civil suit has been filed.

### C. Defendants' Accusations That Ms. Muhaymin Is Motivated Solely By Financial Incentive Is Patently False, Unsupportable, Insensitive, And Insulting

Defendants' accusation that Plaintiff's contact with the media is a result of her greed in seeking a monetary settlement is untrue, incredibly offensive, and quickly debunked by a cursory glance at Plaintiff's settlement offer, included as Exhibit F to Defendants' own Motion. Exhibit F represents Plaintiff's August 9, 2019 letter offering settlement to Defendants. Included in the letter is a list of terms upon which Plaintiff would have been willing to settle this case over a year ago. Out of the seven material terms listed, the first is a requirement that the mayor and city council meet with Ms. Muhaymin to discuss the death and develop a plan for dealing with the mentally ill in policing. Exhibit F to

Defendants' Motion, pg. 1. The subsequent five terms reference proposed changes to the City of Phoenix's Police Department's training, policies, and procedures, to be established in an effort to make sure that what happened to Mr. Muhaymin does not happen again. *Id.* It is not until **the seventh term** that monetary compensation is even mentioned. *Id.* at pg. 2.

As has been reiterated in brief after brief, and settlement negotiation after settlement negotiation, Ms. Muhaymin is much more interested in actual change than she is in monetary settlement. The instant suit represents one of many avenues through which Plaintiff is attempting to effectuate that change. Defendants are aware of this fact, and still insist on impugning Ms. Muhaymin's motives, making a mockery of her pain by accusing her of taking actions solely in an effort to profit from the death of her brother. Defendants' inappropriate and continuous attacks along this line need to stop.

### D.  Plaintiff Requests That The Court Deny Defendants' Request For Sanctions

#### i.  *Defendants are not entitled to sanctions*

Neither Plaintiff nor her attorneys have committed a single sanctionable action in the prosecution of this case. They have not "engage[d] in abusive litigation practices" (*Roadway v. Express, Inc. v. Piper*, 447 U.S. 752, 765, 100 S. Ct. 2455 (1980)), nor have they "engaged in conduct utterly inconsistent with the orderly administration of justice" (*Wyle v. R.J. Reynolds Industries, Inc.*, 709 F. 2d 585, 589 (9th Cir. 1983)). The act of adding their voices to the current political movement by responding to news outlets and speaking about the similarities between the facts of this case and those of the George Floyd incident certainly does not rise to the level of atrocity contemplated by *Roadway* and *Wyle*.

14

Further, as described above, neither Plaintiff nor her attorneys have violated the Court's Confidentiality Order. The information discussed and conveyed upon request by the media and political groups was **not** confidential, consisting of publicly available body camera footage and non-covered deposition testimony from state employees regarding action taken against a private individual in public. The sanctions described at Fed.R.Civ.P. 37(b)(2)(C), to be administered against a "disobedient party," are therefore inapplicable.

Finally, Defendants have not been prejudiced by the actions of Plaintiff or her attorneys. Defendants make hyperbolic arguments regarding the effect of media statements and assert that the same impairs Defendants' ability to have a fair trial. This is ridiculous. First, simple prominence does not produce prejudice per se. *Skilling v. United States*, 561 U.S. 358, 130 S. Ct. 2896, 2902, 177 L. Ed. 2d 619 (2010). Defendants must make a stronger showing than conclusory speculation about what potential jurors might have read in the news.

Second, to the extent that the current political climate (referenced multiple times in Defendants' Motion) affects the jury pool, the fault does not lie with Plaintiff. Again, neither she nor her attorneys had anything to do with the murder of George Floyd and asking this Court to dismiss Plaintiff's suit because of outside political pressure is incredibly inappropriate.

Third, even if Plaintiff and her attorneys had reached out to the media (they did not), they would be well within their rights to do so as discussed above. Ironically, Defendants utilized the City of Phoenix's position as a public entity, and the easy access to media coverage afforded by that position, to preemptively release a narrative, replete with patent

15

inaccuracies, in an attempt to spin popular opinion before Ms. Muhaymin even had an opportunity to file suit. Defendants now (falsely) accuse Ms. Muhaymin of the exact same tactic.

### ii. Defendants' proposed sanctions are inappropriate

As discussed, Plaintiff continues to maintain that neither she nor her attorneys have acted in any way inconsistent with this Court's instruction or their respective ethical duties. Therefore, sanctions of any kind would be unfitting. However, Plaintiff wishes to point out that, even if the Court were to retroactively find that the deposition transcripts were confidential (they were not), the sanctions requested in Defendants' Motion are nothing short of draconian.

First, as stated above, a shift in the political winds resulting in a revived social awareness of Mr. Muhaymin's death is not grounds for dismissing Plaintiff's lawsuit. Any perceived harm to Defendants chances at trial have been caused by social forces outside of Plaintiff's control (not to mention the simple facts of this case). Second (and similarly), requesting the removal of Plaintiff's current counsel would achieve absolutely nothing and smacks of unseemly pettiness. Removal would not change the facts of the case, would not bring Mr. Muhaymin back to life, and would not dispel the growing movement for political change. Further, Plaintiff's attorneys have not violated the Arizona Rules of Professional Conduct, the Federal Rules of Civil Procedure, or any order entered by the Court.

Third, another protective order at this juncture would be moot. There is already a Protective Order in place in this case, and under that Protective Order Defendants are entitled to designate the deposition transcripts as confidential, if they provide a compelling

reason. *Foltz*, 331 F.3d at 1135 (citing *Hagestad*, 49 F.3d at 1434. That they have failed to do so (because they cannot) is not a reason for another protective order.

Finally, Defendants' request for a "gag order" is unconstitutional on its face and is almost certainly a violation of federal election law. The City of Phoenix, as a public entity, is expressly requesting an order from this Court quashing Plaintiff's political speech. As described above, Plaintiff is entitled to involve herself in the current movement for political change in Phoenix, and to seek alterations to the policies established by the public police department. Defendants are not entitled to silence Plaintiff or her attorneys in their political efforts simply because she is suing the City of Phoenix for the death of her brother, caused by the very policies she seeks to see changed.

Furthermore, part of the change being sought necessarily implicates elections being held in the next few weeks. These elections include that of the Maricopa County Attorney, the mayor of the City of Phoenix, and three City of Phoenix council members. Federal election law states that "[a] State or local officer or employee may not use his official authority or influence for the purpose of interfering with or affecting the result of an election for office." 5 U.S.C. § 1502. Utilizing taxpayer dollars to request that a judicial muzzle be ordered on political opponents in the weeks leading up to an election is a direct violation if this statute and should not be legitimized by this Court. Interestingly, despite the allegedly violative or prejudicial statements being made several months ago, the city's motion was filed three days after that Ms. Stillwell announced her meeting with the Phoenix City Council politicians, and possibly the mayor, who are up for reelection on November 3.

## IV.    CONCLUSION

Defendants' Motion represents an unconstitutional attempt to silence Plaintiff in her exercise of free political speech, requesting that the Court either dismiss Plaintiff's claims or enter a "gag order" so that she is unable to make political statements on the eve of an election. Defendants request this draconian remedy based on nothing more than statements relating to non-confidential deposition testimony of public fact and body camera footage that has been in the public sphere since 2017. This Court should not legitimize Defendants' obvious attempt at bullying. For these reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion.

Respectfully submitted this 12th day of October 2020,

PRICE LAW GROUP, APC

BY: */s/ David A. Chami*
David A. Chami, AZ #027585
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on October 12, 2020, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which will send notice of such filing to all attorneys of record in this matter. Since none of the attorneys of record are non-ECF participants, hard copies of the foregoing have not been provided via personal delivery or by postal mail.

PRICE LAW GROUP, APC

*/s/ Florence Lirato*