Daniel J. O'Connor, Jr., Bar No. 010081
Karen J. Stillwell, Bar No. 022711
Travis B. Hill, Bar No. 021133
**O'CONNOR & DYET, P.C.**
7955 South Priest Drive
Tempe, Arizona 85284
daniel.oconnor@occlaw.com
karen.stillwell@occlaw.com
travis.hill@occlaw.com
(602) 241-7000
*Attorneys for Phoenix Defendants*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Mussalina Muhaymin as Personal Representative of the Estate of Muhammad Abdul Muhaymin Jr.,<br><br>Plaintiff,<br><br>vs.<br><br>City of Phoenix, an Arizona Municipal Corporation; Antonio Tarango; Officer Oswald Grenier; Officer Kevin McGowan; Officer Jason Hobe; Officer Ronaldo Canilao; Officer David Head; Officer Susan Heimbinger; Officer James Clark; Officer Dennis Lerous; Officer Ryan Nielson; Officer Steven Wong; and Doe Supervisors 1-5,<br><br>Defendants. | Case No.: 17-cv-04565-PHX-SMB<br><br>**DEFENDANTS' NOTICE OF VIOLATIONS OF ARIZ. R. PROF. COND. E.R. 4.2 & 3.6, AND LOCAL RULE OF CIVIL PROCEDURE 83.8**<br><br>**AND**<br><br>**MOTION FOR SANCTIONS**<br><br>**(TO BE FILED UNDER SEAL)**<br><br>Assigned to the<br>Honorable Susan M. Brnovich |

Pursuant to Rule 26(c)(1)(A), Fed. R. Civ. P., and Rule 37(b)(2)(A), Defendants, by and through undersigned counsel, hereby provide Notice to the Court of Plaintiff's Counsel's blatant and intentional violations of E.R. 4.2 and 3.6, Ariz. R. Prof. Cond., as well as continued violations of LR Civ. 83.8.

This Court admonished and warned Plaintiff's Counsel[1] several times regarding their continued violations of discovery rules,[2] rules related to filing motions, rules regarding extrajudicial statements, as well as Plaintiff's Counsel's continued violations of the Protective Order. Counsel's continued disregard for this Court's Rules, Arizona Ethical Rules, and this Court's Orders is willful, intentional, and now, abhorrently unethical. Sanctions against Plaintiff and her counsel are warranted and appropriate pursuant to 28 U.S.C. §636 and/or Rule 37(b)(2)(A), Fed. R. Civ. P.

## **MEMORANDUM OF POINTS AND AUTHORITIES**

### I. **BACKGROUND**

On May 10, 2019, pursuant to Rule 26(c), Fed. R. Civ. P., and upon stipulation of the parties, this Court entered an Order that provides for the protection of all confidential and "other non-public documents, information, and/or materials made available during discovery and disclosures in this matter." *See* Dkt. No. 072. The Order defined "Confidential Information" as "any documents, evidence, testimony, materials, or other information, whether written or oral, exchanged, revealed, or presented in these proceedings, designated in good faith as 'Confidential' by any party," including but limited to, "employment records" and "information and documents. . . not generally available to the public as well as any copies or summaries of such information or any materials that reveal the contents of such information." *Id.* ¶4. The Order prohibits use of confidential information for any other purpose except litigation within the case. *Id.* ¶15.

---

[1] Plaintiff is represented by David Chami and Haytham Faraj. Mr. Chami is an attorney admitted to practice in the State of Arizona. Mr. Faraj is admitted to practice in Illinois, Michigan, California, and Washington, D.C. and was admitted to practice in this case pro hac vice. *See* Dkt. No. 10 and August 15, 2019 Text Entry.

[2] As this Court may recall, Plaintiff's counsel has violated the Rules several times, including but not limited to: (1) contacting Defendants' experts *directly* without notice or permission; (2) noticing depositions in violation of the Court's Rules; (3) failing to properly file pleadings under seal; (4) filing *full* transcripts in violation of Court Rules; and (5) filing motions exceeding page limits without stipulation or Court permission.

**a. Previous Court Orders Regarding Extrajudicial Statements**

In June 2020, Plaintiff's counsel, Mr. Faraj, created social media posts regarding the litigation, and included body camera videos from the incident which he altered to include his interpretation of what was being said in those videos. *See* Dkt. Nos. 79, 183. The Court denied Defendants' Motion for Protective Order; however, the Court cautioned counsel on future statements, indicating, "because the Court finds no violations of any Court order or rule, it declines to issue an order that would act as a prior restraint. However, this does not mean that the Court would not do so if any counsel, whether for Plaintiffs or for Defendants violated Court rules in the future. ***The Court expects all counsel to exercise caution and restraint in all future statements, if any***." Dkt. No. 188 (emphasis added).

On October 7, 2020, Defendants filed an <u>Expedited</u> Motion for Protective Order and Motion for Sanctions for Plaintiff's Counsel's violations of the Court's Protective Order. *See* Dkt. No. 273. The Court found that Plaintiff's Counsel violated the Court's Order by publicly discussing confidential deposition testimony; however, the Court showed leniency and did not issue sanctions for violations of the Order based upon an ambiguity within the Court's June Order. *See* Dkt. No. 271, p. 6. The Court again issued a stern warning regarding future violations of the Protective Order, and admonished, "Although the Court declines to issue a gag order, the Court will not hesitate to do so if counsel for either party violates this order or the protective order in the future or ***if counsel's statements threaten to endanger the fairness of the proceeding. As previously stated, the Court expects all counsel to exercise caution and restraint in all future statements if any are made.***" *Id.* pp. 6-7 (emphasis added).

**b. Plaintiff's Previous Conduct Related to Professional Rules of Conduct.**

In addition to their intentional violations of the Court's Orders and discovery rules, Plaintiff's counsel has demonstrated a tendency to thwart the fundamental prohibition of communicating with parties represented by adverse counsel. Plaintiff's counsel ***knows*** that

undersigned counsel represents the City of Phoenix. *See* **Exhibit A**. In addition, during the deposition of Defendant Antonio Tarango, Mr. Faraj attempted to call Mr. Tarango's supervisor, an employee of the City of Phoenix. Mr. Faraj was immediately stopped by undersigned counsel and reminded that he cannot communicate directly with employees of the City of Phoenix about this matter. *See* **Exhibit B**, pp. 41-47, ll. 11-6.[3] After an offensive conversation spurred by Mr. Faraj, he ultimately refrained from further contact. *Id.*

Less than two weeks later, Plaintiff's counsel sent a settlement demand, requesting it be forwarded to ***undersigned counsel's clients, the City of Phoenix City Council and the City of Phoenix Mayor***. *See* portion of letter attached as **Exhibit C**. On the same date, undersigned sent an email to both Plaintiff's counsel stating, "[A]s we discussed during the depositions last week, I will remind you and ask that you confirm that you will not contact or communicate with any City of Phoenix former or current employees regarding this matter or regarding any issues related to this matter. If you do so, it is a violation of Ethical Rule 4.2. *See also Lang v. Superior Court*, 170 Ariz. 602." *See* **Exhibit D**. Mr. Chami, responded, "Why do you keep asking us to repeat our agreement not to contact City employees? Our prior misunderstanding has long since been acknowledged." *Id.*

    **c.    Recent Contact With Media and Violation of Professional Rules of Conduct.**

Despite the Court's warnings and despite Plaintiff's counsel's acknowledgement of undersigned counsel's scope of representation, on April 26, 2021,[4] Mr. Faraj directly emailed a letter to City of Phoenix Mayor and each of the Council Members, demanding

---

[3] Despite assertions by Plaintiff's counsel during the deposition, the City of Phoenix has been a named Defendant since the day this lawsuit was filed and has not been dismissed. Plaintiff's counsel, of all people, should know who they sued in this action.

[4] On April 2, 2021, undersigned spoke with Mr. Faraj regarding his client's demands. Mr. Faraj indicated his client was only interested in a monetary payment. Just like before, when Defendants did not meet Plaintiff's demand, Plaintiff's counsel engaged the media in an attempt to pressure Defendants and prejudice the jury pool.

the termination and criminal prosecution of the individual officers in this case. *See* letter attached as **Exhibit E**. Plaintiff's counsel not only failed to copy undersigned counsel, he did not give notice nor seek permission to contact anyone at the City directly.

This communication goes far beyond any authorized communication or policy-making as contemplated by the Rules. Instead, it is riddled with salacious accusations, false statements, and comparisons to the incident involving George Floyd, with specific reference to the recent guilty verdict against Derek Chauvin. *Id*. The letter also invades the attorney-client relationship between undersigned counsel and the City of Phoenix and its officials. In fact, Plaintiff criticizes the sealing of records before this Court, the amounts paid by the City of Phoenix for undersigned's legal services and experts; discusses what he believes Defendants' experts will testify to at trial; and offensively claims that Defendants' experts are financially motivated to justify the officers' conduct. *Id*.

As if this were not enough, both Mr. Faraj and Mr. Chami doubled down, appearing on ABC News 15 that same day, reiterating many of the same salacious accusations and false statements. Plaintiff's counsel even provided a copy of the letter to the media as shown on the news report, and in addition to the extrajudicial comments made by Mr. Faraj, Mr. Chami disclosed that one of the officers had received a promotion, which could only be gleaned from the employment records (which were marked as confidential in this case). https://www.abc15.com/news/local-news/investigations/family-implores-phoenix-council-to-act-in-in-custody-death-of-muhammad-muhaymin. Plaintiff's counsel went so far as to claim this case does not have the benefit of bystander video and if it did, Muhaymin would have been "George Floyd – just three years earlier."[5]

---

[5] As an example of Plaintiff's misleading and false statements to the media, this ignores the fact that there are thirteen (13) body camera videos in this case, all of which were provided years ago to the Maricopa County Attorney for review.

According to the news reporter, Mr. Faraj and Mr. Chami gave the media interview *before* they sent the letter to the Mayor and City Council Members. *Id*. Plaintiff and Plaintiff's counsel did not simply violate this Court's Orders, Ariz. R. Prof. Cond. E.R. 4.2 & 3.6, and Local Rule of Civil Procedure 83.8, they repudiated them.

## II.   ARGUMENT

In the Court's June 5, 2020 Order, the Court noted that the timing of Mr. Faraj's social media posts were concerning because they were made right after the incident involving George Floyd. Nonetheless, the Court did not believe the extrajudicial statements violated the Court's Protective Order, Ariz. R. Prof. Cond. E.R. 3.6, A.R.S. Sup. Ct. Rule 42, and Local Rule of Civil Procedure 83.8, because no trial date had been set. The Court noted the trial was likely a year away and the communications were not easily accessible to a major news outlet. *See* Dkt. No. 188, pp. 4-5.

Now, within days of the guilty verdict in the George Floyd matter, Plaintiff once again returned to the media. However, this time, a jury trial is scheduled to begin on **September 14, 2021 – just four months away.** Now, more than ever, Plaintiff's counsel's conduct should not go unnoticed. Just this afternoon, it was discovered that Plaintiff and Plaintiff's counsel gave yet another interview to media, this time addressing the upcoming Hearing on Defendants' Motion for Summary Judgment. [Hearing Scheduled In Wrongful Death Case Against Phoenix Police | KJZZ](#); [TUESDAY: Court Hearing on Lawsuit Over Phoenix Police Killing of Muhammad Muhaymin Jr. - Muslim Advocates](#), collectively attached hereto as **Exhibit F**.

Their continued disregard for professionalism, this Court's Orders and Rules, and the Professional Rules of Conduct is inexcusable. Plaintiff's counsel's false statements and discussions about this case need to stop. Setting aside the impropriety of Plaintiff's counsel's behavior, each time they engage in such conduct and seek media attention, it "threatens the fairness of this proceeding." In their most recent interviews with the media,

Mr. Faraj and Mr. Chami again falsely claim that no criminal investigation was conducted and the officers' conduct was not reviewed. *See* ABC 15 media coverage, *supra.* They are both well aware (and have been reminded several times), that Phoenix Police Department conducted internal and criminal investigations regarding this incident and the incident was reviewed by Maricopa County Attorney's Office.[6] Each of the Defendant Officers was found to have acted within policy. Maricopa County Attorney's Office, upon receipt of ***all*** reports and body camera videos, determined there was no criminal conduct by the Defendant Officers. There is simply no truth to Plaintiff's counsel's statements. If Plaintiff's counsel's actions before April 26, 2021 raised doubt whether Defendants would receive a fair trial, Mr. Faraj and Mr. Chami have now made certain they will not.

### III. PLAINTIFF'S COUNSEL VIOLATED PROFESSIONAL RULES OF CONDUCT

Ariz. R. Prof. Cond. E.R. 4.2 provides, "In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so." In the context of a client organization, Ariz. R. Prof. Cond. E.R. 4.2, ". . . the rule prohibits communication with three groups of individuals: (1) those having a managerial responsibility on behalf of the organization; (2) any person whose act or omission in connection with the matter may be imputed to the organization; and (3) any person whose statement may constitute an admission on the part of the organization. *Lang v. Superior Ct., In & For Cty. of Maricopa*, 170 Ariz. 602, 604–05, 826 P.2d 1228, 1230–31 (App. 1992).

---

[6] The incident was investigated by Phoenix Police Department's Professional Standards Bureau and reviewed by Use of Force Board. The Phoenix Police Department's Special Investigation Unit forwarded its investigation to Maricopa County Attorney for review. Attached as **Exhibit G** are the Use of Force Review Board Findings for all Officers involved, as well as Maricopa County Attorneys' letter advising of their opinion that the officers did not commit any act that warrants criminal prosecution. *See* **Exhibit G**.

ABA Mod. R. Prof. Cond. 4.2 provides similar restrictions, "In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order."[7] ABA Mod. R. Prof. Cond. 4.2 applies to government employees and officials, "Rule 4.2 generally protects represented government entities from unconsented contacts by opposing counsel, with an important exception based on the constitutional right to petition and the derivative public policy of ensuring a citizen's right of access to government decision makers. Rule 4.2 permits a lawyer representing a private party in a controversy with the government to communicate about the matter with government officials having authority to take or to recommend action in the matter, provided that the sole purpose of the communication is to address a policy issue, including settling the controversy. In such a situation the lawyer must give government counsel reasonable advance notice of his intent to communicate with such officials in order to afford them an opportunity to seek advice of counsel before deciding whether to entertain the communication." ABA Formal Opinion 97-408 (1997).

As addressed above, the letter sent by Mr. Faraj to the Mayor and Council Members goes well beyond the scope of addressing an issue of policy. Even assuming the vitriolic, blatantly false, and prejudicial letter was intended to somehow address policy, notice was required, and none was provided. This conduct squarely constitutes a violation of Ariz. R. Prof. Cond. E.R. 4.2, and serves as an additional basis for Defendants' request for a Protective/Restraining Order and sanctions.

---

[7] In the event Mr. Faraj claims ignorance of the Ethical Rules in Arizona, Mr. Faraj is also licensed by the Michigan and Illinois State Bars. Both states contain nearly identical language. Accordingly, Mr. Faraj's conduct also violates the Illinois and Michigan Rules.

## IV. PLAINTIFF'S COUNSEL VIOLATED THE COURT'S PROTECTIVE ORDER AGAIN.

Even ignoring the clear violation of Ariz. R. Prof. Cond. E.R. 4.2, Plaintiff's counsel also violated the Court's Protective Order by discussing confidential information relating to the employment files of the Defendant Officers, as well as details related to this litigation, including expert opinions and testimony. *See* **Exhibit E**. As previously briefed, the Court has authority under 28 U.S.C. § 636 to exercise contempt authority for violations of the Protective Order, which may be issued with or without a finding of civil contempt. *Harmon v. City of Santa Clara*, 323 F.R.D. 617, 622 (N.D. Cal 2108); *see also In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 695, 696 (9th Cir. 1993) ("civil contempt occurs when a party disobeys a specific and definite court order by failing to take all reasonable steps within the party's power to comply"). "There is no question that procedural rules are important and that infractions of those rules should not be tolerated by the courts. Otherwise, the rules themselves will not be taken seriously, and eventually they may exist in name only, honored in the breach." *Kovilic Constr. Co., Inc. v. Missbrenner*, 106 F. 3d 768 (7th Cir. 1997).

Violations of Court orders can also be addressed under Rule 37(b)(2), Federal Rules of Civil Procedure. *Management Registry Inc. v. A.W. Companies, Inc.*, 2019 WL 5388488 *13 (D. Minn. 2020). Rule 37 exists to ensure compliance with orders and to provide "adequate sanctions" to enforce compliance with orders. *Id.*, citing *Grimes v. City of San Francisco*, 951 F.2d 236, 240-41 (9th Cir. 1991). Pursuant to Fed. R. Civ. P. 37(b)(2)(A), the court may sanction the party through any one of the following means:

i. Directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

ii. Prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

iii. Striking pleadings in whole or in part;

iv. Staying further proceedings until the order is obeyed;

  v. Dismissing the action or proceeding in whole or in part;

  vi. Rendering a default judgment against the disobedient party; or

  vii. Treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

"Instead of or in addition to" these sanctions, "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C). Federal judges have inherent power to sanction parties and attorneys appearing before them for actions taken "in bad faith, vexatiously, wantonly, or for oppressive reasons." *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1183–84 (2017); *Chambers v. NASCO Inc.*, 501 U.S. 32, 45–46 (1991).

Under these circumstances, there can exist little doubt that the Court has the inherent authority and power to impose severe sanctions. *See Roadway Express, Inc. v. Piper*, 447 U.S. 752, 765, 100 S. Ct. 2455 (1980) (courts have inherent power to levy sanctions on parties who engage in abusive litigation practices); *Wyle v. R.J. Reynolds Indus., Inc.*, 709 F. 2d 585, 589 (9th Cir. 1983) (courts have inherent power, including dismissal of an action, when a party has engaged in conduct utterly inconsistent with the orderly administration of justice). There can also be no doubt that Defendants have suffered prejudice as a result of Plaintiff's actions. *Henry v. Gill Industries*, 983 F. 2d 943, 947 (9th Cir. 1993) ("[a] defendant suffers prejudice if plaintiff's actions impair the defendant's ability to go to trial, or threaten to interfere with the rightful decision of the case.").

"Rule 37(b) sanctions may serve either remedial and compensatory purposes or punitive and deterrent purposes," but ultimately, "the imposition and selection of particular sanctions are matters left to the sound discretion of the trial court." *Harmon*, 323 F.R.D. at 626, *citing Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F. 2d 770, 784 (9th Cir. 1993). Civil contempt sanctions under 28 U.S.C. § 636(e) and/or sanctions under 28 U.S.C.

§ 1927 may be imposed regardless of whether or not the contempt was willful. *Id.*, (citing *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F. 3d at 695) ("civil contempt … consists of a party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply. The contempt need not be willful, and there is no good faith exception of the requirement of obedience to a court order.").

In this case, Plaintiff's counsel has knowingly, intentionally, and repeatedly violated the Protective Order by releasing confidential information and materials to the media and public. This time they have gone so far as to attempt to poison the potential jury pool with false statements and attempts to discredit Defendants' experts just months before the trial begins. These egregious violations of the Protective Order have resulted in extreme prejudice to Defendants, impaired Defendants' ability to receive a fair trial, and threaten to interfere with a fair decision of this case. The Court has the inherent authority and power to impose the most severe sanctions against Plaintiff and Plaintiff's counsel, including dismissal of the lawsuit. While the most severe sanction has been avoided by the Court for past infractions by Plaintiff and Plaintiff's counsel, Defendants respectfully request that the Court exercise its authority, and meet their improper conduct with the appropriate level of sanction, which is dismissal.

### V. PLAINTIFF'S COUNSEL VIOLATED ARIZ. R. PROF. COND. E.R. 3.6 AND LOCAL RULE OF CIVIL PROCEDURE 83.8 AGAIN.

Ariz. R. Prof. Conduct E.R. 3.6 enumerates, "A lawyer who is participating or has participated in the investigation or litigation of a matter shall not make an extrajudicial statement that the lawyer knows or reasonably should know will be disseminated by means of public communication and will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter." The prohibition on extrajudicial statements is designed to ensure a fair trial and impartial jury. *See* Ariz. R. Prof. Conduct E.R. 3.6 cmt 1 ("Preserving the right to a fair trial necessarily entails some curtailment of the information that may be disseminated about a party prior to trial, particularly where trial

by jury is involved."). Dissemination of extrajudicial statements *directly* to the jury pool is especially troubling. *See also* Restatement (Third) of the Law Governing Lawyers § 109 (2000) ("In representing a client in a matter before a tribunal, a lawyer may not make a statement outside the proceeding that a reasonable person would expect to be disseminated by means of public communication when the lawyer knows or reasonably should know that the statement will have a substantial likelihood of materially prejudicing a juror or influencing or intimidating a prospective witness in the proceeding."). District courts have not only the inherent authority, but also the duty and responsibility to supervise the conduct of attorneys who appear before them. *See Radcliffe v. Hernandez*, 818 F.3d 537, 541 (9th Cir. 2016) ("[T]he district court has primary responsibility for controlling the conduct of attorneys practicing before it . . ."); *see also Erickson v. Newmar Corp.*, 87 F.3d 298, 301 (9th Cir. 1996); *Trust Corp. v. Piper Aircraft Corp.*, 701 F.2d 85, 87 (9th Cir. 1983). The power of federal judges to impose sanctions for abuses of process is quite broad. *Gas-A-Tron of Ariz. v. Union Oil Co.*, 534 F.2d 1322 (9th Cir. 1976). The Court in that matter quoted *Richardson v. Hamilton International Corp.*, 469 F.2d 1382 (1972) as follows:

> Whenever an allegation is made that an attorney has violated his moral and ethical responsibility, an important question of professional ethics is raised. It is the duty of the district court to examine the charge, since it is that court which is authorized to supervise the conduct of the members of its bar. The courts, as well as the bar, have a responsibility to maintain public confidence in the legal profession. This means that a court may disqualify an attorney for not only acting improperly but also for failing to avoid the appearance of impropriety.

*Id. at* 1324-25.

District judges have an "arsenal of sanctions" they can impose for unethical behavior. *Erickson*, 87 F.3d at 303. These sanctions include monetary sanctions, contempt, and the disqualification of counsel. *Id*. The Court may look to the Arizona Rules of Professional Conduct, which are equally applicable to members of the bar and any attorney permitted to practice pro hac vice. *See* LR Civ. 83.2(e)("The 'Rules of Professional Conduct,' in the Rules of the Supreme Court of the State of Arizona, shall apply to

attorneys admitted or otherwise authorized to practice before the United States District Court for the District of Arizona.").

Local Rule of Civil Procedure 83.8(a) requires:

> A lawyer or law firm associated with a civil action shall not during its investigation or litigation make or participate in making an extrajudicial statement, other than a quotation from or reference to public records, which a reasonable person would expect to be disseminated by means of public communication, if there is a reasonable likelihood that such dissemination will interfere with a fair trial and which relates to: (1) evidence regarding the occurrence or transaction involved; (2) the character, credibility, or criminal record of a party, witness or prospective witness; (3) the performance or results of any examination or tests or the refusal or failure of a party to submit to such; (4) an opinion as to the merits of the claims or defenses of a party except as required by law or administrative rules; or (5) any other matter reasonably likely to interfere with a fair trial of the action.

Plaintiff's counsel intentionally and knowingly presented *false statements* to the media, including their assertion that "not a single county politician or person in power has seen fit to call for an investigation." As stated above, this incident was investigated and reviewed by the Maricopa County Attorney's Office years ago. Plaintiff's counsel also provided false and salacious accusations related to the Medical Examiner's findings, Muhaymin's cause of death, and the purported lack of video evidence.

Simply put, Plaintiff's counsel told potential jurors that Defendant Officers murdered Mr. Muhaymin and no one is willing to hold them responsible, unlike the murder of George Floyd. Nothing could be more prejudicial or violative of Ariz. R. Prof. Conduct E.R. 3.6. Furthermore, the public statements made by Plaintiff's counsel violate all five enumerated areas upon which extrajudicial statements are prohibited. Unlike before, these statements were made directly to news media, and the trial begins on **September 14, 2021** (just *four months* away). The remoteness of prejudicial effect is no longer present, as potential jurors were exposed to incredibly prejudicial and *false* information just months before selection. Thus, the greatest sanctions available to the Court should be applied here, which includes dismissal of Plaintiff's claims in their entirety.

## VI. A PROTECTIVE/ RESTRAINING ORDER IS NECESSARY.

In the event the Court is not inclined to dismiss this case for these additional and repeated violations, Defendants respectfully request that a restraining order be instituted. Good cause to restrict and prohibit Plaintiff and Plaintiff's counsel from any further discussions about this case with media is readily apparent. In its December 11, 2020 Order, the Court cautioned, "The Court is empowered to issue an order prohibiting trial participant from communicating with the media where 'excessive trial publicity' endangers the fairness of the judicial process." Dkt. No. 271, p. 7 (citing to *Mizioch v. Montoya*, N. CV 10-01728-PHX-JAT, 2011 WL 4900033, at *6 (D. Ariz. Oct. 14, 2011) (citing *Levine v. United States District Court for the Central District of California*, 764 F.2d 590, 600-601 (9th Cir. 1985)). Plaintiff's counsel must comply with the Court's Orders and Rules and allow this matter to be litigated in the courtroom. A "gag order" perhaps will ensure that additional violations of the Court's Order and Protective Order will not occur.

## VII. CONCLUSION

For these reasons, Defendants respectfully request the Court issue sanctions against Plaintiff and Plaintiff's counsel for violating this Court's Protective Order, June 5, 2020 Order, December 11, 2020 Order, E.R. 4.2 & 3.6, and Local Rule of Civil Procedure 83.8. At this point, and in light of Plaintiff's counsel's ongoing violations of the Rules, this Court's Order, and complete disregard for the judicial process and this Court's Rules, dismissal of this case, in its entirety, is warranted.

Should the Court determine a dismissal is not appropriate, Defendants respectfully request other sanctions be issued, including but not limited to, removal of Plaintiff's counsel as attorneys of record, monetary sanctions sufficient to deter such conduct in the future, a "gag order" to preclude any future communications and release of information to the media and public, and reasonable attorneys' fees and costs to the Defendants associated

with preparing and filing *all* pleadings to date related to Plaintiff's counsel's improper conduct.

Dated: May 3, 2021.

**O'CONNOR & DYET, P.C.**

By: */s/ Karen J. Stillwell*
　　Daniel J. O'Connor, Jr.
　　Karen J. Stillwell
　　Travis B. Hill
　　*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on May 3, 2021, I electronically filed the foregoing with the Clerk of the Court for the U.S. District Court, District of Arizona, using the CM/ECF System. A Notice of Electronic Filing will be served to the following registered participants:

| | |
|---|---|
| David A. Chami<br>PRICE LAW GROUP, APC<br>8245 N. 85th Way<br>Scottsdale, AZ 85258<br>*Attorney for Plaintiff* | Haytham Faraj<br>LAW OFFICES OF HAYTHAM FARAJ<br>1935 W Belmont Ave.<br>Chicago, IL 60657<br>*Attorney for Plaintiff* |

Brian J. Theut
THEUT, THEUT & THEUT
5150 North 16th Street
Phoenix, AZ 85016
*Guardian Ad Litem and Statutory Representative for A. M.*

By: */s/ Aly Shomar-Esparza*