David A. Chami, AZ #027585
PRICE LAW GROUP, APC
8245 N. 85th Way
Scottsdale, AZ 85258
T: (818) 600-5515
F: (818) 600-5415
david@pricelawgroup.com

Haytham Faraj , CA #291416
Admitted *pro hac vice*
LAW OFFICES OF HAYTHAM FARAJ
1935 W Belmont Ave.
Chicago, IL 60657
T: (312) 635-0800
F: (202) 280-1039
haytham@farajlaw.com

Attorneys for Plaintiff

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mussalina Muhaymin as Personal Representative of the Estate of Muhammad Abdul Muhaymin Jr., <br><br> Plaintiff, <br><br> v. <br><br> City of Phoenix, an Arizona Municipal Corporation, *et al.*, <br><br> Defendants. | Case No.: CV-17-04565-PHX-SMB <br><br> **PLAINTIFF'S OBJECTION TO DEFENDANTS' NOTICE OF VIOLATIONS OF ARIZ. R. PROF. COND. E.R. 4.2 & 3.6, AND LOCAL RULE OF CIVIL PROCEDURE 83.8** <br><br> **AND** <br><br> **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS** |

Plaintiff, Mussalina Muhaymin as Personal Representative of the Estate of Muhammad Abdul Muhaymin, Jr. ("Plaintiff"), hereby raises objection to Defendants City of Phoenix, Antonio Tarango, Oswald Grenier, Kevin McGowan, Jason Hobel, Ronaldo Canilao, David Head, Susan Heimbigner, James Clark, Dennis Leroux, Ryan Nielsen and Steven Wong's ("Defendants") Notice of Violations of Ariz. R. Prof. Cond. E.R. 4.2 & 3.6, and Local Rule of Civil Procedure 83.8, and submits her Opposition to Defendants' Motion for Sanctions [doc. 330] ("Motion").

I. **INTRODUCTION**

In its third attempt at bullying Plaintiff into not exercising her free speech rights, Defendants once again ask the Court to impose draconian sanctions for nonexistent violations of the Court's protective order. This time, Defendants go one step further, seeking dismissal of Plaintiff's claims in whole, or, in the alternative, entry of a "gag order," because Plaintiff dared to petition her local government for change, a right expressly protected by both the United States and Arizona Constitutions.

Defendants' illicit use of taxpayer dollars in an effort to silence political opponents has approached the level of unbelievable. Not only do Defendants falsely accuse Plaintiff of disclosing confidential information, but they also purposefully mischaracterize statements made by Plaintiff's counsel, taking the same out of context, and fail to address official comments to the Arizona Rules of Professional Conduct, directly on point, which are adverse to Defendants' position.

1

Defendants are not entitled to sanctions as a result of Plaintiff's decision to exercise her constitutionally protected rights of free speech and petition. For these reasons, described below, Plaintiff respectfully requests that the Court deny Defendant's Motion.

## II. **OBJECTION TO IMPROPER NOTICE**

Defendants' insistence on reraising previously adjudicated issues is improper. Defendants' Motion represents the second time that Defendants have referenced social media posts from a year ago in an effort to relitigate this Court's denial of Defendants' original meritless motion for sanctions. *See* doc. 179 (Defendants' motion for protective order regarding "public postings"); doc. 188 (Order denying same); doc. 234, pgs. 3-4 (Defendants' second motion for sanctions); doc. 271 (Order denying same). If Defendants wish to relitigate the Court's prior orders, they are required to comply with LRCiv 7.2(g). Defendants have failed to do so. Therefore, the inclusion of discussion (dubbed "notice" by Defendants) regarding already litigated issues is inappropriate and should not be considered by the Court.

## III. **OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS**

Defendants advances three lines of argument as to why this Court should issue sanctions. First, Defendants argue that a letter, sent to Plaintiff's city representatives, wherein she demanded political accountability and change regarding the unnecessary death of her brother, somehow violated the Arizona Rules of Professional Conduct. This argument fails as a matter of constitutional law.

Second, Defendants contend that Plaintiff's (and Plaintiff's counsel's) recent interview regarding the progress of this case was violative of this Court's Protective Order

because mention was made regarding the fact that one of the Defendant Officers received a promotion after the killing of Mr. Muhaymin. Defendants go so far as to proclaim that this information must have come from the unnamed officer's employment file. This is verifiably false, as such information was already public knowledge, and, furthermore, the promotion of a public official is per se "public information," which is freely available to the Arizona public, and required to be so by statute.

Third, Defendants assert that the statements made by Plaintiff's counsel during media interviews were violative of the Arizona Rules of Professional Conduct. This is also false. Plaintiff's counsel did not discuss the specifics of the civil suit against the Defendant Officers. Instead, they discussed a political call for their elected representatives or City of Phoenix officials to spearhead a reopening of the criminal investigation into the death of Plaintiff's brother. This is political speech and is therefore protected by the First Amendment.

### A. Plaintiff's Letter, Sent To Her City Representatives, Which Called For Political Change, Was Expressly Protected By The First Amendment Of The United States Constitution, And Furthermore Did Not Violate The Arizona Rules Of Professional Conduct

As an initial matter, Plaintiff notes that communication between herself and her government, whether through an attorney or otherwise, is expressly protected by the United States and Arizona Constitutions. *See* U.S. Const. amend. I (guaranteeing the right to petition the government); see also Ariz. Const. art. 2, §5(same). This alone is dispositive of Defendants' request that Plaintiff, a citizen of the United States, be punished or otherwise sanctioned for petitioning change from her own local government.

Furthermore, by the very terms and comments of the rule cited by Defendants, the letter sent to Plaintiff's city representatives did not violate the Arizona Rules of Professional Conduct. The governing rule states that

> In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer **or is authorized by law to do so.**

Ariz. R. Sup. Ct. ER 4.2 (emphasis added). Interestingly, Defendants stop their analysis of the Arizona rules here and switch to citing the ABA model rules. In so doing, Defendants skip the first comment to ER 4.2 which directly addresses Plaintiff's conduct here, unequivocally stating that

> parties to a matter may communicate directly with each other and a lawyer having independent justification for communicating with the other party is permitted to do so. Communications authorized by the law include, for example, **the right of a party to a controversy with a government agency to speak with government officials about the matter**.

Ariz. R. Sup. Ct. ER 4.2, cmnt. [1] (emphasis added).

Defendants' failure to cite the above-quoted comments, and reliance instead on the ABA model rules (as opposed to the rules **actually** enacted in Arizona) is an obvious attempt to mislead the Court and likely in and of itself violative of the professional rules of conduct and Counsel's duty of candor to the court. Ariz. R. Prof'l. Cond. 3.3. As noted, Plaintiff's communication with her government is not only expressly protected by both the United States and Arizona Constitutions, but also directly provided for by the governing professional rules.

### B. Neither Plaintiff Nor Her Counsel Disclosed Confidential Information To The Media

None of the information discussed by Plaintiff or her counsel, either to the media or in the open letter to the City of Phoenix, is confidential, and **all** of the information contained therein is public record. Defendants object primarily to discussion by Plaintiff's counsel of the **undisputed fact** that one of the Defendant Officers received a promotion after Mr. Muhaymin's death. This has been public knowledge for years.[1] Furthermore, this information came from a 2019 Phoenix New Times exposé regarding overtly racist statements posted by Phoenix police on social media.[2] The story clearly identifies one of the defendant officers by name and states that he is now a Sergeant.

Furthermore, employment information of Arizona's public servants, including law enforcement officers, is public record, which is presumptively available to the Arizona public. "Arizona law defines 'public record' broadly and creates a presumption requiring the disclosure of public documents." *Am. Civil Liberties Union of Ariz. v. Ariz. Dep't of Child Safety*, 377 P.3d 339, 344 (Ariz. Ct. App. 2016) (citing A.R.S. § 39). "[D]ocuments having a 'substantial nexus' with a government agency's activities qualify as public records." *Am. Civil Liberties Union of Ariz.*, 377 P.3d at 344 (quoting *Griffis v. Pinal County*, 215 Ariz. 1, 4 (Ariz. 2007)). The rank of law enforcement officers certainly has a

---

[1] S*ee* Body cam video released in 2017 police killing of Muhammad Muhaymin Jr: 'Allah? He's not going to help you', Religion News Service (2020), https://religionnews.com/2020/08/20/body-cam-video-muhammad-muhaymin-police-please-allah-help-cant-breathe-black-muslim/ (last visited May 4, 2021);
[2] Meg O'Connor, At Least Two Phoenix Cops to Be Disciplined Over Facebook Posts Phoenix New Times (2019), https://www.phoenixnewtimes.com/news/phoenix-police-sergeants-officers-disciplined-facebook-posts-muslims-11373173 (last visited May 6, 2021).

"substantial nexus" to government activities, as it dictates the relative authority of personnel on the police force, and identifies those public servants to whom the public may go with complaints about subordinates.

This presumption of disclosure is only rebutted by statutory exception or where documents are "of a purely private or personal nature" *Am. Civil Liberties Union of Ariz.*, 377 P.3d at 344 (citing *Griffis*, 215 Ariz. at 4); *See also Scottsdale Unified School Dist. v. KPNX BC,* 191 Ariz. 297, 299 (Ariz. 1998) (holding that a public employee's date of birth was purely private information, and therefore not public record). It cannot reasonably be argued that a change in a police officer's rank is "purely private or personal." Officers are public servants, and the responsibilities and authorities inherent in positions of different rank have nothing to do with an officer's personal or private life.

Defendants desperate attempts to muzzle Plaintiff and her Counsel are evident. As none of the information discussed by Plaintiff or her counsel with the media is confidential, Defendants' arguments regarding sanctions for violation of the Court's protective order fail.

### C. Plaintiff's Call For Political Action Did Not Violate The Rules Of Professional Conduct

Because it is patently obvious that (1) sanctioning Plaintiff for petitioning her local government would be a violation of both the United States and Arizona Constitutions, and (2) no confidential information has been disclosed by Plaintiff or her counsel in the brief (and expected for a case of this magnitude) media encounters that have occurred, Defendants throw one final Hail Mary, asserting that discussion by Plaintiff's counsel

6

about the failure of a criminal investigation, referencing nothing more than publicly available body camera footage, somehow prejudices the adjudication of this case. This is ridiculous.

First, it should be noted that the vast majority of discussion during the **seconds** of interview given by Plaintiff's counsel was confined to the topic of Plaintiff's ongoing political call for a reinvestigation into the death of her brother. Most of the points discussed specifically pertained to public record facts about the circumstances surrounding Mr. Muhaymin's death, and how those facts (established by bodycam footage released to the public by Defendants years ago) supported a reopening of the criminal case.[3] The **sole** mention of this case made by Plaintiff's counsel was an aside noting the trial date, the availability of appeal, and the fact that an immense amount of time has passed since Mr. Muhaymin died.[4]

Second, contrary to Defendants' mischaracterizations, nothing Plaintiff's counsel said was false. Defendants draw attention to a single sentence, taken out of context, where Plaintiff's counsel noted that "not a single county politician or person in power has seen fit to call for an investigation." Motion, pg. 13. What Defendants intentionally fail to note, however, is that the entirety of the brief interview was focused on Plaintiff's public call that someone within the government structure initiate a reopening of the case. The quoted statement was made in regards to such a reinvestigation. Plaintiff's counsel was not stating

---

[3] *See* https://kjzz.org/content/1679631/hearing-scheduled-wrongful-death-case-against-phoenix-police; https://www.abc15.com/news/local-news/investigations/family-implores-phoenix-council-to-act-in-in-custody-death-of-muhammad-muhaymin
[4] *Id.*

(as is obvious when actually viewing the interview footage) that an investigation never took place, and Defendants' attempt to twist the words said in order to gain a litigation advantage is incredibly inappropriate.

Third, Defendants escalate their mischaracterization by asserting that "Plaintiff's counsel told potential jurors that Defendant Officers murdered Mr. Muhaymin and no one is willing to hold them responsible." Motion, pg. 13. As mentioned at the hearing on Defendants' Motion for Summary Judgment, this sort of editorializing is why Plaintiff attaches entire transcripts to the record, so that the Court may view the underlying facts for itself and discover Defendants' falsehoods. At no point in any of the interview footage the word "murder" ever used or even insinuated.

Fourth, Defendants take issue with the fact that the interviews were given after the guilty verdict was announced in the trial of Derek Chauvin. This tired argument has been trotted out by Defendants in prior filings, and it is no more appealing now than it was the first two times. The fact that there exists a renewed national interest in police brutality, and the fact that Mr. Muhaymin and Mr. Floyd died in similar fashion, simply cannot be blamed on Plaintiff or her counsel. Defendants, as public servants subject to all the scrutiny that such a position rightly brings, are not entitled to muzzle Plaintiff or to limit her First Amendment right to speak out for change.

### D. The Draconian Sanctions Requested By Defendants Are Unjustifiable

Neither Plaintiff nor her attorneys have committed a single sanctionable action in the prosecution of this case. They have not "engage[d] in abusive litigation practices"

8

(*Roadway v. Express, Inc. v. Piper*, 447 U.S. 752, 765, 100 S. Ct. 2455 (1980)), nor have they "engaged in conduct utterly inconsistent with the orderly administration of justice" (*Wyle v. R.J. Reynolds Industries, Inc.*, 709 F. 2d 585, 589 (9th Cir. 1983)). The acts of petition Plaintiff's government and adding Plaintiff's voice to the current political movement by responding to news outlets (wherein this case was only briefly mentioned, and wherein no confidential information was discussed) certainly do not rise to the level of atrocity contemplated by *Roadway* (447 U.S. at 765) and *Wyle* (709 F. 2d at 589).

Further, Defendants have not been prejudiced by the actions of Plaintiff or her attorneys. Defendants make hyperbolic arguments regarding the effect of the **seconds-long** statements made to the media discussing Plaintiff's political call for a reinvestigation and assert that the same impairs Defendants' ability to have a fair trial. This is ridiculous. First, simple prominence does not produce prejudice per se. *Skilling v.United States*, 561 U.S. 358, 130 S. Ct. 2896, 2902, 177 L. Ed. 2d 619 (2010). Defendants must make a stronger showing than conclusory speculation about what potential jurors might have heard in the news. Second, as mentioned above, to the extent that the current political climate affects the jury pool, the fault does not lie with Plaintiff. Again, neither she nor her attorneys had anything to do with the murder of George Floyd and asking this Court to dismiss Plaintiff's suit because of outside political pressure is incredibly inappropriate.

Third, Plaintiff and her attorneys were fully within their rights under Ariz.R.Prof.Cond. 3.6(c) to give statements to the media. As this issue has been fully briefed before this Court on multiple occasions, Plaintiff reincorporates her position and

arguments set forth at doc.183 at pgs. 9-13 regarding the City of Phoenix's January 2017 release of body camera footage and narrative. In sum, Defendants utilized the City of Phoenix's position as a public entity, and the easy access to media coverage afforded by that position, to preemptively release a narrative, replete with patent inaccuracies, in an attempt to spin popular opinion before Ms. Muhaymin even had an opportunity to file suit. It is ironic that Defendants again (falsely) accuse Plaintiff of the exact same tactic.

Finally, as noted, a shift in the political winds resulting in a revived social awareness of Mr. Muhaymin's death is not grounds for issuance of **any** sanctions, much less those requested by Defendant. That dismissing Plaintiff's lawsuit because she exercised her First Amendment right is inappropriate is self-apparent, and Defendants' insistence on continually requesting that the Court adjudicate this case outside the merits is inappropriate. Further, Defendants' request for a "gag order" is unconstitutional on its face. The City of Phoenix, as a public entity, is expressly requesting an order from this Court quashing Plaintiff's political speech. As described above, Plaintiff is entitled to involve herself in the current movement for political change in Phoenix, and to seek alterations to the policies established by the public police department. Defendants are not entitled to silence Plaintiff or her attorneys in their political efforts simply because she is suing the City of Phoenix for the death of her brother, caused by the very policies she seeks to see changed.

## IV. CONCLUSION

Defendants' Motion represents yet another unconstitutional attempt to silence Plaintiff in her exercise of free political speech, requesting that the Court either dismiss Plaintiff's claims or enter a "gag order" which would restrict her constitutional right to petition her government. Defendants request this draconian remedy based on nothing more than a political letter, sent to Plaintiff's local government representatives, and a few seconds of interview given regarding that letter. No confidential information has been disclosed, and no prejudice to Defendants has occurred. This Court should not legitimize Defendants' continued attempt at bullying Plaintiff into silence. For these reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion.

Respectfully submitted this 7th day of May 2021.

PRICE LAW GROUP, APC

By: */s/ David A. Chami*
David A. Chami, AZ #027585
david@pricelawgroup.com
Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on May 7, 2021, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which will send notice of such filing to all attorneys of record in this matter.

              */s/Florence Lirato*