Daniel J. O'Connor, Jr., Bar No. 010081
Karen J. Stillwell, Bar No. 022711
Travis B. Hill, Bar No. 021133
**O'CONNOR & DYET, P.C.**
7955 South Priest Drive
Tempe, Arizona 85284
daniel.oconnor@occlaw.com
karen.stillwell@occlaw.com
travis.hill@occlaw.com
(602) 241-7000
*Attorneys for Phoenix Defendants*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mussalina Muhaymin as Personal Representative of the Estate of Muhammad Abdul Muhaymin Jr., <br><br> Plaintiff, <br><br> vs. <br><br> City of Phoenix, an Arizona Municipal Corporation; Antonio Tarango; Officer Oswald Grenier; Officer Kevin McGowan; Officer Jason Hobe; Officer Ronaldo Canilao; Officer David Head; Officer Susan Heimbinger; Officer James Clark; Officer Dennis Lerous; Officer Ryan Nielson; Officer Steven Wong; and Doe Supervisors 1-5, <br><br> Defendants. | Case No.: 17-cv-04565-PHX-SMB <br><br> **DEFENDANTS' REPLY IN SUPPORT OF NOTICE OF VIOLATIONS OF ARIZ. R. PROF. COND. E.R. 3.2 & 3.6, AND LOCAL RULE OF CIVIL PROCEDURE 83.8** <br><br> **AND** <br><br> **MOTION FOR SANCTIONS** <br><br> Assigned to the Honorable Susan M. Brnovich |

The purpose of Defendants' Notice of Violations of Ariz. R. Prof. Cond. E.R. 4.2 & 3.6, and Local Rule of Civil Procedure 83.8 and Motion for Sanctions ("Defendants' Motion") was to alert the Court to new violations of the Arizona Rules of Professional Conduct, Rules of this Court, and its Orders, all of which are open, obvious, and as this

pleading is written, are readily available on the internet. These violations individually and collectively warrant Defendants' requested sanctions, or at the very least a "gag order."

In her Objection, Plaintiff's counsel deflects his own violative conduct and claims Defendants are "bullying" him and "muzzling" free speech. (Dkt. No. 342). Defendants are doing no such thing. Our Courts and our State Bar governing attorneys' ethics have Rules and Orders and when those are violated, it is incumbent upon opposing counsel to alert the Court. When confidential information used in support of that Notice to the Court, the Notice and attachments are filed under seal. Plaintiff's misrepresentations of the underlying Notice and its contents in her publicly-filed Objection should not go unnoticed.[1]

Defendants do not dispute Plaintiff's important rights to free speech, petition the government, and fight for policy changes that she believes are necessary. Defendants have not, and do not, wish to restrict this in any manner. However, Plaintiff's counsel is bound by the Court's Rules and Orders, as well as their ethical duties proscribed by the State Bar. Moreover, while Plaintiff is fundamentally endowed with such rights, Defendants are also entitled to a fair trial. These rights can and should be balanced. Unfortunately, in this case, Plaintiff's counsel have repeatedly walked the line, and now, just four months from trial, they have leaped over it.

## **MEMORANDUM OF POINTS AND AUTHORITIES**

**I. ARGUMENT**

**1. Defendants have not Requested the Court Reconsider its Previous Orders, and as such, Local Rule of Civil Procedure 7.2(g) does not Apply.**

---

[1] Plaintiff inaccurately claims the "only piece of information" claimed to be confidential in the underlying Notice and Motion is an officer's promotion. In addition to other items, deposition testimony demonstrating Plaintiff's violations and unprofessional conduct was detailed in and attached to the underlying Motion. This Court previously held certain deposition testimony is confidential. Defendants sought a Court Order sealing their underlying Notice and Motion *to comply* with the Court's Orders and Rules. (Dkt. No. 329). The Court agreed and granted Defendants' Motion to Seal. (Dkt. No. 334).

Defendants have not requested the Court reconsider its previous Rulings and Orders with respect to Plaintiff's counsel's conduct. Instead, Defendants merely point to past documented violations, and the Court's Orders issuing warnings to Plaintiff's counsel. Nothing within Local Rule of Civil Procedure 7.2(g), or elsewhere, prevents the Defendants or the Court from reviewing, or citing to, past Orders that warn of future sanctions or remedial measures that may be taken by the Court for future, or present, violations by Plaintiff's counsel. The references to the prior conduct and the Court's previous warnings to Plaintiff's counsel related to the conduct establish a pattern of misconduct and refusal to abide by the Court's Rules and Orders.

### 2. The U.S. Supreme Court has Held Extrajudicial Statements may and should be Constitutionally Restricted to Ensure a Fair Trial.

Plaintiff's counsel implies that his conduct is cloaked in the all-encompassing freedoms of speech afforded by the United States and Arizona Constitutions, ignoring the many multifaceted limitations enumerated by the United States Supreme Court regarding speech, particularly speech by attorneys in ongoing litigation. A recitation of these cases and the examples of where freedom of speech may be restricted is unnecessary, Defendants are not making this up, the Supreme Court has explicitly supported restraints of speech in making extrajudicial statements when weighed against the right to a fair trial. *Gentile v. State Bar of Nevada*, 501 U.S. 1030 (1991). Lawyers involved in pending litigation are subject to ethical restrictions upon speech which do not apply to ordinary citizens. *Id*. at 1071. In *Gentile,* the Supreme Court held that it is entirely appropriate for courts and State Bars to regulate attorney speech. *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1072 (1991) (Rehnquist, J.) ("We expressly contemplated that the speech of those participating

before the courts could be limited.").[2] As example, the Supreme Court noted that attorneys should be prohibited from discussing inadmissible evidence in an extrajudicial statement:

> Extrajudicial comments on, or discussion of, evidence which might never be admitted at trial and ex parte statements by counsel giving their version of the facts obviously threaten to undermine this basic tenet.

*Id.* at 1071. The Court also noted that restrictions on an attorney's opinions about the merits of a claim or defense are especially appropriate, because the public often lends considerable weight to such opinions:

> Because lawyers have special access to information through discovery and client communications, their extrajudicial statements pose a threat to the fairness of a pending proceeding since lawyers' statements are likely to be received as especially authoritative.

*Id*. at 1074.

Restrictions upon extrajudicial statements are proper when such comments have a likelihood to influence the outcome of a trial, or where they may prejudice the available pool of jurors, ***even if an untainted set of jurors can eventually be found***. *Id*. at 1075. Moreover, the *Gentile* Court clearly stated limitations of freedom of speech apply to the litigants. Chief Justice Rehnquist noted that the Court had previously concluded that a litigants' right to free speech "may be subordinated to" the right to a fair trial. *Id.* (quoting *Seattle Times Co. Rhinehart*, 467 U.S. 20 (1984)).

Political winds do not blow so strongly as to make two events, dissimilar in many significant respects, move the foundational bedrock of our judicial system ensuring the right to a fair trial, despite how rigorously those winds are fanned by the attorneys representing the Plaintiff. In hindsight, if done properly, Plaintiff's attorneys may have

---

[2] The *Gentile* decision contained two separate majority opinions. Chief Justice Rehnquist authored a majority opinion regarding certain aspects of the case, while Justice Kennedy authored a majority opinion with respect to the other aspects of the case. Unless otherwise notated, the quotations cited herein are from the portions of the opinion that were adopted by the majority of the Court.

discussed policy or political change exclusively with elected officials or the press without violating Ariz. R. Prof. E.R. 4.2 & 3.6, and Local Rule of Civil Procedure 83.8. However, Plaintiff's counsels' attempt to retrospectively frame their conduct within the rules is telling and his request that this Court view his conduct through his lens is improper. Plaintiff's counsel went far beyond demanding an investigation be reopened – he misrepresented to the media the investigations performed to date and details of the events. He used the media to discuss evidence, discuss what experts will testify to, and cast aspersions against Defendants and their counsel. It is unfortunate that the Plaintiff's counsel have placed Plaintiff in this unnecessary position.

**3. The Extrajudicial Statements by Plaintiff's Counsel Speak for Themselves.**

To correct the Plaintiff's summary within Plaintiff's Objection, "prominence does not **necessarily** produce prejudice, and juror *impartiality* does not require *ignorance*." *Skilling v. United States*, 561 U.S. 358, 381, 130 S. Ct. 2896, 2902 (2010) (citing to *Irvin v. Dowd*, 366 U.S. 717, 722, 81 S. Ct. 1639 (1961)) (holding that pre-trial publicity involving the Defendant's bankruptcy did not require a change of venue in the Defendant's securities fraud trial). Apart from the matters, being civil actions, the prejudice involved here is highly disparate in *Skilling*. However, Defendants would agree that *Skilling* does apply with respect to this Court's determination in this respect:

> When pretrial publicity is at issue, 'primary reliance on the judgment of the trial court makes [especially] good sense' because the judge 'sits in the locale where the publicity is said to have had its effect' and may base her evaluation on her 'own perception of the depth and extent of news stories that might influence a juror.'

*Id*. at 386, 2918.

Plaintiff's counsel made a lot of statements – in the letter he sent directly to Council and in his extrajudicial statements to the media – however, many of their statements were unsubstantiated and/or designed to influence the potential jury pool. In the Objection, Plaintiff's counsel misrepresents and attempts to excuse their misconduct by claiming

information is public knowledge.[3] However, Plaintiff relies upon at least one news article in which *he* provided information to the media. Nonetheless, Plaintiff's misrepresentation of information that is now "public" is largely due to his improper conduct and comments that arise from extrajudicial statements concerning the death of Mr. Muhaymin, the evidence a jury will weigh, and what Defendants' experts will testify to regarding this case.

Plaintiff's counsel argues that Defendants twisted his words and taken his statements out of context. During his media interview, Mr. Faraj stated, "You had a man die in the custody of the Phoenix Police Department, who committed no crime. He died by asphyxiation and suffocation. The County Coroner declared it a homicide, and not a single county politician, person in a position of power, has seen fit to call for a criminal investigation." https://www.abc15.com/news/local-news/investigations/family-implores-phoenix-council-to-act-in-in-custody-death-of-muhammad-muhaymin.

Mr. Chami stated, "Nothing has happened. In fact, you know, at least one officer has been promoted, um, since this incident. So you know this-the… Had we had a a bystander, with a with a video camera or with a cell phone, the way um, the way the the Floyd family had the benefit of bystanders who actually thought to take out their cell phones and record it. I think we would have a much different outcome. I think Muhammad Muhaymin may have been George Floyd, just three years earlier." *Id*. Missing from these quoted statements and the news report is the word "reinvestigate" because, as Plaintiff's counsel knows, this matter was already investigated by the Department and by the Maricopa County Attorney's Office, in 2017. The Maricopa County Attorney's Office determined there was no criminal conduct.

---

[3] The Phoenix New Times article cited by Plaintiff's counsel does not reference a promotion; rather it inaccurately identifies an officer as "Sergeant," which he is not. Dkt. No. 342, p. 5. Moreover, no "overtly racist statements" were attributed to this officer.

What does appear in the news report is the word "homicide." When searching for the definition of homicide via Google's web engine, the first definition which appears is "the deliberate and unlawful killing of one person by another; murder." But the Arizona Court of Appeals, found differently and held that a medical examiner's testimony regarding the medical cause of death as homicide, violated Rules 403 and 702, Ariz. R. Evid., because a lay person may be misled into believing that the term was synonymous with the criminal offense of homicide. *State v. Sosnowicz*, 229 Ariz. 90, 97, 270 P.3d 917, 924 (App. 2012). Here, the potential jury pool, similar to the empaneled jury in *State v. Sosnowicz*, has now received this information one-sidedly, and without the benefit of explanation, nor the opportunity for Defendants to challenge the admissibility of such information under Rules 403 and 702, Fed. R. Evid. However, Plaintiff's counsel need not parse words in their pleading, given that large portions of the letter sent to the City of Phoenix Mayor and City Council Members appeared unredacted in the news report. Included within the visible letter were the words kill, killing, and killed to describe Mr. Muhaymin's death putatively at the hands of the Defendants. Based upon Plaintiff's own words, it is clear that Plaintiff's counsel insinuated that the Defendants murdered Mr. Muhaymin, that would cross the line of prohibited extrajudicial statements.

### 4. Plaintiff's Counsel Selectively Block Quoted Ariz. R. Supp. Ct. E.R. 4.2, Cmt. 1

Plaintiff criticizes Defendants' citation to ABA model rules "as opposed to the rules **actually** enacted in Arizona" and accused Defendants of an "obvious attempt to mislead the Court," citing Ariz. R. Prof. Cond. E.R. 3.3. However, Rule 42, Arizona Rules of Professional Conduct, expressly states: "***The professional conduct of members shall be governed by the Model Rules of Professional Conduct of the American Bar Association, adopted August 2, 1983, as amended by this court and adopted as the Arizona Rules of Professional Conduct.***" Thus, Rule 42 of the Arizona Rules of Professional Conduct demonstrates that the ABA model rules ***have been adopted*** in Arizona.

- 7 -

As the ABA model rules have been adopted by Arizona, Defendants directed the Court's attention to ABA Formal Opinion 97-408, because Arizona did not have an opinion which discussed Ariz. R. Prof. Cond. E.R. 4.2, in the context of attorney communications with a government organization represented by separate counsel. Ariz. R. Prof. Cond. E.R. 4.2 provides on its face, "In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so." *Lang v. Superior Ct., In & For Cty. of Maricopa*, 170 Ariz. 602, 604–05, 826 P.2d 1228, 1230–31 (App. 1992), makes clear that this Rule applies to organizations. Plaintiff's Objection doesn't argue that counsels' communication falls outside of the purview of Ariz. R. Prof. Cond. E.R. 4.2. Instead, Plaintiff's counsel argue that their communication is permissible under the Rule.

Again, Defendants have not argued that Plaintiff is prohibited from discussing policy or political change with the City of Phoenix officials, but instead, take issue with Plaintiff's counsel directly communicating with a party (an organization) they know to be represented in this matter and discuss the merits of the defense, evidence, and what experts will testify to, all without Court Order or prior notice to undersigned. To apparently prove that Plaintiff's counsel did not violate Ariz. R. Prof. Cond. E.R. 4.2, they partially quoted Ariz. R. Sup. Ct. E.R. 4.2 cmt. 1, focusing on "[c]ommunications authorized by law include, for example, the right of a party to a controversy with a government agency to speak with government officials about that matter." However, Plaintiff's counsel omitted the beginning of the comment. The comment to E.R. 4.2 provides, in its entirety:

> This Rule does not prohibit communication with a party, or an employee or agent of a party, **concerning matters <u>outside the representation</u>**. For example, the existence of a controversy between a government agency and a private party, or between two organizations, **does not prohibit a lawyer for either from communicating with nonlawyer representatives of the other <u>regarding a separate matter</u>**. Also, **parties** to a matter may communicate directly with each other and a lawyer having <u>independent justification</u> for communicating with the other party is permitted to do so. Communications

- 8 -

authorized by the law include, for example, the <u>right of a party</u> to a controversy with a government agency <u>to speak with government officials</u> about the matter. (emphasis added).

Notably, it was not ***Plaintiff*** (a party) who communicated with represented officials regarding facts of the matter, it was her attorney. As stated above, Arizona Professional Rules of Conduct prohibit Plaintiff's counsel's conduct. Plaintiff's counsel's partial quotation of this comment was an obvious attempt to mislead the Court, and violates Ariz. R. Prof. Cond. E.R 3.3, given that prohibits ***their*** direct communication to the City of Phoenix officials.

### 5. Enforcing the Court Orders, Ariz. R. Prof. Cond. E.R. 3.2 & 3.6, and Local Rule of Civil Procedure 83.8 is not Draconian.

Despite the redundant disapproval in Plaintiff's Objection to the Court Orders and Rules governing the conduct of the Parties and their counsel, Defendants would respectfully request the Court weigh its ruling in mind of all Parties and balance their respective rights. Defendants' Notice and Motion were not prompted by conduct violating Plaintiff's right to free speech; rather, its purpose was to point out Plaintiff's counsel's violation of the Court's Rules and Orders, as well as the ethical rules by which they are bound, and Defendants' right to a fair trial. Nearly a year ago, this Court expressed concern over the timing of Plaintiff's counsel's conduct in relation to nationwide events. The timing of Plaintiff's counsel's statements here are similarly concerning.[4]

Plaintiff's counsel describes Defendants' Notice to the Court of their violative conduct as a "Hail Mary." Of course, this is a metaphor generally used to describe a situation similar to a "Hail Mary" play utilized in the game of American football. This football play is used on offense, in which a player, usually the quarterback, makes a last-

---

[4] Plaintiff's counsel ***again*** mentioned something that was discussed during a hearing ***sealed by the Court***. Interjecting his arguments in support of his previous improper conduct (attaching full deposition transcripts to briefing) is entirely inappropriate, as is his discussion of matters addressed during a sealed hearing. (Dkt. No. 342, p. 8).

- 9 -

ditch effort to hurl the ball as far as they can into the endzone in hopes that the team's receiver catches the ball to win the game. It is almost exclusively used when a team is behind on points in the last seconds of the game. While the metaphor doesn't quite track the circumstances of this case, what is interesting is the timing connotated by the use of the term in Plaintiff's Objection. Defendants agree that we are in the last seconds of this case if it were a football game. However, a better metaphor would be that Plaintiff's counsel's conduct is much like a team that is forced to forfeit due to the ejection of players for too many unsportsmanlike penalties. While it would be preferable to win the game based upon play on the field, it is tough to criticize the opposing team or referee, when the side who committed penalties in that situation did it to themselves by failing to follow the rules.

While it is universally understood that this matter is not a game, nor are the rules that govern it, no amount of catchy metaphors can distract from the very real constitutional balancing the Court must examine. Defendants have repeatedly asked that the Plaintiff's counsel abide by the Rules and litigate this matter within the appropriate forum – namely, the Court and not the media; however, they continue to demonstrate to the Court that they will not, regardless of what the Rules require. The requested sanctions permitted by the Rules are not "draconian." These Rules are designed to protect the rights of ***all parties*** from being trampled. *See* LR Civ. 83.8(a) ("[a] lawyer . . . associated with a civil action shall not during its investigation or litigation make or participate in making an extrajudicial statement, … if there is a reasonable likelihood that such dissemination will interfere with a fair trial. …").

Subjecting Defendants (and Plaintiff) to an unfair trial by a tainted jury pool is categorically draconian. While the effects of the requested sanctions are averse to the Plaintiff, she need not look to the Court or Defendants to ask why, she only need look to her counsel. They can explain why they couldn't resist speaking to the media, and how that

potentially prejudiced not only the Defendants, but could result in the dismissal of her case through their conduct. Her counsel knows the rules and knows they violated them.

## II. <u>CONCLUSION</u>

Plaintiff's counsel's attempt to now retrofit their conduct to conform to the Rules is troubling. It seems as though asking for a fair trial equates to an unconstitutional restraint on speech. According to Plaintiff's counsel, simply asking that they follow the Rules governing communications with represented parties and trial publicity, is an attempt to muzzle and bully *her.* It is abundantly clear that Plaintiff's counsel never has, nor will they ever, permit this matter to be heard under the due process requirements and in the Courtroom. Defendants respectfully request that the Court to consider appropriate sanctions and penalties as are warranted here.

RESPECTFULLY SUBMITTED this 14th day of May, 2021.

**O'CONNOR & DYET, P.C.**

By: */s/ Karen J. Stillwell*
    Daniel J. O'Connor, Jr.
    Karen J. Stillwell
    Travis B. Hill
    *Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 14, 2021, I electronically filed the foregoing with the Clerk of the Court for the U.S. District Court, District of Arizona, using the CM/ECF System. A Notice of Electronic Filing will be served to the following registered participants:

| | |
|---|---|
| David A. Chami | Haytham Faraj |
| PRICE LAW GROUP, APC | LAW OFFICES OF HAYTHAM FARAJ |
| 8245 N. 85th Way | 1935 W Belmont Ave. |
| Scottsdale, AZ 85258 | Chicago, IL 60657 |
| *Attorney for Plaintiff* | *Attorney for Plaintiff* |

| | |
|---|---|
| 1 | Brian J. Theut |
| 2 | THEUT, THEUT & THEUT |
| 3 | 5150 North 16th Street<br>Phoenix, AZ 85016 |
| 4 | *Guardian Ad Litem and Statutory Representative for A. M.* |
| 5 | |
| 6 | By: */s/ Dara J. Wilson* |