Sanaa Ansari (DC Bar No. 1001591), admitted *pro hac vice*
MUSLIM ADVOCATES
P.O. Box 34440
Washington, D.C. 20043
202-831-4594
sanaa@muslimadvocates.org
*Attorney for Putative Intervenor Muslim Advocates*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mussalina Muhaymin as Personal Representative of the Estate of Muhammad Abdul Muhaymin Jr.,<br><br>Plaintiff,<br><br>vs.<br><br>Ronaldo Canilao; James Clark; Oswald Grenier; David Head; Susan Heimbinger; Jason Hobe; Dennis Lerous; Kevin McGowan; Ryan Nielson; Antonio Tarango; Steven Wong; City of Phoenix,<br><br>Defendants. | Case No.: CV-17-04565-PHX-DLR<br><br>**Combined Motion to Intervene, Petition to Unseal, and Memorandum in Support**<br><br>ORAL ARGUMENT REQUESTED |

Pursuant to Fed. R. Civ. P. 24(b), Muslim Advocates hereby moves to intervene in this matter for the limited purpose of requesting this Court to unseal the summary judgment proceedings, which include filings, hearing transcript, and Court order granting in part and denying in part.

The documents filed in these proceedings are judicial records of significant interest to the American public. Insofar as Defendants claim an interest in preventing the disclosure of these documents because they might reveal personal identifying information about the Defendants, redaction – as opposed to blanket sealing – is the appropriate way to reconcile that interest with the public's First Amendment and common law rights of access. This Court should, accordingly, unseal the records in the summary judgment proceedings with only those redactions necessary to protect Defendants' personal identifying information.

## **PRELIMINARY STATEMENT**

As this Court knows, this case asks whether City of Phoenix police wrongfully killed Muhammad Abdul Muhaymin ("Mr. Muhaymin"), a Black Muslim man in their custody. This Court sealed summary judgment proceedings in the wrongful death suit brought by Mr. Muhaymin's sister, Mussalina Muhaymin. The documents that were sealed included briefs, statements of fact, supportive exhibits, argument, and the court's order granting in part and denying in part, making them inaccessible to anyone but the parties and denying without discussion the public's access to judicial records protected by the common law and the First Amendment.

By this motion, Muslim Advocates seeks to vindicate its own and the public's constitutional and common law rights of access to judicial records in the above-captioned matter. Muslim Advocates is a national civil rights organization that provides expert representation in courts, the policy making process, and public dialogue so that American Muslims and all people can live free from discrimination.

The sealed judicial records in this case not only shape the course of this litigation but have the potential to shape broader public discourse surrounding the City of Phoenix's police force. In fact, a 2020 CNN report noted that the City of Phoenix has been wrestling with accusations of police brutality for the past several years. In 2018, Phoenix led the nation in fatal officer-involved shootings. Robert Kuznia, Scott Bronstein and Drew Griffin, *Bodycam footage from Phoenix arrest reveals new details about Black man's death in custody*, CNN (July 9, 2020), https://www.cnn.com/2020/07/09/us/phoenix-muhammad-muhaymin-invs/index.html.

Furthermore, Mr. Muhaymin's wrongful death has made headlines for its similarity to George Floyd's murder in Minneapolis. Katie Wedell, Cara Kelly, Camille McManus and Christine Fernando, *George Floyd is not alone. "I can't breathe" uttered by dozens in fatal police holds across U.S.*, USA Today (June 13, 2020), https://www.usatoday.com/in-depth/news/investigations/2020/06/13/george-floyd-not-alone-dozens-said-cant-breathe-police-holds/3137373001/ (describing how four police officers forced the weight of their bodies on Mr. Muhaymin's head, neck, back, and limbs as he lay face-down on the pavement handcuffed, after which Mr. Muhaymin went into cardiac arrest and died). Mr. Floyd's highly public murder led to worldwide protests that underscored the need for

2

judicial proceedings in that case to be public. Similarly in this case, disclosure of documents and arguments on which the parties relied in seeking and defending against summary judgment are sure to contribute to ongoing public discussions about the City of Phoenix's police practices.

As a result of this recent history, on August 4, 2021, the Department of Justice announced it had opened a pattern or practice investigation in the City of Phoenix and the Phoenix Police Department. Department of Justice, https://www.justice.gov/opa/pr/justice-department-announces-investigation-city-phoenix-and-phoenix-police-department (Aug. 5, 2021). According to Attorney General Merrick Garland, the aim of the investigation is to promote transparency and accountability in order to increase "the public trust, which in turn increases public safety." *Id*.

For the reasons set forth herein, Muslim Advocates respectfully requests that the Court allow it to intervene for the limited purpose of requesting that this Court unseal the summary judgment judicial records in this case.

### FACTUAL AND PROCEDURAL BACKGROUND

On January 4, 2017, Mr. Muhaymin, a 43-year-old Black American Muslim with mental health diagnoses, was killed in police custody. Body camera footage showed four police officers force their weight on Mr. Muhaymin's supine body pinned to the concrete as one officer held his knee on Mr. Muhaymin's neck for eight minutes. Mr. Muhaymin repeatedly pled to officers that he could not breathe. At one point Mr. Muhaymin called out, "Please Allah," to which one of the officers mockingly retorted, "Allah? He's not going to help you now."

3

Mr. Muhaymin's sister, Mussalina Muhaymin, filed this wrongful death suit on December 8, 2017, as representative of Mr. Muhaymin's estate against the City of Phoenix and the officers involved in his death.

On May 8, 2019, this Court entered a stipulated protective order allowing the parties to designate as confidential most, or all, of the evidence adduced in discovery. Stipulated Protective Order, ECF No. 72. The Protective Order allows parties to designate information or documents as confidential in two ways. First, the Protective Order allows the parties to designate as confidential the entirety of any document that "contains" personal identifiers such as birth date, medical information, financial information, or "other private information wherein there exists a reasonable expectation of privacy." *Id.* at 2, ¶ 3. Second, the Protective Order allows the parties to designate as confidential "any" information adduced through discovery that is "not generally available to the public." *Id.* at 2, ¶ 4. The Protective Order thus allows Defendants to assert confidentiality over an enormous amount of evidence – including deposition testimony, police policy manuals, investigations into Officer Defendants' conduct in this and other cases, and much else.

This Motion seeks to unseal the judicial records of summary judgment proceedings ordered sealed in two Orders and two-minute entries ("Sealing Orders") as well as the Order Granting in Part and Denying in Part. *See* Order on Motion to Seal Document Granting Defendants' Motion for Leave to File Sealed Non-Electronic Exhibits, Dec. 30, 2021, ECF No. 281; Order on Motion to Seal Documents Granting Motion and Sealing Defendants' Motion for Summary Judgment, Jan. 8, 2021, ECF No. 287; Order Sealing Motion Hearing, May 3, 2021, ECF No. 324; Sealed Minute Entry for Proceedings Held

Before Judge Susan M. Brnovich: Motion Hearing Held on 5/4/21, May 4, 2021; ECF No. 332; Sealed Order Granting in Part and Denying in Part Motion for Summary Judgment, Aug. 31, 2021, ECF No. 352.

The Sealing Orders gave cursory justifications for sealing – a bare assertion of "good cause appearing," no explanation at all, or sealing the hearing and closing it to the public "because the pleadings are sealed" – without articulating specific facts that overcame the public right of access to judicial records.

Specifically, on December 30, 2020, this Court entered an Order allowing Defendants, for "good cause appearing," to file under seal Exhibits 60-74 in support of Defendants' Motion for Summary Judgment. ECF No. 281, ¶ 2.

On January 8, 2021, the Court ordered, for "good cause appearing," the parties to file under seal their Summary Judgment motion and opposition, Statements of Facts in support, and all referenced exhibits. ECF No. 287. The Order stated it would be reconsidered after hearing from counsel at oral argument on the motion for summary judgment.

On May 3, 2021, this Court entered a text entry onto the docket ordering that the Motion Hearing Oral Argument regarding Defendants' Motion for Summary Judgment scheduled for May 4, 2021, would be sealed and closed to the public "because the pleadings are sealed." ECF No. 324. On May 4, 2021, the Court heard Defendants' Sealed Oral Motion in this case. ECF No. 332 (Sealed Minute Entry). On August 31, 2021, the Court granted in part and denied in part the Motion for Summary Judgment. ECF No. 352 (Sealed Order on Motion for Summary Judgment).

Muslim Advocates now brings this Motion to Intervene and Unseal documents and

5

arguments on which the parties relied in seeking and defending against summary judgment.

## ARGUMENT

### A. MUSLIM ADVOCATES SHOULD BE ALLOWED INTERVENTION FOR THE LIMITED PURPOSE OF ASSERTING THE PUBLIC'S RIGHT OF ACCESS

Courts have long recognized that members of the public have standing to vindicate the public's right of access to judicial proceedings and documents. *See Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 609 n.25 (1982) ("[R]epresentatives of the press and general public must be given an opportunity to be heard on the question of their exclusion [from judicial proceedings.])" (internal marks and citation omitted).

Pursuant to F.R.C.P 24(b), a court may grant permissive intervention where the applicant for intervention shows (1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common." *Northwest Forest Res. Council v. Glickman*, 82 F.3d at 825, 839 (9th Cir. 1996); *United States v. City of Los Angeles, Cal.*, 288 F.3d 391, 403 (9th Cir. 2002). Further, courts generally "construe[ ] [the Rule] broadly in favor of proposed intervenors." *United States ex rel. McGough v. Covington Techs. Co.,* 967 F.2d 1391, 1394 (9th Cir.1992). However, where an Intervenor does not intend to become a party to the action and instead seeks limited intervention asking a court only to exercise that power which it already has, such as to unseal judicial records, Rule 24(b) asks only if the Intervenor's motion is timely. *Beckman Indus. v. Int'l Ins. Co.*, 966 F.2d 740, 473-74 (9th Cir. 1992) (holding inapplicable to limited intervention Rule 24(b)'s prongs regarding independent jurisdictional basis or common question of fact or law). Muslim

6

Advocates' motion for limited intervention meets this requirement.

1. **THIS MOTION IS TIMELY**

In weighing the timeliness of an intervention motion, courts must consider three factors: "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *San Jose Mercury News, Inc. v. U.S. Dist. Court – N. Dist. (San Jose)*, 187 F.3d 1096, 1100-01 (9th Cir. 1999). Furthermore, courts routinely allow intervention for unsealing purposes even after lengthy delays. *Id.* at 1101 ("delays measured in years have been tolerated where an intervenor is pressing the public's right of access to judicial records.") *See San Jose Mercury News*, 187 F.3d at 1101 (12 weeks is timely); *Beckman Indus.*, 966 F.2d at 471 (affirming intervention two years after underlying case settled); *Olympic Refining Co. v. Carter*, 332 F.2d 260, 265-66 (9th Cir. 1964) (permitting intervention to challenge a protective order three years after the underlying litigation had terminated).

Regarding the stage of the proceeding in the case before us, trial has been set for 2022 and is therefore still in the preliminary pre-trial posture. Muslim Advocates only seeks intervention for the purpose of vindicating the public's right to access the sealed judicial records in connection with the Motion for Summary Judgment that was litigated from May to August 31, 2021, and does not seek to raise any claims or defenses. The parties will not be prejudiced by intervention, and intervention will not significantly interrupt the current proceedings.

This motion for intervention comes only two weeks after the court's sealed summary judgment decision. Although the complaint was filed in 2017, the substance of this

7

motion – the sealing of the summary judgment hearing and its related documents – was only just addressed starting May. Thus, the length of delay here in filing this motion is not unreasonable.

### 2. A COMMON QUESTION OF FACT IS NOT REQUIRED BECAUSE THIS MOTION IS SOLELY FOR THE PURPOSE OF LIMITED INTERVENTION

The importance of access to documents prepared for similar litigation involving the same parties satisfies the commonality requirement of 24(b). *Beckman Indus., Inc.*, 966 F.2d at 474; *see also United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir. 1990); *Meyer Goldberg, Inc., of Lorain v. Fisher Foods, Inc.*, 823 F.2d 159, 164 (6th Cir. 1987). Thus, further specificity, *e.g.,* that the claim involves the same clause of the policy, or the same legal theory, is not required when intervenors are not becoming parties to the litigation. *Beckman* at 474. As the Ninth Circuit has made clear, there is no reason to require a nexus of fact or law when a party seeks to intervene only for the purpose of modifying a protective order. *Id.*

Nevertheless, as one of the country's leading advocacy organizations defending civil rights and providing legal services to the American Muslim community, Muslim Advocates has a significant interest in learning about the measures being taken to address wrongful deaths of its community members at the hands of Phoenix police. The Court's ruling on Defendants' Motion for Summary Judgment will determine how and what kinds of wrongful death actions may be brought and what ways officers involved in wrongful death actions may face accountability for their conduct in the future. Unsealing the

documents and hearings is the only way to ensure the public can fully understand the basis for the Court's ruling and its implications for future cases.

### B. THE PUBLIC HAS A COMMON LAW RIGHT OF ACCESS TO JUDICIAL PROCEEDINGS

The presumption of access to judicial proceedings flows from an "unbroken, uncontradicted history" rooted in the common law notion that "justice must satisfy the appearance of justice." *Richmond Newspapers Inc. v. Virginia*, 448 U.S. at 555, 573–74 (plurality opinion) (quoting *Levine v. United States*, 362 U.S. 610, 616 (1960)); *see also Ibrahim v. U.S. Dep't of Homeland Sec.*, 912 F.3d 1147, 1184 n.38 (9th Cir. 2019) (en banc) cert. denied, 140 S. Ct. 424, 425 (2019) (mem.).

This strong presumption of access to judicial records applies to civil cases, *see San Jose Mercury News, Inc.*, 187 F.3d at 1102, and "applies fully to dispositive pleadings, including motions for summary judgment and related attachments." *Kamakana v. City and Cty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006). Unlike material adduced in discovery but never presented to the court, "judicial records are public documents almost by definition, and the public is entitled to access by default." *Id.* at 1180.

Under this common law right of access, Muslim Advocates and the public at large should have access to the summary judgment filings and proceedings sealed by this Court.

### C. THERE IS ALSO A FIRST AMENDMENT PRESUMPTION OF PUBLIC ACCESS TO JUDICIAL OPINIONS, WHICH HAS NOT BEEN REBUTTED IN THE RECORD

Openness in judicial proceedings "enhances both the basic fairness of the [proceeding] and the appearance of fairness so essential to public confidence in the system," *Press-*

*Enterprise Co. v. Superior Ct. (Press-Enterprise I)*, 464 U.S. 501, 508 (1984), and forms "an indispensable predicate to free expression about the workings of government," *Courthouse News Serv. v. Planet (Planet I)*, 750 F.3d 776, 785 (9th Cir. 2014). "The right of access is thus an essential part of the First Amendment's purpose to 'ensure that the individual citizen can effectively participate in and contribute to our republican system of self-government.'" *Id*. (quoting *Globe Newspaper*, 457 U.S. at 604).

The public's qualified First Amendment right of access to judicial documents and proceedings attaches where (1) the types of judicial processes or records sought have "historically been open to the press and general public" and (2) "public access plays a significant positive role in the functioning of the particular [governmental] process in question." *Press-Enterprise Co. v. Superior Ct. (Press-Enterprise II)*, 478 U.S. 1, 8 (1986); see also *U.S. v. Index Newspapers LLC*, 766 F.3d 1072, 1084 (9th Cir. 2014); *Courthouse News Serv. v. Planet (Planet II)*, 947 F.3d 581, 591 (9th Cir. 2020). A presumptive First Amendment right of access arises if a proceeding or record satisfies both requirements of this two-part "experience and logic" test. *See Globe Newspaper*, 457 U.S. at 605.

With respect to the first part of the Court's test, it is well-settled that "documents submitted to a court for its consideration in a summary judgment motion are – as a matter of law – judicial documents to which a strong presumption of access attaches, under both the common law and the First Amendment." *Brown v. Maxwell*, 929 F.3d 41, 47 (2d Cir. 2019) (quoting *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 121 (2d Cir. 2006). Furthermore, "the resolution of a dispute on the merits, whether by trial or summary judgment, is at the heart of the interest in ensuring the public's understanding of the judicial

process." *Kamakana*, 447 F.3d at 1179. As a result, the motion for summary judgment is one that has been historically kept open to the press and public and the related documents in this case should be unsealed by the Court.

Regarding the second part of the "experience and logic test," public access of judicial documents like the ones at issue plays a significant positive role in ensuring fairness, decreasing bias, improving public perception of the justice system, and enhancing the chances that the resulting orders will be well-justified and narrowly tailored. *See Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978) (explaining that the law's recognition of the importance of judicial transparency serves "the citizen's desire to keep a watchful eye on the workings of public agencies… [and] the operation of government.")

This country's First Amendment right of access must be protected in cases like the one before us that demonstrate the proper functioning of our courts in serving justice – especially when the defending parties are a government entity and government officers performing official duties. As stated above, Muslim Advocates, along with the public at large, seek to understand what happened in the death of one of its community members at the hands of the Phoenix Police Department. Disclosure of the summary judgment filings and hearing transcript in this case will contribute to ongoing public discussions about the City of Phoenix's police practices, as well as help Muslim Advocates better advocate for the safety of Phoenix's Muslim community. For example, Muslim Advocates may publish the information obtained from these documents on its website to educate the community on policing issues and how to remain safe during encounters with police.

### D. THE COURT ERRED IN FAILING TO JUSTIFY SEALING

11

Where the First Amendment right of access attaches to judicial documents, strict scrutiny applies to any restriction of that right. *See Globe Newspaper*, 457 U.S. at 606-07. To overcome such scrutiny, the party seeking to restrict access must support its sealing motion with "compelling reasons," and the Court "must articulate specific findings on the record demonstrating that the decision to seal… is narrowly tailored and essential to preserve [that] compelling government interest…." *Washington Post v. Robinson*, 935 F.2d 282, 287-89 (D.C. Cir. 1991); s*ee also Press-Enterprise II*, 478 U.S. at 15 ("The First Amendment right of access cannot be overcome by [a] conclusory assertion…."); *see also* LRCiv 5.6(b) (stating that "[a]ny motion . . . to file a document under seal must set forth a clear statement of the facts and legal authority justifying the filing of the document under seal," which on its face includes "the Court's own motion" to seal). Furthermore, these "compelling reasons supported by specific factual findings" must "outweigh the general history of access and the public policies favoring disclosure," *Kamakana*, 447 F.3d at 1178-79.

Additionally, the Sealing Orders are inappropriate in this summary judgment posture. Summary judgment is a dispositive motion that is clearly more than "tangentially related" to the merits, *Ctr. for Auto Safety*, 809 F.3d at 1101, the resolution of which "is at the heart of the interest in ensuring the public's understanding of the judicial process…." *Kamakana*, 447 F.3d at 1179. More importantly, the Ninth Circuit has explicitly held that "'the presumption of access is not rebutted where documents which are the subject of a protective order are filed with the court as attachments to summary judgment motions' and that 'to retain any protected status for documents attached to a summary judgment motion,

the proponent must meet the 'compelling reasons' standard and not the lesser 'good cause' determination.'" *Id.* at 1177 (quoting the magistrate judge's reference to *Foltz v. State Farm Mutual Auto Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003)). Thus, "[t]he 'compelling reasons' standard is invoked even if the dispositive motion, or its attachments, were previously filed under seal or protective order." *Id*. at 1179 (citing *Foltz*, 331 F.3d at 1136).

This Court is required to articulate specific findings on the record demonstrating that the decision to seal is essential in preserving a compelling government interest. However, those reasons have not been articulated in the record here. Citing at most "good cause appearing" as justification for sealing the summary judgment proceedings, *see* ECF No. 332; ECF No. 324; ECF No. 287; ECF No. 281, does not explain what "compelling" privacy interests "outweigh" the public's right of access to these court proceedings. *Ctr. for Auto Safety*, 809 F.3d at 1096. For example, what compelling city government interest the Court is protecting in sealing the records here is unclear: information contained in body camera footage of Mr. Muhaymin's death is by no means confidential. Nor can it be argued that disclosure of the footage would be prejudicial, as it is publicly available in various news media and was previously released by the City of Phoenix to the public, both voluntarily and in response to FOIA requests. This failure to adequately justify closure is reversible error and reason enough to unseal the summary judgment filings and hearing transcripts. *See, e.g.*, *Hagestad v. Tragesser*, 49 F.3d 1430, 1435 (9th Cir. 1995) (vacating sealing order "because the district court failed to articulate any reason in support of its sealing order"); *EEOC v. Erection Company, Inc.*, 900 F.2d 168 (9th Cir. 1990) (same).

Should the Court revisit the Sealing Orders rather than simply unsealing, Muslim Advocates urges the Court to give proper weight to the important public interests at stake in this matter. Public policy favors disclosure here. Access to these documents is essential for the public's ability to understand how the Court decided Defendants' liability for Mr. Muhaymin's wrongful death. A public informed about the actions of their public officials is better equipped to engage in meaningful debate about how police public safety work in their communities should be conducted. Furthermore, excluding the public breeds mistrust of the judicial system: it is not enough to claim that a closed-door process will reach a fair outcome without the public being able to decide for themselves whether the conclusion was fair.

Finally, Muslim Advocates urges the Court to take seriously the question of what information at issue in this case is truly private. Mr. Muhaymin died in public while in the custody of on-duty public officials. Defendants are a city agency and public employees acting in their public capacities: their professional conduct is not the kind of highly personal information warranting nondisclosure. This Court should require Defendants to explain why every document in the summary judgment proceeding must be sealed in its entirety and make the individualized determination required by the First Amendment right of access.

### E. THE DOCUMENTS IN THIS CASE SHOULD BE UNSEALED, SUBJECT TO APPROPRIATE REDACTION

Even if the Court determined, based on "specific, on the record findings," that there is a substantial probability of prejudice to a compelling interest that sealing the judicial

records would prevent, *Press-Enterprise Co. v. Superior Ct. (Press-Enterprise II)*, 478 U.S. 1, 13-14 (1986), the Court should have considered alternatives to sealing. *United States v. Doe*, 63 F.3d 121, 128 (2d Cir. 1995). In the event no alternatives to sealing are available to protect the compelling interest identified, the Court's sealing order must be narrowly tailored. *Id*. This tailoring ordinarily involves disclosing some of the documents or giving access to a redacted version. *Baltimore Sun Co. v. Goetz*, 886 F.2d 60, 66 (4th Cir. 1989).

Thus, even if there is some confidential material in the record, "redaction is an adequate alternative to closure,… and it is preferred given our strong tradition of open court proceedings." *United States v. Index Newspapers LLC*, 766 F.3d 1072, 1095 (9th Cir. 2014); *see also Foltz*, 331 F.3d at 1137. When there is only "a small number of third-party medical and personnel records that can be redacted with minimal effort," there is no "'good cause,' let alone a compelling reason, for [a] protective order to overcome the strong presumption in favor of public access." *Foltz*, 331 F.3d at 1137.

From the publicly accessible records in this case, there is no indication that any alternatives to sealing were considered. Nor do the Court's Sealing Orders seem to be narrowly tailored, as all the documents, exhibits, hearing and Court's Order related to Defendants' Motion for Summary Judgment have been entirely sealed. Arguably, even if defendants were able to assert a compelling interest sufficient to overcome the public's presumptive right of access to the sealed judicial records in this case, individually justified redactions—not continued, wholesale sealing—are likely all that would be warranted. *See United States v. Aref,* 533 F.3d 72, 83 (2d Cir. 2008) (emphasizing "the requirement that district courts avoid sealing judicial documents in their entirety unless necessary").

Because the sealing of a document must also be narrowly tailored to serve a compelling interest, *see Oregonian Pub. Co. v. U.S. Dist. Ct. for Dist. of Or.*, 920 F.2d 1462, 1465 (9th Cir. 1990), and because "redaction is an adequate alternative to closure, and it is preferred given [the Ninth Circuit's] strong tradition of open court proceedings," *Index Newspapers LLC*, 766 F.3d at 1095, the hearing, documents and exhibits related to Defendants' Motion for Summary Judgment in this case should be unsealed. If necessary, the documents can be redacted to remove any information that is appropriately subject to sealing (such as personally identifying information pursuant to the Court's protective order) to allow public access to the substance of defendants' arguments in this dispute. For these reasons, the Court should lift the blanket seal on these proceedings and require the government to provide sufficiently specific justifications for its requested sealings or redactions. *See, e.g.*, *In re Fort Totten Metrorail Cases*, 960 F. Supp. 2d 2, 11-12 (D.D.C. 2013) (ordering the parties to redact minors' personal identifying information from settlement documents, so that the documents – to which the public had a right of access – could be filed on the public docket).

### F. THE COURT HAS DISCRETION TO UNSEAL

Even if the Court determines that the public does not have a First Amendment or common law right to access, its supervisory power over its own records permits it to unseal the documents at issue here. *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978). Muslim Advocates respectfully requests the Court exercise this authority. The public has an inherent interest in learning about its government's policing. Indeed, this case has already received substantial media attention. All the while, defendants' overuse of sealing

can be interpreted as preventing public and judicial scrutiny of its conduct policing citizens. The public cannot assess the country's laws, the work of their legislators, or the powers conferred upon their executive officials unless they know how the government and the courts interpret the laws. In this way, the sealed documents at issue have far reaching implications, and their disclosure would substantially advance the public interest.

For these reasons, Muslim Advocates' Motion to Intervene and Unseal should be granted.

## CONCLUSION

For all the reasons herein, Muslim Advocates respectfully requests that the Court grant its motion to intervene and unseal the judicial records in this case, including the summary judgment briefing, exhibits in support of summary judgment, and transcripts of sealed Oral Argument regarding Defendant's Motion for Summary Judgment on May 4th, 2021.

Respectfully Submitted,

s/ Sanaa Ansari
Sanaa Ansari
Attorney for Muslim Advocates