LODGED PROPOSED Doc. 275-51 (redacted)

# EXHIBIT 51



**SAINT LOUIS UNIVERSITY**

1402 South Grand Blvd. R517
St. Louis, MO 63104
Phone 314-977-7841
Fax 314-977-7843
www.slu.edu

Division of Forensic Pathology
Department of Pathology

School of Medicine

September 20, 2020

Karen Stillwell
O'Connor and Dyet
7955 South Priest Drive
Tempe, AZ 85284

Dear Ms. Stillwell:

    At your request I reviewed records (including photographs, video and audio) and microscopic slides pertaining to Muhammad Muhaymin (DOB 7/14/73).

    My opinions are based upon my education, training and experience. My opinions are stated to a reasonable degree of medical certainty unless otherwise specified. My general opinions regarding deaths temporally related to law enforcement apprehension and representative scientific literature forming the bases of these opinions can be found in the following scientific article, including the scientific literature cited in this publication (Graham MA, Investigation of Deaths Temporally Associated with Law Enforcement Apprehension, Acad Forensic Pathol 2014: 4(3): 366-389). A copy of my curriculum vitae and a list of testimony I have given as a consultant accompany this report. My professional time is compensated at $500/hour plus expenses.

The information available for my review includes:
- Order regarding Stipulated Protective Order
- Confidentiality Agreement
- Plaintiff's First Amended Complaint
- Body Camera Video from Officer Grenier (COP 000001)
- Body Camera Video from Officer Hobel (COP 000002)
- Body Camera Video from Officer Hobel (COP 000003)
- Body Camera Video from Officer Canilao (COP 000004)
- Body Camera Video from Officer Head (COP 000005)
- Body Camera Video from Officer Head (COP 000006)
- Body Camera Video from Officer McGowan (COP 000007)
- Body Camera Video from Officer Nielsen (COP 000008)
- Body Camera Video from Officer Nielsen (COP 000009)
- Body Camera Video from Officer Nielsen (COP 000010)

CONFIDENTIAL                    COP 015828

Karen Stillwell
September 20, 2020
Re: Muhammad Muhaymin
Page 2

- Body Camera Video from Officer Aker (COP 000011)
- Body Camera Video from Officer Clark (COP 000012)
- Body Camera Video from Officer Miller (COP 000013)
- Phoenix Police Department Incident Report (COP 000014-000238)
- Recorded interview of Anthony Tarango (COP 000251)
- Recorded interview of Anthony Williamson (COP 000252)
- Recorded interview of Arizona Smith (COP 000253)
- Recorded interview of David Head (COP 000254)
- Recorded interview of Dennis Leroux (COP 000255)
- Recorded interview of Dennis Leroux (COP 000256)
- Recorded interview of Everett Baeza (COP 000257)
- Recorded interview of Hannah Glemba (COP 000258)
- Recorded interview of Jason Hobel (COP 000259)
- Recorded interview of Jimmy Yee (COP 000260)
- Recorded interview of Juan Lara (COP 000261)
- Recorded interview of James Clark (COP 000262)
- Recorded interview of Kevin McGowan (COP 000263)
- Recorded interview of Mark Aker (COP 000264)
- Recorded interview of Murray Williamson (COP 000265)
- Recorded interview of Oswald Grenier (COP 000266)
- Recorded interview of Ronaldo Canilao (COP 000267)
- Recorded interview of Ryan Nielsen (COP 000268)
- Recorded interview of Steven Wong (COP 000269)
- Recorded interview of Susan Heimbigner (COP 000270)
- Recorded interview of Tonya Davis (COP 000271)
- Recorded interview of Tonya Davis (COP 000272)
- Recorded interview of Tonya Davis (COP 000273)
- Transcript of Anthony Williamson's Recorded Interview (COP 012054-012076)
- Transcript of Antonio Tarango's Recorded Interview (COP 012077-012156)
- Transcript of Arizona Smith's Recorded Interview (COP 012157-012183)
- Transcript of David Head's Recorded Interview (COP 012184-012206)
- Transcript of Dennis Leroux' Recorded Interview (COP 012272-012278)
- Transcript of Dennis Leroux' Recorded Interview (COP 012279-012295)
- Transcript of Everett Baeza's Recorded Interview (COP 012335-012350)
- Transcript of Hannah Glemba's Recorded Interview (COP 012351-012387)
- Transcript of James Clark's Recorded Interview (COP 012388-012407)
- Transcript of Jason Hobel's Recorded Interview (COP 012445-012481)
- Transcript of Jimmy Yee's Recorded Interview (COP 012541-012572)
- Transcript of Juan Lara's Recorded Interview (COP 012573-012603)
- Transcript of Kevin McGowan's Recorded Interview (COP 012604-012622)
- Transcript of Mark Aker's Recorded Interview (COP 012671-012695)
- Transcript of Matt Murray's Recorded Interview (COP 012696-012709)
- Transcript of Oswald Grenier's Recorded Interview (COP 012710-012751)

CONFIDENTIAL

Karen Stillwell
September 20, 2020
Re: Muhammad Muhaymin
Page 3

- Transcript of Ronaldo Canilao's Recorded Interview (COP 012817-012872)
- Transcript of Ryan Nielsen's Recorded Interview (COP 012951-012967)
- Transcript of Steven Wong's Recorded Interview (COP 013025-013065)
- Transcript of Susan Heimbigner's Recorded Interview (COP 013115-013131)
- Transcript of Tonya Davis' Recorded Interview (COP 013189-013219)
- Transcript of Tonya Davis' Recorded Interview (COP 013220-013225)
- Transcript of Tonya Davis' Recorded Interview (COP 013226-013236)
- Medical Examiner's Autopsy Report & Toxicology Report (COP 003356-003370)
- X-rays taken by medical examiner (COP 003377)
- Photos taken of items received at autopsy (COP 000886-000926)
- Photos taken of autopsy and scene (COP 000927-001274)
- Records from Phoenix Fire Department (COP 013882-013892)
- Records from Abrazo Community Health (COP 014724-015221)
- Records from Terros (COP 015222-015398)
- Records from Community Bridges Integrated Medical Group (COP 013893-013918)
- MCC Video 1 (COP 000274)
- MCC Video 2 (COP 000275)
- MCC Video 3 (COP 000276)
- MCC Video 4 (COP 000277)
- Deposition of Defendant Antonio Tarango
- Deposition of Defendant Officer Oswald Grenier
- Deposition of Defendant Officer Jason Hobel
- Deposition of Defendant Officer Ronaldo Canilao
- Deposition of Defendant Officer David Head
- Deposition of Defendant Officer Susan Heimbigner
- Deposition of Defendant Officer Ryan Nielsen
- Deposition of Defendant Officer James Clark
- Deposition of Defendant Sgt. Steven Wong
- Deposition of Witness Andy Damiano
- Deposition of Witness Jimmy Yee
- Deposition of Witness Arizona Smith
- Deposition of Mussalina Muhaymin
- Deposition of Muhammad Muhaymin
- Deposition of ▓▓▓▓ Muhaymin
- Deposition of Sgt. James Ward
- Deposition of Detective Jemima Schmidt
- Deposition of Dr. Amanda Maskovyak
- Recorded interview of Dennis Leroux (COP 010809)
- Recorded interview of David Head (COP 010810)
- Recorded interview of James Clark (COP 010811)
- Recorded interview of Jason Hobel (COP 010812)
- Recorded interview of Kevin McGowan (COP 010813
- Recorded interview of Oswald Grenier (COP 010814)

CONFIDENTIAL

COP 015830

Karen Stillwell
September 20, 2020
Re: Muhammad Muhaymin
Page 4

- Recorded interview of Ronaldo Canilao (COP 010815)
- Recorded interview of Ryan Nielsen (COP 010816)
- Recorded interview of Susan Heimbigner (COP 010817)
- Recorded interview of Steven Wong (COP 010818)
- PSB Investigation File (COP 010819-011008)
- Use of Force Results (COP 011009 and COP 010501.1)
- PSB COR Affidavit and Summary (COP 011010-011021)
- Transcript of David Head's recorded interview (COP 012207-012271)
- Transcript of Dennis Leroux' recorded interview (COP 012296-012334)
- Transcript of James Clark's recorded interview (COP 012408-012444)
- Transcript of Jason Hobel's recorded interview (COP 012482-012540)
- Transcript of Kevin McGowan's recorded interview (COP 012623-012670)
- Transcript of Oswald Grenier's recorded interview (COP 012752-012816)
- Transcript of Ronaldo Canilao's recorded interview (COP 012873-012950)
- Transcript of Ryan Nielsen's recorded interview (COP 012968-013024)
- Transcript of Steven Wong's recorded interview (COP 013066-013114)
- Transcript of Susan Heimbigner's recorded interview (COP 013132-013188)
- Letter from Maricopa County Attorney (COP 3371)
- Plaintiff's Notice of Claim (COP 3372-3376)
- 148 photos taken by the Medical Examiner (COP 3378-3525)
- Incident Report prepared by Antonio Tarango (COP 11239-11246)
- Phoenix Police Department's Operations Orders (COP 11449-11508)
- Memo sent to Antonio Tarango (COP 11509)
- Notice of Inquiry to Antonio Tarango January 2017 (COP 11510-11513)
- Notice of Inquiry to Antonio Tarango February 2017 (COP 11514-11517)
- Brochure on Disability Issues (COP 11518-11519)
- Statement prepared by Hannah Glemba re Sept 2016 (COP 11520)
- Statement prepared by Hannah Glemba re Jan. 2017 (COP 11521)
- Notice of Inquiry/Interview to Hannah Glemba (COP 11522-11523)
- Documents from Maricopa County Correctional Health Services (COP 11932-12022)
- Phoenix Police Department's Operations Order regarding Use of Force 2019 (COP 13919-13942)
- Mesa Police Department Report (COP 15399-15407)
- Phoenix Police Department's Operations Order regarding Purpose Statement (COP 15676-15677)
- Abrazo Maryvale Hospital Incident Report (COP 15680-15683)
- Maricopa County Animal Care & Control Report (COP15684-15687)
- Statements from Joshua Govan and Isabel Silvas (COP 15688-15693)
- Statements from MCC Employees (COP 15694-15701)
- Tox Run Sheet from Medical Examiner (COP 15702-15757)
- Expert Report of Scott DeFoe with CV, Fee Schedule, Testimony List
- Expert Report of Dr. Bennet Omalu with CV, Fee Schedule, Testimony List
- Expert Report of Dr. Gary Vilke with CV, Fee Schedule, Testimony List

Karen Stillwell
September 20, 2020
Re: Muhammad Muhaymin
Page 5

- Expert Report of Greg Meyer with CV, Fee Schedule, Testimony List

In addition, I reviewed microscopic slides containing tissues sampled during the autopsy. A set of tissue slides (7 slides) was prepared by The Maricopa County Office of the Medical Examiner and a set (39 slides) was prepared by Dr. Omalu.

### My Summary of Incident Based on Review of Records

Mr. Muhaymin's medical history includes schizophrenia, PTSD and acute claustrophobia. On 1/4/17 he entered the Maryvale Community Center with his pet dog. Personnel at the community center were familiar with Mr. Muhaymin and his dog because of previous interactions. He was reportedly verbally confrontational on 1/4/17 and his dog was unrestrained. Mr. Tarango, a community center employee, requested that Mr. Muhaymin leave the premises. Mr. Muhaymin reportedly became agitated and indicated he needed to use the restroom. Mr. Tarango stopped him from entering the restroom because the dog was not leashed. Mr. Muhaymin attempted to get by Mr. Tarango and bumped him in the process. The Phoenix Police Dept. was called to respond to an "assault" (the bumping incident). An officer arrived circa 5 minutes later and additional officers arrived circa 5 minutes after the arrival of the first officer. Mr. Muhaymin was eventually allowed to use the restroom. While he was in the bathroom (circa 5 minutes), one of the police officers was informed via radio that Mr. Muhaymin had an outstanding warrant. Mr. Muhaymin was escorted from the building after he had exited the restroom. After leaving the building he was told by officers to stop, that he was being arrested because of the outstanding warrant and told to let go of the dog and put his hands behind his back. Mr. Muhaymin refused to release the dog. A struggle ensued between Mr. Muhaymin and the officers. He was taken to the ground and his hands cuffed behind him within 1-2 minutes. The officers had difficulty securing the handcuffs. Mr. Muhaymin was speaking after he was handcuffed. Police officers were breathing hard. Within circa a minute Mr. Muhyamin got to his feet and was vocalizing. He was led to a police vehicle where officers intended to search him. He continued to offer resistance when walking to the police vehicle. While being searched at the police vehicle his arms were raised upward to allow search of the pocket area and he was able to move his hands from behind him to the front of his body. He continued to struggle against the officers. He was taken to the ground and struggled against the officers as they tried to uncuff then recuff Mr. Muhaymin. Within a minute he said that he "can't breathe" while he was actively vocalizing and struggling. He was lying on his left side. His upper extremities were being held. He reportedly was attempting to turn himself over by rolling his hips. Additional officers arrived to offer assistance. Officer Head was holding Mr. Muhaymin's legs and Officer Hobel was holding the waist. Another officer subsequently helped hold

Karen Stillwell
September 20, 2020
Re: Muhammad Muhaymin
Page 6

the waist. An officer had a knee against Mr. Muhaymin's shoulder blade area as Mr. Muhaymin continued to resist. The officer's foot was on the ground at this time. Officers managed to get Mr. Muhaymin's hands behind him but had to cut a rope bracelet from his right wrist prior to securing the handcuffs. His ankles were secured and the two sets of restraints connected. After Mr. Muhaymin was restrained the officers got up from the ground and Mr. Muhaymin suddenly went limp and regurgitated. Officer Clark indicated that Mr. Muhaymin struggled throughout the encounter until his ankles were secured. Mr. Muhaymin was described as displaying surprising strength. After Mr. Muhaymin regurgitated the restraint was removed and resuscitative efforts, including CPR, were instituted. EMS was called and continued resuscitative efforts. The initial cardiac "rhythm" recorded by EMS was asystole. He was transported to a hospital where resuscitative efforts were noted to be unsuccessful and he was pronounced dead. A postmortem examination was performed by Dr. Amanda Maskovyak at the Maricopa County Office of the Medical Examiner.

### Summary of Dr. Maskovyak's Postmortem Examination, Results of Laboratory Testing and Opinions

The postmortem examination report (17-95) indicates that Mr. Muhaymin was 67 inches long and weighed 164 pounds. No conjunctival petechiae were noted. There were scattered abrasions and contusions. Bilateral fractures of parasternal and anterolateral ribs were associated with mild hemorrhage and were attributed to CPR.

The heart weighed 325 grams. A 20 mm long segment of the proximal left anterior descending coronary artery tunneled within the myocardium (1 mm deep). Atherosclerotic narrowing (40-50%) of the left anterior descending artery was present. Microscopic examination of the heart demonstrated patchy myofibers with enlarged nuclei, acidophilia, interstitial fibrosis and perivascular fibrosis.

Thick small blood vessels were noted in the kidneys.

Toxicological analysis of iliac blood demonstrated the presence of methamphetamine (0.81 mg/L) and amphetamine (0.24 mg/L). No other potentially toxic agents were identified. Chemical analysis of vitreous fluid indicated Sodium—164 mmol/L, Potassium—12 mmol/L, Chloride—127 mmol/L, Urea Nitrogen—17 mg/dl, Creatinine—0.7mg/dl and glucose—14 mg/dl.

Dr. Maskovyak reviewed law enforcement incident reports and viewed body camera videos.

Karen Stillwell
September 20, 2020
Re: Muhammad Muhaymin
Page 7

The cause of death was opined as being cardiac arrest in setting of coronary artery disease, psychiatric disease, acute methamphetamine intoxication and physical restraint during law enforcement subdual. The manner of death was certified as homicide.

**Opinions of Retained Experts**

A number of persons retained as experts have reviewed pertinent information and offered a variety of observations and opinions about this matter. Included among the reports that I have reviewed are those of physicians Dr. Vilke (emergency medicine) and Dr. Omalu (forensic pathology). Areas of concordance and disagreement between their observations/opinions and mine can be ascertained and more fully explored from reading my observations and opinions as discussed in other portions of this report.

*Dr. Vilke Report:*

Dr. Vilke opines that Mr. Muhaymin died due to toxic effects of methamphetamine and continued exertion and resistance causing physiologic stress on an abnormal heart. Cardiac abnormalities that he cites are coronary artery disease and the tunneled coronary artery. He indicates that death was likely precipitated by a cardiac event.

He indicates that methamphetamine, agitation and physical resistance increase oxygen demand and acidosis. It is noted that acidosis increases myocardial irritability.

He indicates that although Mr. Muhaymin stated that he "can't breathe" he was, in fact, able to breath as indicated by yelling loudly and moving air. Dr. Vilke indicates that the videos demonstrate weight intermittently placed on Mr. Muhaymin's upper back during the re-handcuffing and that the restraint did not limit ventilation and cause asphyxia. He indicated that Mr. Muhaymin was yelling, grunting and physically resisting until circa up to or less than a minute prior to vomiting.

*Dr. Omalu Report:*

Dr. Omalu supplemented the 7 microscopic tissue slides prepared by the medical examiner. He prepared and examined 39 additional tissue samples. He reports seeing scattered hypertrophic left ventricular myofibers, multifocal

Karen Stillwell
September 20, 2020
Re: Muhammad Muhaymin
Page 8

myocytolysis with way fibers and acidophilia and focal contraction band necrosis. He described hypoxic changes in the brain that he attributes to restraint.

He further indicates that the drug concentration identified in Mr. Muhaymin's blood reflects chronic use (and its accompanying tolerance) and postmortem redistribution. He opines that the methamphetamine in Mr. Muhaymin's blood was not forensically significant.

Dr. Omalu indicates that compression of Mr. Muhaymin's trunk and body led to compression of vital plexuses and nerves. He further indicates that "high traumatic stressor" led to gastroesophageal sphincter relaxation with consequent vomiting and aspiration.

It is Dr. Omalu's opinion that the underlying cause of death is mechanical-positional asphyxiation. He opines that the "compression of his head, neck, trunk and extremities by multiple police officers while he laid prone on the hard ground for a cumulative period of 10 minutes...precipitated relaxation of his gastro-esophageal sphincter, which precipitated vomiting, which resulted in massive aspiration of gastric contents, which aggravated mechanical-positional asphyxiation by mechanic obstruction of the airways, which resulted in asphyxia brain injury and sudden death."

**My Forensic Observations and Opinions**

I reviewed the microscopic slides containing tissues sampled during the autopsy. One set of slides (7) was prepared by the Maricopa County Office of the Medical Examiner and the other set (39) was prepared by Dr. Omalu. Sections of the heart (right ventricle, left ventricle, AV node/HIS bundle, SA node, valve) demonstrate a focus of subendocardial fibrosis that appears to involve a papillary muscle. A papillary muscle tip has focal fibrosis and calcification. Sections of lung demonstrate agonal orogastric aspiration. The features of the other tissues are non-contributory.

Based on the available information it is my opinion to a reasonable degree of medical certainty that Mr. Muhaymin died of cardiac asystole precipitated by marked agitation and physical exertion on a background of methamphetamine use and schizophrenia. Agitation (associated with increased catecholamines), methamphetamine/amphetamine and strenuous exertion (with accompanying acidosis) each increase myocardial irritability. Methamphetamine use and schizophrenia are each associated with an increased risk of sudden death. I have

Karen Stillwell
September 20, 2020
Re: Muhammad Muhaymin
Page 9

==observed multiple decedents who died suddenly in the context of a scenario similar to that displayed by Mr. Muhaymin.==

    It is my opinion that Mr. Muhaymin did not die of asphyxia and that the observed features leading up to and culminating in Mr. Muhaymin's death were not those of lethal asphyxia. Death due to asphyxia is associated with prolonged unremitting unconsciousness that eventually leads to death. Mr. Muhaymin's history of actively struggling with sudden cessation of activity and essentially instantaneous death is not a death sequence characteristic of asphyxia but is a common sequence of events during a death due to sudden cardiac dysfunction. Most cases of cardiac sudden death are related to the onset of a non-perfusing cardiac rhythm disturbance and do not involve myocardial infarction. Even when cardiac ischemia precipitates the rhythm disturbance, myocardial infarction is usually not present. Dr. Omalu inaccurately indicates that the medical examiner attributed Mr. Muhaymin's death to coronary artery disease. Actually, the medical examiner opined that coronary artery disease was a factor in causing death but did not indicate that "the cause of death" was solely coronary artery disease.

    The presence of methamphetamine/amphetamine in Mr. Muhaymin's blood indicates he used methamphetamine (the amphetamine is most likely present as a metabolite of the methamphetamine). While I agree with Dr. Omalu that the significance of the methamphetamine cannot be determined by solely looking at the amount of methamphetamine in the blood, an opinion about its significance (or lack thereof) may be formulated by interpreting the methamphetamine in the context of the case details and the current scientific literature. Methamphetamine is generally recognized as being a cause of agitation, erratic behavior, apparent enhanced strength and sudden death. Based on the available information, any statement about Mr. Muhaymin's methamphetamine tolerance or lack thereof is speculative.

    Regurgitation is a very common agonal or postmortem event. The coinciding of Mr. Muhaymin's sudden cessation of the struggling, loss of consciousness and regurgitation marks the onset of cardiac arrest and not some direct effect of compression. I am not aware of any scientific literature supporting Dr. Omalu's contention that the gastroesophageal sphincter relaxed due to "high traumatic stressor levels."

    Dr. Omalu indicates that compression of the trunk and body can cause compression of vital plexuses and nerves resulting in decreased respiration and hypotension. I am not aware of any scientific support that restraint of the type Mr. Muhaymin experienced is associated with such dysfunction.

CONFIDENTIAL      COP 015836

Karen Stillwell
September 20, 2020
Re: Muhammad Muhaymin
Page 10

Lastly, Dr. Omalu reports that he observed hypoxic changes in the brain and that these were attributable to restraint-related asphyxia. He does not discuss how he distinguishes these changes from hypoxic-ischemic damage to the brain consequent to Mr. Muhaymin's documented cardiopulmonary arrest and the subsequent resuscitation effort.

**Summary**

It is my opinion to a reasonable degree of medical certainty that Mr. Muhaymin's death was caused by marked agitation and physical exertion coupled with schizophrenia and methamphetamine use. It is my opinion to a reasonable degree of medical certainty that Mr. Muhaymin's death was not caused or contributed to by asphyxia related to forcible restraint.

Thank you for referring this matter to me. Please do not hesitate to contact me if I can be of further assistance.

Sincerely,

*[signature]*

Michael Graham, M.D.
Professor of Pathology

CONFIDENTIAL                    COP 015837